**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **FELIX VALADEZ, LUIS CARRIZOZA,** | § | |
| **ABIGAIL REYES, AMADA MAN, and** | § | |
| **TEXAS ENTERTAINMENT** | § | |
| **ASSOCIATION, INC.,** | § | |
| | § | |
| *Plaintiffs,* | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO.** 1:21-cv-519 |
| **KEN PAXTON, in his official capacity as** | § | |
| **Attorney General of the State of Texas, and** | § | |
| **ED SERNA, in his official capacity as** | § | |
| **Executive Director of the Texas Workforce** | § | |
| **Commission,** | § | |
| | § | |
| *Defendants.* | § | |

<u>**PLAINTIFFS' ORIGINAL COMPLAINT FOR DECLARATORY**</u>
<u>**AND INJUNCTIVE RELIEF**</u>

Plaintiffs Felix Valadez, Luis Carrizoza, Abigail Reyes, Amada Man, and Texas

Entertainment Association, Inc., file this Original Complaint for Declaratory and Injunctive Relief

against Defendants, Ken Paxton, in his official capacity as Attorney General of the State of Texas,

and Ed Serna, in his official capacity as Executive Director of the Texas Workforce Commission.

<u>**INTRODUCTION**</u>

1.      Plaintiffs challenge the constitutionality of Senate Bill 315's ("S.B. 315") age-

related amendments to provisions of the Texas Civil Practice & Remedies Code, Labor Code, and

Penal Code.

2.      The 87th Texas Legislature ordained that, effective May 24, 2021, all adult Texans

between the ages of 18 and 20 years old are categorically considered 'children' who are not

1

competent to decide whether to work at or for any "sexually oriented business" ("SOB"), and

that it is unlawful for an SOB to employ them in any capacity. Tex. S.B. 315, 87th Leg. R.S. (2021).

3.      While this legislation was packaged in good intentions—combatting the scourge of

human trafficking and protecting young adults from the evils of sexual exploitation—it employs

constitutionally illegitimate means: depriving ordinary people just like the individual Plaintiffs of

their occupational, associational, and expressive liberties secured to them under the state and

federal constitutions.

4.      S.B. 315 criminalizes all legal and consensual working relationships between all

SOBs and all 18-20-year-old people. There are no exceptions. It is now illegal for any SOB to

employ or contract with any man or woman to perform any kind of work or service—cashier, store

clerk, valet, bartender, waitress, janitor, security guard, secretary, DJ, or exotic dancer—if that

person is under 21 years of age.

5.      S.B. 315 bears no rational relationship to its purported objectives and flies in the

face of common sense. Texas law sets "[t]he age of majority in this state [at] 18 years," the age at

which a person is free to buy and gift lotto tickets, sell alcohol, marry, enter into contracts, cast a

ballot, fight and die for their country, and be held responsible for their crimes up to and including

execution.[1] In all respects, "an eighteen-year-old is an adult under the laws of this state and

presumably capable of making adult decisions"—except, apparently, when it comes to where and

---

[1] TEX. CIV. PRAC. & REM. CODE § 129.001 (age of majority); TEX. FAM. CODE § 2.101 (marry); TEX. ELEC. CODE § 11.002(a)(1), U.S. CONST. amend. XXVI (vote); 50 U.S.C. §§ 453, 454 (selective service); TEX. GOV'T CODE § 466.3051(c) (lottery); TEX. PENAL CODE § 8.07(d) (death penalty); TEX. ALCO. BEV. CODE § 106.09 (serve alcohol).

with whom he or she decides to lawfully earn a living. *Moore v. Sticks Billiards, Inc.*, 14-93-01115-CV, 1996 WL 400302, at *2 (Tex. App.—Houston [14th Dist.] July 18, 1996, writ denied).

6.     Plaintiffs ask the Court to declare that S.B. 315's minimum age requirements are unconstitutional and enjoin their enforcement.

## PARTIES

7.     Plaintiff Felix Valadez is an individual who resides in Dallas County, Texas.

8.     Plaintiff Luis Carrizoza is an individual who resides in Ector County, Texas.

9.     Plaintiff Abigail Reyes is an individual who resides in Dallas County, Texas.

10.    Plaintiff Amada Man is an individual who resides in Dallas County, Texas.

11.    Plaintiff Texas Entertainment Association, Inc., is a Texas non-profit corporation that conducts business throughout Texas. The TEA's membership consists of scores of adult cabarets in Texas that feature various forms of entertainment, including exotic dancing and music. The TEA's membership also includes adult bookstores.

12.    Defendant Ken Paxton, sued in his official capacity, is the Attorney General of the State of Texas. The Attorney General—the state's chief law enforcement officer—is specifically authorized to enforce Chapter 125 of the Texas Civil Practice & Remedies Code and Chapter 51 of the Texas Labor Code. *See, e.g.,* TEX. CIV. PRAC. & REM. CODE § 125.002; *see also id.* at Ch. 140A; TEX. LABOR CODE § 51.034. He may be served by delivering summons and a copy of this complaint to the Office of the Attorney General, located at 300 West 15th Street, Austin, Texas 78701.

13.    Defendant Ed Serna, sued in his official capacity, is the Executive Director of the Texas Workforce Commission. He is charged with the day-to-day operations of the agency, including implementation of policies set by the Commission and enforcement of the Labor Code.

He may be served by delivering summons and a copy of this complaint to the Texas Workforce Commission, Labor Law Section, located at 101 East 15th Street, Room 514, Austin, Texas 78778.

## JURISDICTION & VENUE

14.     Pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), this Court has original jurisdiction over all civil matters arising under the United States Constitution, and to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege, or immunity that the Constitution secures to the people.

15.     Plaintiffs' claims for declaratory and injunctive relief are authorized under 28 U.S.C. §§ 2201-2202, along with Federal Rules of Civil Procedure 57 and 65.

16.     Venue of this case lies in the Western District of Texas pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims occurred in this district, and Defendants reside in this district. The issues in this case are not unique or particular to any one locality because the laws at issue apply equally across the state. The resolution of this case will have state-wide significance.

## FACTS

17.     S.B. 315 is styled an "act relating to restrictions on the age of persons employed by or allowed on the premises of a sexually oriented business; creating a criminal offense." State law generally defines a "sexually oriented business" as any—

> …sex parlor, nude studio, modeling studio, love parlor, adult bookstore, adult movie theater, adult video arcade, adult movie arcade, adult video store, adult motel, or other commercial enterprise the primary business of which is the offering of a service or the selling, renting, or exhibiting of devices or any other items intended to provide sexual stimulation or sexual gratification to the customer.

TEX. LOC. GOV'T CODE § 243.002. One of S.B. 315's legislative proponents, State Representative Shawn Thierry, explained that this legislation's passage was propelled by the alleged drugging and assault of a young female Capitol staffer by a male lobbyist, which "caused the legislation [sic] to respond in a strong manner. It's a reminder that we must change the culture in how we treat young women. We will no longer look away when they are sexually abused, assaulted or placed in these [sexually oriented business] environments[.]"[2] Echoing that sentiment, House Speaker Dade Phelan is reported to have "called on lawmakers and others to do more to protect women working in the Capitol and participating in legislative business amid a criminal investigation into whether a lobbyist recently drugged a staffer during a downtown meeting."[3]

18.    So, rather than passing new laws to protect the young women who work at the Capitol—an establishment that some have cited[4] as harboring a combustible mixture of older men, young women, late-night alcohol consumption, and a "culture that many female staffers say often

---

[2] Karla Florez, *Texas House members pass anti-human trafficking proposal to 'change the culture in how we treat young women'*, MIDLAND TIMES, May 9, 2021, https://midlandtimes.com/stories/595048492-texas-house-members-pass-anti-human-trafficking-proposal-to-change-the-culture-in-how-we-treat-young-women (*last accessed* June 13, 2021) (bracketing original).

Erica Proffer, *Advocates want to raise the minimum age for strippers to 21*, KVUE, April 27, 2021, https://www.kvue.com/article/news/advocates-want-to-raise-the-minimum-age-for-strippers-to-21/269-a9e5aa48-ac5f-40b6-a14a-59d34c4327fc (*last accessed* June 13, 2021).

[3] Tony Plohetski, *Texas House Speaker Dade Phelan addresses date-rape allegations against lobbyist*, KVUE, April 26, 2021, https://www.kvue.com/article/news/local/texas/texas-house-speaker-dade-phelan-addresses-date-rape-allegations-against-lobbyist/269-236e85b3-4c48-47b7-99b1-83a282cf1802 (*last accessed* June 13, 2021).

[4] Nicole Cobler, *Unwanted touching, late-night texts: Women at Texas Capitol describe culture of harassment*, Austin American-Statesments, April 30, 2021, https://www.statesman.com/story/news/politics/state/2021/04/30/women-working-texas-capitol-legislature-describe-culture-sexual-harassment/4872464001/ (*last accessed* June 13, 2021).

leads to allegations of misconduct and harassment being brushed under the rug by those with the power to act"[5]—lawmakers targeted other establishments: SOBs.

19.     S.B. 315's authors claim that the legislation was necessary to "provide necessary mechanisms to safeguard our communities and children from trafficking and sexual exploitation, which are often harmful secondary effects of sexually oriented businesses." Senate Research Center, Bill Analysis, Tex. S.B. 315, 87th Leg. R.S. (2021). Despite its portrayal in the public sphere, S.B. 315's "mechanism" is not limited to banning young women from working as strippers. This legislation goes much further; it amends several existing laws to make it unlawful for *all* men and women under the age of 21 to work for or at the broad range of businesses classified as SOBs.

**A.     Chapter 125 of the Texas Civil Practice & Remedies Code**

20.     First, S.B. 315 amended provisions of Chapter 125 of the Texas Civil Practice & Remedies Code, which empowers the attorney general or local officials to seek various civil remedies against "[a] person who maintains a place to which persons habitually go for the following purposes and who knowingly tolerates the activity and furthermore fails to make reasonable attempts to abate the activity maintains a common nuisance[.]" TEX. CIV. PRAC. & REM. CODE §§ 125.0015(a), 125.002(a).

21.     Prior to S.B. 315's passage, the laundry list of "purposes" included "employing a minor at a sexually oriented business as defined by Section 243.002, Local Government Code" and

---

[5] Cassandra Pollock, *A false date rape drugging accusation against a lobbyist exposed claims of his role in the Texas Capitol's culture of sexual harassment*, THE TEXAS TRIBUNE, May 26, 2021, https://www.texastribune.org/2021/05/26/texas-lobbyist-rick-dennis-legislature-sexual-harassment/ (*last accessed* June 13, 2021).

"employment harmful to a child as described by Section 43.251, Penal Code." Tex. Civ. Prac. & Rem. Code § 125.0015(a)(19), (22).

22.     Section 5 of S.B. 315 amended Section 125.0015(19) so that the following conduct now constitutes a "common nuisance:"

> (19)   employing or entering into a contract for the performance of work or the provision of a service with an individual younger than 21 years of age for work or services performed [a minor] at a sexually oriented business as defined by Section 243.002, Local Government Code.

Tex. S.B. 315, § 5, 87th Leg. R.S. (2021) (formatting original) (*amending id.*). Accordingly, an SOB is liable for maintaining a "common nuisance" if people under the age of 21 habitually go there to perform work or provide a service. No exception appears in the text of the statute. Violators are subject to a range of penalties, including temporary and permanent injunctions, fines, and confinement in jail. *See* Tex. Civ. Prac. & Rem. Code §§ 125.002(d), 125.045.

**B.      Chapter 43 of the Texas Penal Code**

23.     Section 8 of S.B. 315 amended Penal Code Section 43.251 by changing its definition of "child" to mean "a person younger than 21 [18] years of age." Tex. S.B. 315, § 8, 87th Leg. R.S. (2021) (formatting original) (*amending* Tex. Penal Code § 43.251(a)(1)). As a result, a person who "employs, authorizes, or induces" a 19-year-old "child" to work "in a sexually oriented commercial activity," or in "any place of business permitting, requesting, or requiring a child to work nude or topless,"[6] is subject to felony charges. *Id*. at § 43.251(a)-(c).

---

[6] "'Sexually oriented commercial activity' means a massage establishment, nude studio, modeling studio, love parlor, or other similar commercial enterprise the primary business of which is the offering of a service that is intended to provide sexual stimulation or sexual gratification to the customer." Tex. Penal Code § 43.251(a)(5). "Nude" means "entirely unclothed" or "clothed in a manner that leaves uncovered or visible through less than fully opaque clothing any portion of the breasts below the top of the areola of the

24.     This amendment affects laws that cross-reference Section 43.251, including the nuisance statute. *See* TEX. CIV. PRAC. & REM. CODE § 125.0015(a)(22). It also affects other provisions of the Penal Code, including Chapter 20A, which enumerates various trafficking crimes. TEX. PENAL CODE § 20A.02(a)(7)(J). Chapter 20A, in turn, is referenced in Chapter 140A of the Texas Civil Practice & Remedies Code. *See, e.g.,* TEX. CIV. PRAC. & REM. CODE § 140A.002 ("A person or enterprise commits racketeering if, for financial gain, the person or enterprise commits an offense under Chapter 20A … and the offense or an element of the offense: (1) occurs in more than one county in this state; or (2) is facilitated by the use of United States mail, e-mail, telephone, facsimile, or a wireless communication from one county in this state to another").

## C.     Chapter 51 of the Texas Labor Code

25.     Last, Section 6 of S.B. 315 amended several provisions of Labor Code Chapter 51, which regulates "Employment of Children." TEX. LABOR CODE §§ 51.001-.016.

26.     S.B. 315 did not amend Section 51.002, which still provides that the general definition of a "child" is "an individual under 18 years of age." TEX. LABOR CODE § 51.002. Instead, it amended Section 51.016—which formerly restricted employment of "an individual younger than 18 years of age" at an SOB. *Id*. at § 51.016(b).  Section 51.016(b) now provides that—

> (b)     A sexually oriented business may not employ <u>or enter into a contract, other than a contract described by Subsection (g), for the performance of work or the provision of a service with</u> an individual younger than 21 [~~18~~] years of age.

Tex. S.B. 315, § 6, 87th Leg. R.S. (2021) (formatting original) (*amending id.*). The exception is limited to "an independent contractor who contracts with a sexually oriented business solely to

---

breasts, if the child is female, or any portion of the genitals or buttocks." *Id*. at § 43.251(a)(4).  "Topless" means "a female child clothed in a manner that leaves exposed or visible through less than fully opaque clothing any portion of her breasts below the top of the areola." *Id*. at § 43.251(a)(6).

perform repair, maintenance, or construction services at the business." TEX. LABOR CODE § 51.016(g).

27.     Section 7 of S.B. 315 provides for a new criminal penalty—violation of Section 51.016(b) is a Class A misdemeanor. TEX. LABOR CODE §§ 51.016(i)(3), 51.031(b). In addition to criminal punishment up to and including a one-year jail sentence, a violator of Section 51.016(b) is subject to a suit for injunctive relief brought by the attorney general, *id.* at § 51.034, as well as administrative penalties imposed by the Texas Workforce Commission if it "determines that a person who employs a child has violated this chapter or a rule adopted under this chapter…." *Id.* at § 51.033(a).

## II.    S.B. 315's Real World Effect on Plaintiffs

28.     S.B. 315 has put hundreds of young Texans out of a job or threatened their jobs during these tenuous economic times. Plaintiffs are just a few of those individuals.

### A.    Felix Valadez & Abigail Reyes

29.     Plaintiff Felix Valadez was born on February 14, 2002. Since approximately August 2020, he has been employed at an adult bookstore in the Dallas area as a store clerk.

30.     Plaintiff Abby Reyes was born on May 9, 2002. Since approximately June 2020, she has also been employed at an adult bookstore in the Dallas area as a store clerk.

31.     What Mr. Valadez and Ms. Reyes do for a living is help sell a variety of lawful content, materials, and items to consenting adult members of the public, including adult magazines, videos, erotica, and 'novelty' items. Their job duties also include answering customer questions, helping them find the materials or items they might be looking for, and restocking

inventory. They interact with people from all walks of life on a regular basis. Both Plaintiffs enjoy their work and want to continue in their chosen occupation.

32.     No one coerced, forced, or pressured Mr. Valadez or Ms. Reyes into working at an adult bookstore. They are not concerned about becoming victims of human trafficking or being exposed to other crimes by virtue of where they have chosen work. Indeed, the only job where Ms. Reyes has been victimized was at the business where she worked prior to her time at the bookstore—a gas station that unlawfully stole her wages.

33.     Like most people, Mr. Valadez and Ms. Reyes were under the impression that once they turned eighteen, they had every right to pursue any lawful calling. However, in late May 2021, both individuals found out that S.B. 315 applies not only to the people they know who lost their jobs at strip clubs, it applies to *all* SOBs, including their place of work too.

34.     Both Mr. Valadez and Ms. Reyes now fear that they may lose their jobs without any warning. Their fears are real and substantial. They have no way of knowing whether officials could tell their employer one day that it is illegal for them to work at an SOB, and they do not know whether their employer might soon decide that it is not worth taking the risk of continuing to employ these 19-year-old adults because of S.B. 315's amendments.

**B.     Luis Carrizoza**

35.     Luis Carrizoza was born on November 4, 2000. Mr. Carrizoza believed that once he turned eighteen, he had the right to pursue any lawful work that he wanted to do. So, shortly before he turned nineteen, he started working as a bouncer at a strip club in Odessa, Texas. Mr. Carrizoza chose this work because he simply liked the idea of becoming a bouncer at a strip club.

36.     As a bouncer, one of his job duties was to make sure that customers and others at the club complied with the law and to intervene if anyone became too rowdy or started acting inappropriately. He also greeted customers, sat them down at tables, and checked on patrons to make sure that they were not becoming too intoxicated.

37.     Mr. Carrizoza's job at the club was not strictly limited to providing security and customer service. He was also paid to engage in promotional activities on behalf of the club, for example, by distributing flyers and promotional materials around town, which is something that he would do on a regular basis.

38.     No one coerced, forced, or pressured Mr. Carrizoza to work as a bouncer at a strip club. He took the job completely of his own free will. He is not at all concerned about becoming the victim of human trafficking or being exposed to other sorts of crime. After all, Mr. Carrizoza's job is to make sure that other people are safe, that crimes are not being committed, and ejecting anyone from the club who poses a problem.

39.     A few months ago, Mr. Carrizoza obtained an SOB license from the City of Odessa. By complying with local permitting laws, he was under the impression that he could continue working as a bouncer at the club.

40.     Unfortunately for Mr. Carrizoza, obtaining this license did not secure his ability to continue working at the club. On or about May 25, 2021, he learned that as a result of S.B. 315, the club had let go of all men and women under the age of 21 who were working there.

41.     Mr. Carrizoza has been lucky because he was able to find work with a security company as a security guard. He has proceeded to obtain the requisite training and certification to

work in that capacity. His current employer has even posted him at the club where he once worked as a bouncer.

42.     However, given S.B. 315's reach, Mr. Carrizoza does not know if it is illegal for his current employer to post him at the club since he is still under 21. As with Mr. Valadez and Ms. Reyes, Mr. Carrizoza does not know if his new job might suddenly come to an end because he has been posted to work at an SOB and he is extremely concerned about this real possibility. If Mr. Carrizoza had the opportunity to continue working directly for the club as a bouncer, he would immediately do so.

**C.     Amada Man**

43.     Plaintiff Amada Man was born on February 18, 2002. Ms. Man supports herself; she does not have the luxury of relying on family or friends to pay her bills. And, like all of the other individual Plaintiffs, Ms. Man believed that once she turned eighteen, she had every right to pursue any lawful work that provides her with economic opportunity, and that no one can require her to settle for a low-paying job just to make ends meet.

44.     To that end, in or around August 2020, Ms. Man began performing as an exotic dancer in Dallas, Texas. Ms. Man enjoys performing as an exotic dancer. She highly values working in an occupation with a flexible schedule and significant earning potential, unlike the other kinds of jobs she has held in the past. Indeed, Ms. Man was using the income she earned from dancing not only to fully support herself, but to save-up enough money so that she can eventually pay her way through beauty school.

45.     No one coerced, forced, or pressured Ms. Man to work as an exotic dancer. She does not believe that working as a dancer has made her any more susceptible to becoming a victim

of the criminal element. Ms. Man specifically chose to work at 'higher end' clubs where she enjoyed good relationships with managers and felt that she could perform in a safe and protected environment. Ms. Man views the alternative—working as a dancer at 'private events'—as a dangerous non-starter.

46.     Last month, Ms. Man heard that there was a law in the works that would make it illegal for her to perform as an exotic dancer until she turns 21. She thought that this was just the uninformed internet rumor mill at work.

47.     The change in the law became a reality for Ms. Man during the week of May 24, 2021. Ms. Man learned from another dancer that the club where they had been performing would no longer allow any 18-20-year-old individuals to work at the establishment in any capacity. Ms. Man learned that she not only lost her right and ability to perform at the club of her choosing, but at any other club in the State of Texas.

48.     Ms. Man has now found herself having to deplete her savings just to stay afloat. Ms. Man has considered moving to or performing in other states that have not criminalized her work because of her age. Were it not for S.B. 315, Ms. Man would immediately return to working as an exotic dancer in Texas.

**D.     Texas Entertainment Association, Inc.**

49.     The legislation also affects the members of the Texas Entertainment Association, Inc. ("TEA"). The TEA's constituent members feature exotic dancing performed by women older than 18. They employ men and women between the ages of 18 to 20 in a variety of positions including  bartenders,  waitresses,  cashiers,  security  personnel,  janitors,  administrators,

bookkeepers, DJs, promoters and marketing personnel. The TEA's membership also includes adult bookstores who employ adults older than 18 to provide ordinary retail services.

50.     Once S.B. 315 became effective, the TEA's members were forced to immediately terminate droves of 18-20-year-old men and women who worked at their establishments in various roles. The TEA's members fear that should they employ, hire, or contract with any 'underage' adult to perform work or provide services of any kind, their businesses, owners, and management will be subject to civil and criminal penalties. So long as S.B. 315's amendments remain in effect, the TEA's members are loathe to employ, hire, or contract with any individual under the age of 21 for any purpose.

51.     As with the individual Plaintiffs, the TEA's members' fears are real and substantial. SOBs are the targets of law enforcement searches and investigations, *see e.g.*, TEX. LABOR CODE § 51.016(h)-(i), accusations of criminal violations, and nuisance proceedings brought pursuant to Chapter 125 of the Texas Civil Practice & Remedies Code. Nothing suggests that state or local officials will refrain from enforcing the amended laws at issue against SOBs.[7] Given the politically expedient claim that SOBs are the vectors of all ills that befall modern society, there is no reason to assume otherwise.

---

[7] For example, the Office of the Attorney General is specifically charged with establishing the "human trafficking prevention task force," which is charged with, among other things, examining SOBs. TEX. GOV'T CODE § 402.035.

## CAUSES OF ACTION

52.     Section 1983 provides the vehicle for vindicating constitutional rights in the face of unconstitutional state laws, including via pre-enforcement challenges. 42 U.S.C. § 1983; *see Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392 (1988).

53.     Plaintiffs have suffered constitutional injuries because S.B. 315's amendments transgress the First Amendment's guarantees of freedom of speech and association, the Fourteenth Amendment's Equal Protection Clause, Due Process Clause, and the Texas Constitution's equivalent provisions, and because S.B. 315 renders the statutes it amended fatally vague and overbroad.

## COUNT I
### Violation of U.S. CONST. amend. I—Free Speech & Associational Liberty

54.     The First Amendment, made applicable to the states through the Fourteenth Amendment, prohibits the enactment or enforcement of laws "abridging the freedom of speech." U.S. CONST. amend. I. The First Amendment protects not only the rights of adults, but persons traditionally considered to be "minors," including their freedom of speech and "to associate freely, which, like the right of adults … is not limited to political associations but includes associations for social, legal, or economic purposes." *Johnson v. City of Opelousas*, 658 F.2d 1065, 1072 (5th Cir. 1981) (internal citations omitted).

### A.     Violation of Expressive Rights

55.     Both on its face and as-applied, S.B. 315 violates the rights of all individual Plaintiffs to engage in protected forms of expression. The TEA joins in their challenge. *See Craig v. Boren*, 429 U.S. 190, 195 (1976).

56.     It is beyond cavil that "[e]ntertainment … is protected" expression under the First Amendment. *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 65 (1981). "[M]otion pictures, programs broadcast by radio and television, and live entertainment, such as musical and dramatic works fall within the First Amendment guarantee." *Id.* The First Amendment protects exotic dance and other forms of non-obscene erotic expression. *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000). Movies, books, and other kinds of "nonobscene, sexually explicit materials involving persons over the age of 17 are protected by the First Amendment." *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994). And it is clear that commercial speech such as "advertising pure and simple—falls within those bounds" of protected speech. *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 637 (1985).

57.     Unlike the Louisiana statute addressed in *Doe I v. Landry*, 909 F.3d 99 (5th Cir. 2018) that banned "nude" dancing performed by women under the age of 21 at alcohol-licensed strip clubs, S.B. 315 totally inhibits the rights of *all* people between 18 and 20 years of age from engaging in any form of expression via employment or contract for or at any and all SOBs. Indeed, S.B. 315 cannot even be likened to a time, place, manner restriction because it bans all individuals under the age of 21 from working at an SOB at any time, in any place, and in any manner.

58.     "[T]he government cannot prohibit compensation for the exercise of First Amendment rights." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County, Tennessee*, 274 F.3d 377, 397 (6th Cir. 2001). S.B. 315 does just that. Ms. Man cannot earn money by performing any kind of dance, erotic or not, nude, semi-nude, or fully clothed, at any SOB. Mr. Valadez and Ms. Reyes cannot sell erotic literature, adult-oriented magazines, or videos to other consenting adults. *See Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1040 (S.D. Ohio 2016), aff'd, 714

Fed. Appx. 565 (6th Cir. 2017) (observing that "[t]he First Amendment protects the right to distribute books"). Even Mr. Carrizoza, whose job duties included commercial leafletting, has had his First Amendment right to engage in commercial speech on behalf of an SOB infringed.

**B.      Impairment of Associational Freedom**

59.      On its face and as-applied, S.B. 315 specifically violates Ms. Man's right to engage in association for expressive purposes. *See Deja Vu of Nashville,* 274 F.3d at 396. It is recognized that dancers, DJs, other club personnel, "and customers work together as speaker and audience to create an erotic, sexually-charged atmosphere, and although society may not find that a particularly worthy goal, it is a shared one nonetheless." *Id.*

60.      S.B. 315's age restrictions also violate the TEA's members' associational rights in this regard. Since all economic relationships between a business and any 18-20-year-old person are now considered illegal *per se* if that business features protected expression involving sexuality, "the statute quite literally establishes guilt by association alone, without any need to establish that an individual's association [with an SOB] poses the threat feared by the Government in proscribing it. The inhibiting effect on the exercise of First Amendment rights is clear." *See United States v. Robel*, 389 U.S. 258, 265 (1967). Indeed, as seen in Mr. Carrizoza's case, he is not allowed to do any work promoting a club because S.B. 315 makes his employment by, and association with, an SOB illegal.

**C.      Unconstitutional Overbreadth**

61.      All Plaintiffs challenge S.B. 315 as overbroad. The overbreadth doctrine "permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when 'judged in relation to the statute's

plainly legitimate sweep.'" *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612-615 (1973)). "[P]articularly where conduct and not merely speech is involved … the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick*, 413 U.S. at 615.

62.     It is impossible to compare S.B. 315's legitimate and illegitimate sweep because its sweep is total: all 18–20-year-old men and women and all SOBs are denied the right to partake in any kind economic relationship involving all forms of expression. A 19-year-old like Ms. Man cannot be hired to provide live or recorded dance, music, or even decorate the interior of an SOB. A 20-year-old like Mr. Carrizoza cannot be hired by an SOB to engage in activity as innocuous as handing-out flyers in exchange for payment. Indeed, the breadth of S.B. 315's amendments even criminalize the act of employing or contracting with a 20-year-old "child" to engage in core political speech on behalf of an SOB at the Capitol.

63.     It is evident that instead of targeting the evils that are within the allowable area of the government's control, S.B. 315's approach is to completely trample the rights of all 18-20-year-old individuals to engage in all forms of protected speech and expressive conduct at or in connection with any kind of work at an SOB. This is the very kind of fatally overbroad statute that courts routinely strike down as offensive to the First Amendment.

### COUNT II
**Violation of U.S. CONST. amend. XIV—Due Process**
**Violation of TEX. CONST. art. 1, § 19—Due Course of Law**

64.     The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV. The substantive component of the Due Process Clause "protects individual liberty against

'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). Further, "[w]hen vagueness permeates the text of such a law, it is subject to facial attack" as violative of due process. *Morales*, 527 U.S. at 55.

65.     The Texas Constitution's analogous due course of law clause provides that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." TEX. CONST. art. I, § 19. "[T]he Texas due course of law protections in Article I, § 19, for the most part, align with the protections found in the Fourteenth Amendment to the United States Constitution." *Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 86 (Tex. 2015).

**A.     Deprivation of Occupational Liberty**

66.     On its face and as-applied, S.B. 315's increased minimum age requirements violates all of the individual Plaintiffs' substantive due process rights to enjoy occupational liberty without arbitrary interference from the State.

67.     Under both state and federal constitutions, all individual Plaintiffs have a protectible liberty interest in pursuing an occupation of their choice. "Occupational freedom, the right to earn a living as one chooses, is a nontrivial constitutional right entitled to nontrivial judicial protection." *Patel*, 469 S.W.3d at 123 (Willett, J., concurring).

68.     The Supreme Court has long recognized that the Fourteenth Amendment protects the rights of citizens to work where they want, earn their livelihood by any lawful calling, and to enter into necessary contracts:

> Chief among such contracts is that of personal employment, by which labor and other services are exchanged for money or other forms of property. If this right be struck down or arbitrarily interfered with, there is a substantial impairment of liberty in the long-established constitutional sense. The right is as essential to the laborer as to the capitalist, to the poor as to the rich; for the vast majority of persons have no other honest way to begin to acquire property, save by working for money.

*Coppage v. State of Kansas*, 236 U.S. 1, 14 (1915), overruled in part by *Phelps Dodge Corp. v. N.L.R.B.,* 313 U.S. 177 (1941); *see also Truax v. Raich,* 239 U.S. 33, 41 (1915). "[T]his liberty may not be interfered with, under the guise of protecting the public interest, by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the state to effect." *Meyer v. Nebraska*, 262 U.S. 390, 399-400 (1923).

69.     The modern Supreme Court has continued to recognize that the right to pursue a lawful calling "free from unreasonable governmental interference" is guaranteed under the Constitution because it is "objectively, deeply rooted in this Nation's history and tradition." *Greene v. McElroy*, 360 U.S. 474, 492 (1959); *see also Conn v. Gabbert*, 526 U.S. 286, 291-92 (1999).

70.     The Fifth Circuit has not deviated from these precepts; it has also "confirmed the principle that one has a constitutionally protected liberty interest in pursuing a chosen occupation." *Stidham v. Tex. Comm'n on Private Sec.*, 418 F.3d 486, 491 (5th Cir. 2005) (citations omitted). "It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure." *Phillips v. Vandygriff*, 711 F.2d 1217, 1222 (5th Cir. 1983) (quoting *Truax*, 239 U.S. at 41); *see also Brantley v. Kuntz*, 98 F. Supp. 3d 884, 889–90 (W.D.Tex. 2015) ("The liberty protected by substantive due process encompasses an individual's freedom to pursue his or her chosen profession").

71.     S.B. 315 deprives all individual Plaintiffs of their occupational liberty because it operates to criminalize and therefore completely prohibits their right to work at an SOB. *See Truax*, 239 U.S. at 38-39 (observing that challenged law applicable to employers operated directly on workers because if enforced, it "would compel the employer to discharge a sufficient number of his employees" to comply with the law).

72.     This goes far beyond a mere licensing requirement; S.B. 315 has completely voided all individual Plaintiffs' legal rights and capacities to choose whether to work at or contract with an SOB. Indeed, Section 43.251 of the Penal Code "implicitly mandates that … the child's consent to such employment is not legally operative." *Coutta v. State*, 385 S.W.3d 641, 656 (Tex. App.— El Paso 2012, no pet.). The same holds true for S.B. 315's amendments to the Texas Civil Practice & Remedies and Labor Codes; these laws nullify the right, ability, and capacity of every 18, 19, or 20-year-old Texan to choose whether he or she wants to engage in an economic relationship with an SOB.

## B.     Impairment of Vested Rights

73.     Additionally, as-applied to Plaintiff Carrizoza, S.B. 315 has deprived him of "[p]rivileges, licenses, certificates, and franchises … [that] qualify as property interests for purposes of procedural due process." *Wells Fargo Armored Serv. Corp. v. Georgia Pub. Serv. Comm'n*, 547 F.2d 938, 941 (5th Cir. 1977).

74.     Before S.B. 315 became effective, Mr. Carrizoza obtained an SOB license from local government so that he could lawfully work at or for an SOB. Once S.B. 315 went into effect, the occupational rights that Mr. Carrizoza enjoyed under the grant of this license were nullified.

75.     Further, Mr. Carrizoza has obtained training and the corresponding occupational license to work as a non-commissioned security officer. *See* TEX. OCC. CODE § 1702.221. Nonetheless, even though he has obtained permission from the state to work as a security guard, S.B. 315 has taken away, or at least threatens to take away, Mr. Carrizoza's right to use that certification to provide security services at an SOB, solely because of his age. *See Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 220 (5th Cir. 2012) ("once issued, a license or permit cannot be taken away by the State without due process").

### C.     Vagueness & Overbreadth

76.     All Plaintiffs challenge S.B. 315's amendments as void for vagueness. Vagueness may invalidate a criminal law if it fails "to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits," or if it "authorize[s] and even encourage[s] arbitrary and discriminatory enforcement." *Morales*, 527 U.S. at 55.

77.     S.B. 315's amendments to the Texas Labor Code and Civil Practice and Remedies Code are vague because they fail to specify *what* "work" or "services" may or may not be provided by an individual younger than 21 years of age to an SOB.

78.     Likewise, Section 43.251(b) is fatally vague because it fails to specify whether employing or authorizing an 18-20-year-old to work "in a sexually oriented commercial activity" is unlawful. TEX. PENAL CODE § 43.251(b)(2). That is because the statute defines a "sexually oriented commercial activity" not as some category of activity *per se*, but as a category of businesses defined by their facially lawful offerings ("a massage establishment, nude studio, … or other similar commercial enterprise the primary business of which is the offering of a service that is intended to provide sexual stimulation or sexual gratification to the customer"). TEX. PENAL CODE

§ 43.251(a)(5). Thus, Section 43.251 does not specify whether it is unlawful for a "child" like Mr. Valadez or Mr. Carrizoza to merely work "in" a place or business classified as a "sexually oriented commercial activity," if it is unlawful for a 20-year-old "child" to participate "*in* a sexually oriented commercial activity" featured at or offered by the business, or both.

79.     The net effect is that the plain language of these amended laws now sweep a vast amount of lawful conduct, economic relationships, and constitutionally protected activities into their ambit. *Morales*, 527 U.S. at 60.  They make it illegal for a strip club to hire any 18-20-year-old individual like Mr. Carrizoza to perform any work or provide any service, *e.g.*, check patrons at the door, provide security, wash the dishes, sweep the floor, paint the exterior, stock food and beverages, or perform accounting services at a remote office. Unless the State meant to criminalize *all* forms of work that may be performed at or for an SOB by an 18-20 year old—regardless of the nature of his or her work—the vagueness doctrine dooms these laws because they "fail[] to give the ordinary citizen adequate notice of what is forbidden and what is permitted." *Id.*

80.     If, on the other hand, these laws mean what they say—that no "child" under the age of 21 may by hired or contracted to provide any kind of consensual and lawful work or service for or at an SOB in any circumstance—they suffer from unconstitutional overbreadth. *See Smith v. Thaler*, 526 Fed. Appx. 395, 403 (5th Cir. 2013); *Hersh v. U.S. ex rel. Mukasey*, 553 F.3d 743, 762, n. 23 (5th Cir. 2008) (recognizing that "[i]n cases that do not involve First Amendment claims, a statute is overbroad if it is 'unconstitutional in all of its applications'") (citation omitted).

81.     Indeed, though they have not yet been terminated from their current positions, Plaintiffs Valadez, Reyes, and Carrizoza work different kinds of jobs at different kinds of SOBs, and they have no way of knowing whether they will wake up tomorrow only to find that officials

have cited their respective employers just because they pay these individuals to do a job, or that their employers have decided that it is not worth the risk to find out whether officials will come knocking.

82.     Any plausible reading of the law's textual amendments yields a completely irrational and arbitrary result: making it illegal for an SOB to employ or contract with people just like the individual Plaintiffs no matter what kind of work they happen to be engaged in. Whether couched as vagueness or overbreadth, the result is the same—S.B. 315's operation violates due process by going so far beyond its aims that it misses the mark entirely.

**COUNT III**
**Violation of U.S. CONST. amend. XIV—Equal Protection Clause**
**Violation of TEX. CONST. art. 1, § 3—Equal Protection Clause**

83.     The Equal Protection Clause of the Fourteenth Amendment provides, in relevant part, that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV. The Equal Protection Clause prohibits the government from creating classifications that treats one group of individuals differently from a similarly situated group without a rational basis for the difference, or that operates to impair the fundamental rights of a select group of people. *Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 312, n. 3 (1976).

84.     The Texas Constitution provides that "[a]ll free men, when they form a social compact, have equal rights…." TEX. CONST. art. I, § 3. The "federal analytical approach applies to equal protection challenges under the Texas Constitution." *Bell v. Low Income Women of Tex.*, 95 S.W.3d 253, 266 (Tex. 2002).

85.     On its face and as-applied, all individual Plaintiffs challenge S.B. 315 as violative of equal protection because it renders them categorically ineligible to provide any form of work

involving expressive activity at or for an SOB. Whether it is performing dance, selling adult materials, or simply leafletting—none of them have an alternative means of engaging in constitutionally protected expression at or on behalf of any SOB in the State of Texas.

86.     All individual Plaintiffs also challenge S.B. 315 on equal protection grounds because a state may only "discriminate on the basis of age without offending the Fourteenth Amendment if the age classification in question is rationally related to a legitimate state interest." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 83 (2000). A law is subject to invalidation if the varying treatment of different groups of persons is "so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the [government's] actions were irrational." *Id.* (citation omitted). Imposing severe economic hardship on a narrow band of young adults to ostensibly combat crimes that may be visited upon almost any adult at any age is patently inconsistent with equal protection of the laws.

87.     The TEA also challenges S.B. 315 on equal protection grounds because it singles-out SOBs for discriminatory treatment. "Before such [SOBs] existed, children found places and opportunities for [crime], and they would find places were such [SOBs were] to become extinct. Singling out [SOBs] from all other establishments is an act of discrimination, not policy." *Aladdin's Castle, Inc. v. City of Mesquite*, 630 F.2d 1029, 1040 (5th Cir. 1980), rev'd in part, 455 U.S. 283 (1982).

88.     Consider a comparator—"the commercial lodging industry [which] is one of the top venues for human trafficking in Texas, with establishments being utilized for forced engagement in commercial sex…. There are concerns that this industry is not equipped with the proper training to identify risk factors for human trafficking and that there are no guidelines that

would make the industry accountable for reporting suspected trafficking." Senate Research Center, Bill Analysis, H.B. 290.

89.     Did the 87th Legislature make it unlawful for all hotels and motels to employ any person under the age of 21? Of course not. It did the logical thing by passing a law mandating that commercial lodging operators must post some signage and require their employees to complete a "human trafficking awareness and prevention training program" for at least 20 minutes once a year. Tex. H.B. 390, 87th Leg. R.S. (2021); see Tex. Bus. & Com. Code § 114.0051. In contrast, S.B. 315 irrationally treats all 18-20-year-old men and women as categorically ineligible to work at any SOB in any capacity.

## CONSTITUTIONAL STANDARDS OF REVIEW

90.     Whether considered in the context of some or all of the Plaintiffs and their claims, one thing is clear—S.B. 315 cannot withstand any form of constitutional scrutiny.

### A.     Strict Scrutiny

91.     Laws directly impairing the exercise of fundamental rights, as well as classificatory laws that "target … or impact a fundamental right … will be strictly scrutinized and upheld only if it is precisely tailored to further a compelling government interest." *Sonnier v. Quarterman*, 476 F.3d 349, 368 (5th Cir. 2007); *see also Murgia*, 427 U.S. at 312; *Police Dept. of City of Chicago v. Mosley,* 408 U.S. 92 (1972); *Alexander v. United States*, 509 U.S. 544, 557 (1993) ("First Amendment activities are subject to First Amendment scrutiny … where a statute based on a nonexpressive activity has the inevitable effect of singling out those engaged in expressive activity").

92.     S.B. 315 does not serve the state's compelling interest in reducing the purported negative secondary effects of SOBs, let alone combat the proliferation of non-consensual activities and unlawful harms that criminals may impose on young victims. The only thing that S.B. 315 achieves is outlawing all legal and consensual working relationships between every SOB and every 18-20-year-old man and woman who wants to engage in protected forms of expression individually, or with others, at an SOB.

93.     Narrow tailoring requires the government to show that less restrictive means could accomplish the interest at stake. There is nothing "precise" or "narrowly tailored" about a law that puts all 18-20-year-old persons out of work solely because they have chosen to work at SOBs for or in conjunction with an expressive purpose. Eliminating all individual Plaintiffs' right to perform any and all work at or for an SOB—specifically work that involves expressive activity—does not satisfy strict scrutiny.

## B.     Intermediate Scrutiny

94.     S.B. 315 does not survive intermediate scrutiny. Although it appears that the state had the constitutional power to enact the law and rooted it in the purported justification of combatting human trafficking and associated crimes, intermediate scrutiny demands more. The state has the burden of proving that these age-based restrictions will further its interests, and that the restrictions are no greater than essential. *United States v. O'Brien*, 391 U.S. 367 (1968).

95.     Banning all individuals between 18-20 years of age from working at or for all SOBs for any lawful purpose does not further the government's interest in combatting human trafficking and related crimes. It does not appear that the state has relied on any statistics, evidence, reports, or studies to support the idea that removing all 18-20-year-old men and women from the pool of

adults who may work at or for SOBs somehow reduces the risks of human trafficking or staunches crime.

96.     The restriction is also *far* greater than essential. A state's interest in protecting children from trafficking and sexual exploitation, however powerful and laudable, does not justify the total suppression of all forms of legitimate and lawful work (expressive or non-expressive) that may be performed by 18-20-year-old adults at an SOB. If accepted, such logic would empower the government to ban virtually any group of adults from engaging in constitutionally protected activities and otherwise lawful economic activity under the banner of protecting individuals deemed to be uniquely vulnerable to criminal exploitation and vices. "Surely, this is to burn the house to roast the pig." *Butler v. State of Mich.*, 352 U.S. 380, 383 (1957).

## C.     Rational Basis

97.     Laws that impose differential burdens on non-suspect classes—or that interfere with non-fundamental liberty interests—are subject to rational basis review. The state's legislative prerogative is not unlimited; its chosen means must at least rationally relate to a legitimate government interest. *St. Joseph Abbey v. Castille*, 712 F.3d 215, 223 (5th Cir. 2013). "The great deference due state economic regulation does not demand judicial blindness to the history of a challenged rule or to the context of its adoption nor does it require courts to accept nonsensical explanations for regulation." *Id*. at 226.

98.     S.B. 315's age-based restrictions are not rationally related to the state's legitimate interest in combating the evils of trafficking and sexual exploitation. True, some might claim, people between 18-20-years old might be more susceptible to becoming victims of crime and other ills, so therefore the state must shield them from the purported harms and vices that may be present

at SOBs. But this proposition is belied by reason and the legislation's actual scope. Just ask Mr. Carrizoza, a 20-year-old male whose job is to provide security at an SOB, or Mr. Valadez, a 19-year-old male who makes his living at an adult bookstore.

99.     Obvious methods of eliminating the cited forms of criminality might include laws that enable officials to identify, arrest, and prosecute the perpetrators. But S.B. 315 does not provide for any of that; it creates no new law enforcement tools or enhanced penalties for human traffickers, sexual predators, or other criminals in their orbit. S.B. 315 simply imposes absolute liability on an SOB for entering any lawful and consensual economic relationship with an individual who has reached the age of majority. SOBs are not *de facto* criminal enterprises merely because their commercial activities involve matters of a sexual nature; if that were the case, it would be illegal for every adult to work at or patronize an SOB establishment.

100.     Of course, the state will claim that SOBs, while not illegal enterprises themselves, are hotbeds of illegal activity that youth must avoid. But once again, S.B. 315 does not curtail the number of SOBs, impede their profits, further regulate their activities, or limit the kinds of individuals who may choose to patronize SOBs. Indeed, S.B. 315 does not even prevent people over the age of 18 from potentially coming into contact with wrongdoers at SOBs at all. Thus, all of the individual Plaintiffs can visit an adult bookstore or a strip club as much as they like—they just cannot work at an SOB for any sort of lawful pecuniary gain.[8]

---

[8] Sections 1-4 of S.B. 315 amended various provisions of the Alcoholic Beverage Code and the Business & Commerce Code to make an uncontroversial prohibition express—people under the age of 18 may not enter the premises of an SOB. *See* Tex. S.B. 315, §§ 1-4, 87th Leg. R.S. (2021) (*amending* TEX. ALCO. BEV. CODE § 106.17 ("An individual younger than 18 years of age may not be on premises covered by a permit or license issued under this code if a sexually oriented business, as defined by Section 243.002, Local Government Code, operates on the premises"); TEX. BUS. & COM. CODE § 102.0031 ("A sexually oriented business may not allow an individual younger than 18 years of age to enter the premises of the business")).

101.    S.B. 315 expands the concept of a 'child' to include adults who have otherwise reached the age of majority solely for the purpose of criminalizing employment or work at SOB. But to what end? Is a 20-year-old man somehow more vulnerable to becoming the victim of sexual exploitation because he makes a living by parking cars or providing security at an SOB? *See Castille*, 712 F.3d at 223 ("[A] hypothetical rationale, even post hoc, cannot be fantasy"). If such a justification could be accepted, an age-ban could apply to every establishment in which young people might encounter exploitative lechers and vice—including the Texas Legislature itself. After all, as one woman recounted:

> "I said, 'Hi Representative, how are you?' Then he slowly looked me up and down, counted out more money, reached out his hand and said, 'B****, you want to f***with me tonight?' "I said 'No, thank you' and physically stepped back," Lauren recalled. [9]

102.    S.B. 315 does not even expand the range of "children" protected by a raft of existing criminal laws designed to protect them from sexual exploitation and related crimes. Except when it comes to an economic relationship now deemed harmful to a "child" who has reached the age of majority, Texas's criminal laws that prohibit offenses against young persons still define a "child" as someone who is under eighteen—including the trafficking statute itself. *See* TEX. PENAL CODE § 20A.01(1) (defining a "child" to mean "a person younger than 18 years of age"); *id*. at § 22.011 (c) (defining a "child" as "a person younger than 17 years of age" for the sexual assault statute); *id*. at § 21.02(a) (incorporating § 22.011's definition of a "child" for the continuous sexual abuse of children statute); *id*. at § 21.11 (defining a "child" as someone

---

[9] Olivia Messer, *You Want to F*ck With Me Tonight?': Horror Stories from the Texas Capitol*, Daily Beast, Dec. 7, 2017, https://www.thedailybeast.com/you-want-to-fck-with-me-tonight-horror-stories-from-the-texas-capitol, (*last accessed* June 13, 2021).

"younger than 17 years of age" for purposes of criminal indecency); *id*. at § 43.25 (criminalizing "sexual performance" by "a child younger than 18 years of age").

103.     So, while it remains lawful for someone to engage in consensual sexual contact with an 18-year-old or produce and display pornography that features a 19-year-old, S.B. 315 makes it illegal for an SOB to employ a 20-year-old man like Mr. Carrizoza as a security guard, 19-year-old men and women like Mr. Valadez and Ms. Reyes as clerks, or to allow a 19-year-old woman like Ms. Man to perform as an exotic dancer so that she can pay her rent.

104.     The relationship between S.B. 315's minimum age requirements to the laudable objectives purportedly at stake is so attenuated as to render the law arbitrary and irrational. As the Texas Supreme Court put it, due process is violated if, "when considered as a whole, the statute's actual, real-world effect as applied to the challenging party could not arguably be rationally related to, or is so burdensome as to be oppressive in light of, the governmental interest." *Patel*, 469 S.W.3d at 87.

## <u>REQUEST FOR DECLARATORY RELIEF</u>

105.     Plaintiffs seeks declaratory relief pursuant to Section 1983 and 28 U.S.C. §§ 2201-2202. *Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez*, 561 U.S. 661, 673 (2010) (section 1983 suit brought for violations of First and Fourteenth Amendments sought injunctive and declaratory relief). Plaintiffs ask the Court to declare as follows:

(a)     Texas Civil Practice & Remedies Code § 125.0015(a)(19), as amended by section 5 of S.B. 315, violates the state and federal constitutions, both facially and as-applied;

(b)     Texas Labor Code §§ 51.016(b), (h), (i), and § 51.031(b), as amended by sections 6 and 7 of S.B. 315, violates the state and federal constitutions, both facially and as-applied; and

(c)     Texas Penal Code § 43.251(a)(1), as amended by section 8 of S.B. 315, violates the state and federal constitutions, both facially and as-applied.

## REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

106.    Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs seek preliminary and permanent injunctive relief as follows:

(a)     An order temporarily and permanently enjoining Defendants, their officers, agents, servants, employees, and attorneys, those persons in active concert or participation with them, and anyone else who receives actual notice of the order by personal service or otherwise, from enforcing or implementing S.B. 315's amendments to (1) Chapter 125 of the Texas Civil Practice and Remedies Code; (2) Chapter 51 of the Texas Labor Code; and (3) Texas Penal Code § 43.251.

107.    Plaintiffs are entitled to injunctive relief because they have: (1) a substantial likelihood of success on the merits; (2) enforcement of S.B. 315's challenged provisions presents a substantial threat such that Plaintiffs will suffer and continue suffering irreparable injury absent the injunction; (3) Plaintiffs' real and threatened injury outweighs any harm that an injunction might cause the Defendants; and (4) an injunction will not impair the public interest.

108.    As set forth above, all Plaintiffs have a substantial likelihood of success on the merits because S.B. 315 has already infringed their rights under the First and Fourteenth Amendments.

109.    Without an injunction, all Plaintiffs will suffer and continue to suffer irreparable injury—deprivation of their constitutional rights. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"). The existence of alternative means or avenues of exercising one's rights "does not eliminate or render harmless the potential continuing constitutional violation of a fundamental right." *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. Unit B. 1981). Although no further showing of irreparable injury is necessary, *Opulent Life Church v. City*

*of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012), all individual Plaintiffs would also show that they have been deprived of their livelihoods—or now stand on the brink of losing their livelihoods—by virtue of S.B. 315.

110.    The harm to all Plaintiffs absent an injunction clearly outweighs any possible harm to the Defendants. S.B. 315 eliminates the rights of all individual Plaintiffs to earn a living through their chosen calling, thereby subjecting them to unemployment, poverty, and financial hardship. In contrast, an injunction will not significantly burden any of the Defendants' interests. This law adds nothing to the arsenal of laws that already exist. Officials will continue to have at their disposal a vast array of criminal and civil laws to combat human trafficking and other crimes until the Court can fully adjudicate the foregoing issues.

111.    The public interest favors the issuance of injunctive relief because preventing the violation of constitutional rights is "always in the public interest." *See Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."); *Ingebretsen on behalf of Ingebretsen v. Jackson Public Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996) ("the public interest [is] not disserved by an injunction preventing … implementation" of an unconstitutional enactment); *Texans for Free Enterprise v. Texas Ethics Commission*, 732 F.3d 535, 539 (5th Cir. 2013) ("[I]njunctions protecting First Amendment freedoms are always in the public interest").

## CLASS ACTION

112.    All individual Plaintiffs bring this action on their own behalf and as a class action

under Federal Rule of Civil Procedure 23. Plaintiffs propose classes defined as follows:

> **Due Process & Equal Protection Class.** All persons in the State of
> Texas who are between the ages of 18 and 20 years old and have
> worked or provided services—or who planned to work or provide
> services in the future—for or at any SOB in any capacity; and
>
> **First Amendment Class.** All persons in the State of Texas who are
> between the ages of 18 and 20 years old and have worked or provided
> services—or who planned to work or provide services— for or at any
> SOB in an occupation that involves protected expression or
> association for expressive purposes.

113.    The class members are so numerous that joinder is impracticable. FED. R. CIV. P.

23(a)(1). There are scores of SOBs in the State of Texas, and they employ or contract with

thousands of individuals, including men and women between the ages of 18-20 years of age. Where

general knowledge and common sense would indicate that a class is large, numerosity is satisfied.

114.    There are questions of law or fact common to the classes. FED. R. CIV. P. 23(a)(2).

It is clear that whatever factual nuances may exist among putative class members vis-à-vis their

particular lines of work, the legal relief sought is the same: a declaratory judgment and/or

corresponding injunctive relief striking down S.B. 315's age-related amendments to Texas laws as

offensive to the Texas and/or federal Constitutions as set forth above. The relief sought rests on

identical questions of law and would clearly resolve the claims on a classwide basis in one stroke.

115.    The claims of the representative parties are typical of the claims of the classes, in

that they arise out of the same factual and legal theories. FED. R. CIV. P. 23(a)(3). Typicality does

not require that the claims of the class members be identical to the claims of class representatives,

only that the disputed issues are as central to a named plaintiff's claims as they are to the class

members she seeks to represent. Indeed, the relief sought would benefit all class members in an identical manner.

116.    The representative parties will fairly and adequately protect the interests of the proposed classes. FED. R. CIV. P. 23(a)(4). They have no interests that conflict with or are antagonistic to the interests of the proposed classes. The individual Plaintiffs have retained attorneys who will vigorously prosecute this litigation and who are competent and experienced in aggregate litigation, litigation involving complex questions of constitutional law, and litigation involving or related to SOB regulation.

117.    Certification is appropriate under Federal Rule of Civil Procedure 23(b)(2), which applies when a defendant has "acted or refused to act on grounds that apply generally to the entire class." FED. R. CIV. P. 23(b)(2).

118.    Rule 23(b)(2) was specifically designed to facilitate the bringing of class actions with civil liberties at their heart. Official action or inaction directed to a class within the meaning of Rule 23(b)(2) qualifies as such even if enforcement has not taken effect or is threatened against some or all.

119.    Further, all individual Plaintiffs have live cases or controversies at the time of this complaint's filing, and they intend on moving for and obtaining class certification before their individual claims become moot. Certifying the proposed classes, which will have independent legal vitality once certified, will avoid the resultant waste of judicial resources if the claims of any named Plaintiff were to become moot because they turn 21 before final adjudication of this matter. *See Sosna v. Iowa*, 419 U.S. 393, 399-403 (1975).

## **ATTORNEYS' FEES**

120.    All Plaintiffs are entitled to recover reasonable and necessary attorneys' fees and expert fees. 42 U.S.C. § 1988.

## **CONCLUSION**

"Experience should teach us to be most on our guard to protect liberty when the government's purposes are beneficent." *Olmstead v. United States,* 277 U.S. 438, 479 (1928) (Brandeis, J., dissenting). Praiseworthy aims do not justify draconian laws that trample fundamental rights and impose severe economic hardships on adults who have every right to work at lawfully operated establishments of their own choosing.

For these reasons, Plaintiffs Felix Valadez, Luis Carrizoza, Abigail Reyes, Amada Man, and Texas Entertainment Association, Inc., respectfully request that judgment be entered in their favor and that they be awarded the following forms of relief:

a.    Injunctive and declaratory relief;

b.    Attorneys' fees;

c.    Expert fees;

d.    Costs of suit; and

e.    All other relief, in law and in equity, to which Plaintiffs may be justly entitled.

[signature block on next page]

Respectfully submitted,

WALLACE & ALLEN, LLP

*/s/ William X. King*
Casey T. Wallace
State Bar No. 00795827
Benjamin W. Allen
State Bar No. 24069288
William X. King
State Bar No. 24072496
440 Louisiana, Suite 1500
Houston, Texas 77002
Tel: (713) 227-1744
Fax: (713) 227-0104
cwallace@wallaceallen.com
ballen@wallaceallen.com
wking@wallaceallen.com
**ATTORNEYS FOR PLAINTIFFS**