**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **FELIX VALADEZ**, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | |
| | § | |
| **KEN PAXTON, in his official capacity as** | § | **CIVIL ACTION NO. 1:21-cv-519-RP** |
| **Attorney General of the State of Texas, and** | § | |
| **ED SERNA, in his official capacity as** | § | |
| **Executive Director of the Texas Workforce** | § | |
| **Commission,** | § | |
| | § | |
| *Defendants*. | § | |

<u>**PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY INJUNCTION**</u>

Plaintiffs Felix Valadez, Luis Carrizoza, Abigail Reyes, Amada Man, and Texas Entertainment Association, Inc. ("TEA"), move for a preliminary injunction against Defendants, Ken Paxton, in his official capacity as Attorney General of the State of Texas, and Ed Serna, in his official capacity as Executive Director of the Texas Workforce Commission.

Plaintiffs submit this amended motion to account for their concurrently filed motion for provisional class certification. On behalf of themselves and two Plaintiff Classes, they ask the Court to preliminarily enjoin Defendants and a Defendant Class comprised of local prosecutors from enforcing all of Senate Bill 315's ("S.B. 315") age-related amendments to the Texas Civil Practice & Remedies, Labor, and Penal Codes.

<u>**SUMMARY**</u>

The individual Plaintiffs are 19- and 20-year-old men and women who provide labor and services at companies classified as "sexually oriented businesses" ("SOB"). Although Plaintiffs

have attained the age of majority and are entitled to enjoy a full spectrum of fundamental and peripheral rights, obligations, and activities reserved for adults,[1] S.B. 315's age-related amendments criminalized their right to pursue and perform any kind of lawful work or service at or with any SOB.

These individuals, along with Plaintiff TEA, are likely to succeed on their constitutional claims. S.B. 315 infringes Plaintiffs' First Amendment rights to engage in protected forms expression, cannot survive intermediate scrutiny, and suffers from fatal overbreadth. Further, S.B. 315's amendments violate the Fourteenth Amendment's Due Process Clause and Article I, § 19 of the Texas Constitution, because the expansive applications of the amended laws rob the individual Plaintiffs of their occupational liberty without a rational basis.

## BACKGROUND

### A. S.B. 315's legislative impetus.

S.B. 315's caption states that it is an act "relating to restrictions on the age of persons employed by or allowed on the premises of a sexually oriented business; creating a criminal offense." Tex. S.B. 315 87th Leg. R.S. (2021).[2] State law defines a "sexually oriented business" as any "… adult bookstore, adult movie theater, adult video arcade … adult video store … or other commercial enterprise the primary business of which is the offering of a service or the selling, renting, or exhibiting of devices or any other items intended to provide sexual stimulation or sexual

---

[1] TEX. CIV. PRAC. & REM. CODE § 129.001 ("The age of majority in this state is 18 years"); *see e.g.,* TEX. FAM. CODE § 2.101 (marriage licenses); TEX. CONST. art. VI, § 1 (voting); 50 U.S.C. § 3802 (military service); TEX. ALCO. BEV. CODE § 106.09(a) ("… no person may employ a person under 18 years of age to sell, prepare, serve, or otherwise handle liquor, or to assist in doing so"); TEX. OCC. CODE. § 2001.418 (people under 18 may not "conduct or assist in the conduct of bingo"); TEX. GOV'T CODE § 466.3051(c) ("A person 18 years of age or older may purchase a ticket to give as a gift to another person, including an individual younger than 18 years of age").

[2] A copy of S.B. 315 is attached as **Exhibit A1**. (On file with the Court at Doc. No. 5-1).

gratification to the customer." TEX. LOC. GOV'T CODE § 243.002.

According to State Representative Shawn Thierry, what propelled S.B. 315's passage was a young Capitol staffer's allegation that a lobbyist had drugged her at a meeting, a charge that "caused the legislation [sic] to respond in a strong manner. It's a reminder that we must change the culture in how we treat young women. We will no longer look away when they are sexually abused, assaulted or placed in these [sexually oriented business] environments[.]"[3] The ensuing criminal investigation into this event is reported to have caused House Speaker Dade Phelan to "call[] on lawmakers and others to do more to protect women working in the Capitol and participating in legislative business...."[4]

Rather than fashioning new laws to protect the young women who work at the Capitol—an establishment that some have accused of harboring a combustible mixture of older men, young women, partying, and late-night alcohol consumption[5]—the 87th Legislature passed S.B. 315.

Championed as a law needed to combat crime and protect youth,[6] what S.B. 315 actually does is convert Plaintiffs' lawful occupational choices into illegal criminal engagements via age related amendments to three statutes:

---

[3] Karla Florez, *Texas House members pass anti-human trafficking proposal to 'change the culture in how we treat young women'*, MIDLAND TIMES, May 9, 2021, https://perma.cc/763R-BF8C, (*last accessed* June 17, 2021) (bracketing original). No charges were brought against the lobbyist. *See* Jay Root, *et al.*, *Inside the Texas Capitol date rape drugging case that wasn't*, HOUSTON CHRONICLE, May 25, 2021, https://perma.cc/48MB-EFCJ, (*last accessed* June 17, 2021).

[4] Tony Plohetski, *Texas House Speaker Dade Phelan addresses date-rape allegations against lobbyist*, KVUE, April 26, 2021, https://perma.cc/BPB6-XTDK, (*last accessed* June 17, 2021).

[5] Olivia Messer, *Women Expose The Secret Sexual Predators Inside Texas Politics*, DAILY BEAST, Nov. 7, 2017, https://perma.cc/WT4L-G2FF, (*last accessed* June 17, 2021); Madlin Mekelburg, *Here's what you need to know about reports of sexual harassment at the Texas Capitol*, AUSTIN AMERICAN-STATESMAN, May 3, 2021, https://perma.cc/LP2Q-P3PZ, (*last accessed* June 17, 2021).

[6] **Exhibit A2**, Senate Comm. on Licensing & Administrative Procedures, Bill Analysis, Tex. S.B. 315, 87th Leg. R.S. (2021); **Exhibit A3**, Senate Research Center, Bill Analysis, Tex. S.B. 315, 87th Leg. R.S. (2021). (On file with the Court at Doc. Nos. 5-2 and 5-3).

- Along with murder, rape, and arson, it is now a "common nuisance" for any SOB to employ or contract with any "individual younger than 21 years of age" for the performance of work or provision of services "at a sexually oriented business…." TEX. CIV. PRAC. & REM. CODE § 125.0015(a)(19);

- It is a Class A misdemeanor for any SOB to employ or enter into a contract "with an individual younger than 21 years of age" for the performance of work or provision of a service (unless she is an "independent contractor" hired "solely to perform repair, maintenance, or construction services"). TEX. LABOR CODE §§ 51.016(b), (g), (i)(3), 51.031(b); and

- It is a felony for a person who "employs, authorizes, or induces a child [a person younger than 21 years of age] to work: (1) in a sexually oriented commercial activity; or (2) in any place of business permitting, requesting, or requiring a child to work nude or topless." TEX. PENAL CODE § 43.251(b)(1)-(2).

## B.  The people affected by S.B. 315.

Plaintiffs Felix Valadez, Abby Reyes, and Amada Man are 19-year-old adults, while Luis Carrizoza is 20. These men and women are responsible for taking care of themselves and paying for their own needs. Each of them believed that upon reaching the age of majority, they could begin enjoying the full range of rights and responsibilities attendant to adulthood, including the right to choose their own occupations and places of work.[7]

For about the past year, Mr. Valadez and Ms. Reyes have worked as store clerks at an adult bookstore in the Dallas area. They sell legal adult-oriented content and items to other adults. It does not bother Mr. Valadez or Ms. Reyes that many may frown on their store's offerings or their choice of work; they enjoy their jobs and find different kinds of value in their labor.[8]

---

[7] Declaration of Felix Valadez ("Valadez Dec."), ¶¶ 1-3; Declaration of Abigail Reyes ("Reyes Dec."), ¶¶ 1-3, Declaration of Amada Man ("Man Dec."), ¶¶ 1-2, Declaration of Luis Carrizoza ("Carrizoza Dec."), ¶¶ 1-2. (On file with the Court at Doc. Nos. 5-9, 5-10, 5-11, and 5-12).

[8] Valadez Dec., ¶¶ 3-5; Reyes Dec., ¶¶ 3-5.

Mr. Valadez views his job as a platform to learn about sales in general and the mechanics of a profitable industry, one that he does not foresee disappearing anytime soon. Ms. Reyes enjoys the social aspect of her work, namely, ensuring that the customers with whom she regularly interacts—everyone from older women, couples, to members of the LGBTQ community—feel that they are welcomed at the store without judgment.[9]

Mr. Valadez and Ms. Reyes do not fear that working at an adult bookstore will expose them to crime or make them more susceptible to becoming victims. They do not know of any other adult bookstore workers who have been sexually exploited or victimized because of their work. In fact, the only workplace that has victimized Ms. Reyes was the gas station where she previously worked, as its management stole her wages.[10]

Because S.B. 315 and related bills[11] were framed in the press and on social media as laws that only banned young women from working as strippers, Mr. Valadez and Ms. Reyes did not think that their jobs were in the legislature's crosshairs. However, after they began hearing from people in their social circles that strip clubs were laying-off *all* individuals under 21 years of age, Mr. Valadez and Ms. Reyes realized that S.B. 315 was far broader than advertised and jeopardized their jobs too.[12]

---

[9] *See id.*

[10] <u>Valadez Dec.</u>, ¶ 7; <u>Reyes Dec.</u>, ¶ 6.

[11] *See* **Exhibit B1**, Tex. H.B. 1655 87th Leg. R.S. (2021); **Exhibit B2**, House Comm. on Licensing & Administrative Procedures, Bill Analysis, Tex. H.B. 1655, 87th Leg. R.S. (2021); **Exhibit C1**, Tex. H.B. 3520 87th Leg. R.S. (2021); **Exhibit C2**, House Comm. on Licensing & Administrative Procedures, Bill Analysis, Tex. H.B. 3520, 87th Leg. R.S. (2021); **Exhibit C3**, House Research Organization, Bill Analysis, Tex. H.B. 3520, 87th Leg. R.S. (2021). (On file with the Court at Doc. Nos. 5-4, 5-5, 5-6, 5-7 and 5-8).

[12] <u>Valadez Dec.</u>, ¶¶ 8-11; <u>Reyes Dec.</u>, ¶¶ 7-10.

Their concerns were and remain well-founded. Mr. Valadez and Ms. Reyes now fear that they will lose their livelihoods if officials show up one day to enforce S.B. 315's age restrictions against their SOB workplace. They are also extremely concerned that their employer could decide that continuing to employ them is not worth the risk of facing criminal penalties when and if these new age restrictions begin to be enforced.[13]

Mr. Valadez and Ms. Reyes are right to worry. Sudden job loss is exactly what happened to Plaintiff Amada Man, who has lost her right and ability to perform as an exotic dancer anywhere in Texas and now faces severe financial uncertainty and hardship.

Like Mr. Valadez and Ms. Reyes, Ms. Man became fully responsible for taking care of herself upon turning 18. Having worked at 'ordinary' jobs before, Ms. Man rejected the idea that she ought to be relegated to low-paying work and limited financial opportunities. To that end, she started performing as a dancer at clubs in the Dallas area last August.[14]

Ms. Man enjoys exotic dancing because it affords her occupational, economic, and expressive autonomy. She values the fact that she has the right to use her appearance and ability to dance as a vehicle for earning a healthy income—about $60 an hour, she estimates.[15]

Ms. Man has confronted criminality in her life—not at clubs—but at the 'ordinary' jobs she has held in the past. Ms. Man's life experiences have caused her to be deliberate about the clubs where she chooses to perform, so she selects venues that offer her safe environments patrolled by security cameras, managers, and bouncers like the next Plaintiff, Luis Carrizoza.[16]

---

[13] *See id.*

[14] Man Dec., ¶¶ 2-3.

[15] *Id.,* ¶¶ 3-4.

[16] *Id.,* ¶¶ 5-7; *see also* Declaration of Kevin Richardson ("Richardson Dec."), ¶¶ 10-11 (explaining common forms of rules and restrictions at clubs). (On file with the Court at Doc. No. 5-12).

Mr. Carrizoza is a 20-year-old man who started working as a bouncer at a strip club in Odessa in October 2019. He chose this job and place of work because, quite simply, that is what he wanted to do. As Mr. Carrizoza grew into the role and developed familiarity with his co-workers and the club's operations, he began viewing his position as a potential stepping-stone for moving up into a managerial role.[17]

Mr. Carrizoza's duties as a bouncer included exactly what one would expect. He monitored customers, intervened if problems arose, and generally made sure that the club's rules were being followed. He also had other responsibilities at the club. In addition to providing basic customer service duties, Mr. Carrizoza engaged in promotional activities on behalf of his employer, *i.e.*, distributing flyers around town to advertise for the club.[18]

Just a few months ago, Mr. Carrizoza applied for and received an SOB permit from the City of Odessa. Upon obtaining local government's blessing, Ms. Carrizoza believed that he could continue his work at the club as a bouncer uninterrupted. But, as it turned out, Mr. Carrizoza's effort to comply with the law and keep his job was an act of futility; once S.B. 315 went into effect, he lost his position at the club, along with all other under-21 employees and dancers who he worked alongside.[19]

But instead of heading to the unemployment office, Mr. Carrizoza found work with a security guard company, which required him to obtain additional certification from the state. Mr. Carrizoza's new employer has since posted him at the club where he once worked as a bouncer.[20]

---

[17] <u>Carrizoza Dec</u>., ¶¶ 2-3, 12.
[18] *Id*., ¶¶ 4-7.
[19] *Id*., ¶¶ 8-9.
[20] *Id*., ¶¶ 10-11.

While Mr. Carrizoza is glad that he still has a source of income, he fears losing his job all over again as he does not know if his current work at the club falls within S.B. 315's reach. Mr. Carrizoza would resume working directly for the club if he could, and he hopes that he will eventually be welcomed back. For now, all that is certain for him is that through no fault of his own, he lost the job that he wanted to do because of the lawmakers' decision to 'protect' him from crime.[21]

### C. S.B. 315 'protects' Plaintiffs by depriving them of their adult rights.

None of these voting-age adults believe that it is the province of the state to tell them that to protect children, they must cede their adult capacities to choose how and with whom they want to make a lawful living. It makes little sense to Mr. Valadez that "even though I can own as many guns as I want, vote, sign an apartment lease, or serve in the military, it could be illegal for me to work at any adult bookstore…." What baffles Ms. Reyes is that "even though I'm legally old enough to go to a strip club or buy adult materials and products if that's what I want to do, that I'm not old enough to earn a paycheck by selling legal adult materials and content to other adults."[22] And as Ms. Man observed, "[i]f I'm old enough to be evicted or sued for failing to my rent, and old enough to pursue my own lawsuit in a federal court without having to get a parent's consent, I should have the right and freedom to continue earning my living as a dancer."[23]

---

[21] *Id.*, ¶ 12.

[22] Valadez Dec., ¶ 12; Reyes Dec., ¶ 8.

[23] Man Dec., ¶ 12.

## **ARGUMENT**

An applicant for a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in her favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). All elements are satisfied.

### I. **LIKELIHOOD OF SUCCESS ON THE MERITS**

To demonstrate a likelihood of success on the merits, a plaintiff must make a *prima facie* showing that she will probably prevail, not that she is certain to succeed. *See Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011). When assessing the likelihood of success, courts look to the standards provided by the substantive law and apply the same burdens that the litigants would bear at trial. *Id.*; *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430 (2006).

### A. **Standing**

As a preliminary matter, S.B. 315 has already caused Ms. Man and Mr. Carrizoza direct injury because both individuals have lost their chosen occupations at SOBs. Although they have not yet lost their jobs, Plaintiffs Valadez and Reyes also possess standing because they: (1) intend on engaging "in a course of conduct arguably affected with a constitutional interest," that is, continuing to work at an SOB; (2) their "intended future conduct is '… proscribed by the policy in question," by virtue of their age; and (3) "the threat of future enforcement of the challenged policies is substantial," because they belong to the class of persons who are banned from working at SOBs.[24] *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330-36 (5th Cir. 2020), as revised (Oct. 30, 2020) (cleaned-up); *Truax v. Raich*, 239 U.S. 33, 38 (1915) ("The employee has manifest interest

---

[24] Valadez Dec., ¶¶ 9-13; Reyes Dec., ¶¶ 9-10; Man Dec., ¶¶ 9-10; Carrizoza Dec., ¶¶ 8-12.

in the freedom of the employer to exercise his judgment without illegal interference or compulsion…").

The experiences of Plaintiffs Man and Carrizoza are not unique, and the concerns of Plaintiffs Valadez and Reyes are not fantasy. The TEA's members are frequented by law enforcement, and they are no strangers to the aggressive enforcement of existing laws.[25] As a direct result of S.B. 315, the TEA's adult cabaret members have already laid off scores of men and women in recent weeks. They have decided that so long as S.B. 315's age restrictions remain in effect, allowing any 18, 19, or 20-year-old man or woman to work for, at, or with their businesses, in any capacity and for any purpose, is not worth the risk of facing prosecution.[26] *See Fenves*, 979 F.3d at 335 ("'when dealing with pre-enforcement challenges to recently enacted … statutes … courts will assume a credible threat of prosecution in the absence of compelling contrary evidence'") (quoting *N.H. Right to Life PAC v. Gardner*, 99 F.3d 8, 15 (1st Cir. 1996)).

### B.  First Amendment Claims

The individual Plaintiffs are likely to succeed on their First Amendment claims because S.B. 315's age restrictions infringe on their expressive and associational rights. The age restrictions cannot survive intermediate scrutiny because they do not further the state's interests, and these measures are far greater than is essential to serve those interests. The TEA joins their challenge because "[t]he legal duties created by the statutory sections … are addressed directly to vendors such as" their members. *See Craig v. Boren*, 429 U.S. 190, 194 (1976); *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 334 (5th Cir. 1981).

---

[25] <u>Richardson Dec.</u>, ¶¶ 8-10.

[26] *Id.*, ¶¶ 16-18.

**1. S.B. 315's age restrictions infringe Plaintiffs' clearly established rights.**

The rights at stake are fixtures of the Supreme Court's First Amendment precedents. Adults like Ms. Man have a protected right to perform lawful exotic dancing at an SOB. *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000). Men and women like Mr. Valadez and Ms. Reyes enjoy the right to circulate, sell, or promote lawful sexually explicit material at an adult bookstore. *See Smith v. People of the State of California*, 361 U.S. 147, 149 (1959); *Prison Legal News v. Livingston*, CIV. A. C-09-296, 2009 WL 5170229, at *8 (S.D. Tex. Dec. 17, 2009) ("The Supreme Court has repeatedly recognized the First Amendment rights of book distributors in a variety of circumstances, which exist independently of the rights of publishers or readers"). It is beyond dispute that the First Amendment protects the right of men like Mr. Carrizoza to distribute commercial advertising and promote an SOB in exchange for wages. *See Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620 (1980) (addressing door-to-door and on-street solicitation); *Bates v. State Bar of Arizona*, 433 U.S. 350, 363 (1977) ("our cases long have protected speech even though it is in the form of a paid advertisement"). Simply put, S.B. 315 categorically deprives Plaintiffs of their rights to engage in these protected forms of expression via their labor. *See Essence, Inc. v. City of Fed. Heights*, 285 F.3d 1272, 1283-89 (10th Cir. 2002) (finding age restriction on exotic dancing unconstitutional).

S.B. 315 also takes away Ms. Man's associational rights, which are "not reserved for advocacy groups." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000). The First Amendment "protects the entertainers and audience members' right to free expressive association. They are certainly engaged in a 'collective effort on behalf of shared goals.'" *See Déjà Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County, Tennessee*, 274 F.3d 377, 396 (6th Cir. 2001).

But unlike the three-foot 'buffer zone' between dancers and customers at issue in *Déjà Vu*, S.B. 315 sets the buffer zone between Ms. Man and her audience at the Texas border. Whether she wants to dance provocatively or tell knock-knock jokes, Ms. Man's right to engage in any form of expressive association with an audience at any SOB in Texas has been eliminated.

That Plaintiffs choose to exercise their expressive rights via work at SOBs does not diminish their constitutional injuries. The Supreme Court has made clear that "[a]n individual's right to speak is implicated when … [she] is subjected to 'restraints on the way in which the information might be used' or disseminated." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 568 (2011) (citation omitted). Plaintiffs' speech "is protected even though it is carried in a form that is 'sold' for profit[.]" *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 761 (1976). And it is no answer to say that Plaintiffs' First Amendment rights have not been violated because they may engage in other kinds of expressive work elsewhere; they have been left with no reasonable alternative avenues for their chosen expression at, with, or on behalf of any SOB in this state.

### 2. The state cannot satisfy intermediate scrutiny.

The issue turns to the appropriate degree of constitutional scrutiny. A law's predominant purpose—whether it aims at suppression of free expression or has some unrelated purpose— determines the appropriate level of review. *Doe I v. Landry*, 909 F.3d 99, 107-08 (5th Cir. 2018). Assuming for present purposes that intermediate scrutiny applies,[27] the state must show that its restrictions on the age of persons who may work at an SOB satisfy these requirements:

---

[27] Plaintiffs do not concede at this stage that strict scrutiny may apply.

[1] if it is within the constitutional power of the Government; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*Id.* (quoting *United States v. O'Brien*, 391 U.S. 367, 377 (1968)). At a minimum, S.B. 315 fails *O'Brien's* second and fourth factors.

(i) <u>The employment age restrictions do not further the state's interest</u>.

The specific interests that S.B. 315's age restrictions purportedly serve are to "establish[] crimes and civil prohibitions intended to deter persons younger than 18 from being on the premises of [SOBs]," or to "provide necessary mechanisms to safeguard our communities and children from trafficking and sexual exploitation, which are often harmful secondary effects of [SOBs]."[28]

While the facial validity of these statements is no doubt powerful, "[t]he Supreme Court … has been particularly leery of justifications for quashing speech to adults that rest on the purported protection of children." *Ridley v. Massachusetts Bay Transp. Auth.*, 390 F.3d 65, 86 (1st Cir. 2004); *Reno v. ACLU*, 521 U.S. 844, 875-79 (1997) ("[T]he mere fact that a statutory regulation of speech was enacted for the important purpose of protecting children ... does not foreclose inquiry into its validity").

Intermediate scrutiny requires the state to show that there is a connection between the actions being regulated—lawful work or services consensually provided by a 20-year-old adult at or with an SOB—and the claimed secondary effects, *i.e.*, trafficking and exploitation of children at or in connection with an SOB. *Doe I*, 909 F.3d at 109. As explained in their declarations, none of the Plaintiffs believe that their work makes them less safe or more prone to crime. Research

---

[28] **Exhibits A2 & A3.**

conducted to date has not revealed the existence of any reports or studies that isolate 18-20-year-old men and women as a class of people who are more prone to victimization or ruination because they happen to engage in some form of lawful work at an SOB.[29]

But even if the state does come forth with empirical or anecdotal evidence, it is apparent that S.B. 315's age restrictions would not further the identified objectives in any event. That is because while the enactment increases the minimum age for a person to work at an SOB to 21, it leaves the minimum age for a person to be on the premises of an SOB at 18. TEX. ALCO. BEV. CODE § 106.17 ("An individual younger than 18 years of age may not be on premises covered by a permit or license issued under this code if a sexually oriented business … operates on the premises"); TEX. BUS. & COM. CODE § 102.0031 ("A sexually oriented business may not allow an individual younger than 18 years of age to enter the premises of the business") (*amended by* Tex. S.B. 315, §§ 1-4, 87th Leg. R.S. (2021)).

So, while state laws still allow Ms. Man to visit an alcohol-licensed SOB to observe other exotic dancers or socialize with customers whenever she wants, S.B. 315 makes it illegal for her to engage in any kind of expressive work at an SOB so that she can pay her rent. A 20-year-old man like Mr. Carrizoza can spend all of his time and money at a club as a customer, but he may not earn a paycheck by circulating leaflets on behalf of an SOB. Mr. Valadez and Ms. Reyes can still spend hours in an adult bookstore buying thousands of dollars of adult content and novelties if they so choose, but they can no longer earn a living by selling or promoting those products to other adults.

---

[29] *See Essence,* 285 F.3d at 1284, n. 10 (observing that the municipality "has not, however, demonstrated that its interest in protecting those younger than twenty-one is substantial. [The municipality] must demonstrate that the harms it seeks to redress actually exist").

The disconnect between S.B. 315's objectives and employment age restrictions is obvious. S.B. 315 purports to create a moat around SOBs to protect children. But in reality, that moat exists only for those 18-20-year-old adults who want to engage in lawful expressive work at an SOB. Otherwise, those same adults may legally cross the drawbridge—just so long as they leave expression behind and have no desire to engage in lawful work.

(ii) <u>The age restrictions are far greater than essential</u>.

An "incidental restriction on alleged First Amendment freedoms [must be] no greater than is essential to the furtherance" of the state's interest, *O'Brien*, 391 U.S. at 377, and cannot "burden substantially more speech than is necessary to further the government's legitimate interests." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989). This standard asks whether the regulation "focuses on the source of the evils that [the government] seeks to eliminate … and eliminates them without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils." *Id.* at 799, n. 7.

S.B. 315 ignores the evils sought to be eliminated while at the same time banning all protected expression that Plaintiffs may supply to an SOB in the course of their work. Unlike the far narrower dancer age restriction addressed in *Doe I*, S.B. 315's effect is to prohibit all people between 18 and 20 years of age (men and women) from engaging in any kind of working relationship (by employment or contract) with any kind of SOB (alcohol-licensed or not) that involves any form of expressive activity (dancing, advertising, selling erotica, *etc.*). *Cf. Doe I,* 909 F.3d at 113 (observing that plaintiffs "may still participate in expressive conduct in non-alcohol-licensed establishments"). Indeed, S.B. 315 goes even further than the "complete ban on performing at adult entertainment establishments … for those under" 21 years of age that is currently at issue in

Florida. *Wacko's Too, Inc. v. City of Jacksonville*, 3:20-CV-303-TJC-MCR, 2021 WL 777885, at *11 (M.D. Fla. Mar. 1, 2021).

As opposed to using a uniquely blunt law to wipe-out an entire age bracket's right to engage in expressive activity through work at an SOB, the state could have surely devised numerous ways to achieve its laudable (albeit superficial) interests. After all, lawmakers just crafted far more sane and less draconian laws to help combat human trafficking at commercial lodging establishments.[30] But here, the state chose to take a maximalist approach, and in so doing, has violated an essential principle: "the government cannot prohibit compensation for the exercise of First Amendment rights." *Déjà vu,* 274 F.3d at 397.

### 3. S.B. 315 suffers from fatal overbreadth.

The correlated issue is that S.B. 315's age restrictions violate the overbreadth doctrine, which "permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.'" *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999) (citation omitted). The first step is to construe the laws at issue. *United States v. Williams*, 553 U.S. 285, 293 (2008).

The Texas Civil Practice & Remedies Code now considers the mere act of "employing or entering into a contract for the performance of work or the provision of a service with an individual younger than 21 years of age for work or services performed at" an SOB to be a "common nuisance" without exception. TEX. CIV. PRAC. & REM. CODE § 125.0015(a)(19). Likewise, the Labor Code criminalizes an SOB's "employ[ing] or enter[ing] into a contract … for the

---

[30] Tex. H.B. 390, 87th Leg. R.S. (2021) (adding Chapter 114, Texas Business & Commerce Code to create a range of requirements to raise awareness of and combat human trafficking at commercial lodging establishments)

performance of work or the provision of a service with an individual younger than 21 years of age," subject to an exception that excludes any expressive potential. TEX. LABOR CODE § 51.016(b), (g) ("…an independent contractor who contracts with a [SOB] solely to perform repair, maintenance, or construction services at the business").

As a result, these amended laws now encompass and criminalize virtually all economic relationships between 18-20-year-old adults and SOBs—even those that are not carried-out on the premises of an SOB. For instance, it is an unlawful "common nuisance" for Mr. Carrizoza to engage in expressive promotional work "at" an SOB's premises under the Civil Practice & Remedies Code. It is also illegal for him to engage in that promotional activity elsewhere because it is work "with" an SOB under the Labor Code.

Section 43.251 of the Penal Code now defines a "child" as a "person younger than 21 years of age." TEX. PENAL CODE § 43.251(a)(1). Consequently, it is a felony for any person, regardless of their *mens rea*, who "employs, authorizes, or induces" or "permits" an 18-20-year-old adult to perform any kind of exotic dance—whether that expressive activity is performed "entirely unclothed" or "clothed in a manner that leaves uncovered or visible through less than fully opaque clothing any portion of the breasts below the top of the areola … or any portion of the genitals or buttocks." *Id*. at § 43.251(a)(4)-(6), (b)(2). Of course, even if someone like Ms. Man happened to perform a dance routine in a flowing gown at an SOB, that would at least be a misdemeanor under the Labor Code.

Likewise, it is also a felony for any person who "employs, authorizes, or induces" Mr. Valadez or Ms. Carrizoza to sell, recommend, suggest, or promote any form of adult material at an adult bookstore because that constitutes work "in a sexually oriented commercial activity," *i.e.*, a

place defined as a "commercial enterprise the primary business of which is the offering of a service that is intended to provide sexual stimulation or sexual gratification to the customer." *Id.* at § 43.251(a)(5), (b)(1).

Beyond these examples, the sweep of the amended laws necessarily criminalizes the rights of adults to engage in a constellation of consensual First Amendment activities at or with an SOB in exchange for income. *See Bd. of Airport Com'rs of City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987). An 18, 19, or 20-year-old man or woman cannot work "at" or "with" an SOB (or "in a sexually oriented commercial activity") for the purpose of performing as a DJ, interior decorating, painting a mural or selling artwork, writing and posting advertisements in print or electronic media, designing a website, or lobbying on its behalf in Austin. Indeed, a legal prodigy who passes the bar exam at 19 or 20 could not even represent an SOB in court since the rendition of legal services would constitute the unlawful employment "with" a person under 21 years of age according to the Labor Code.[31]

It remains to be seen whether the state can offer some sort of limiting construction that avoids the overbreadth of S.B. 315's age restrictions. For now, it is safe to say that the unconstitutional applications of these amended statutes are both real and substantial in relation to their previously legitimate application to children under the age of 18.

### C.  Due Process Claims

The individual Plaintiffs are also likely to succeed on their due process claims under the Fourteenth Amendment and Article I, § 19 of the Texas Constitution. S.B. 315 irrationally and

---

[31] Rules Governing Admission to the Bar of Texas, Rule 2(a)(2) (setting the minimum age for licensure of attorneys at 18), https://ble.texas.gov/rule02.

arbitrarily deprives Plaintiffs of their liberty interest in having the freedom to pursue a lawful calling at a place of their own choosing.

### 1. S.B. 315 deprives Plaintiffs of their occupational liberty interest.

Over a century ago, the Supreme Court recognized that "the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure." *Truax,* 239 U.S. at 41. That right did not vanish with modernity. "[C]ourts have consistently held that the opportunity to pursue one's livelihood is a constitutionally protected liberty interest, which may not be arbitrarily denied." *Santos v. City of Houston, Tex.*, 852 F. Supp. 601, 607 (S.D. Tex. 1994). The Fifth Circuit has "repeatedly acknowledged the principle that a person has a liberty interest in pursuing an occupation." *Phillips v. Vandygriff*, 711 F.2d 1217, 1222 (5th Cir. 1983), on reh'g in part, 724 F.2d 490 (5th Cir. 1984) (collecting cases); *Stidham v. Tex. Comm'n on Private Sec.*, 418 F.3d 486, 491 (5th Cir. 2005) (recognizing the "constitutionally protected liberty interest in pursuing a chosen occupation").

Indeed, occupational liberty has been described as a *fundamental* right: "[t]he U.S. Supreme Court has repeatedly declared that the right to pursue a lawful calling 'free from unreasonable governmental interference' is guaranteed under the federal Constitution, and is 'objectively, deeply rooted in this Nation's history and tradition.'" *Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 93 (Tex. 2015) (Willett, J., concurring) (citations omitted); *see Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (describing "fundamental" rights under the Constitution).

What is uniquely offensive about the deprivation here is that S.B. 315 operates by way of retroactive infantilization. Although Plaintiffs could legally consent to working with or at an SOB on May 23, 2021, the next day, they could not. S.B. 315's amendments do not just make it illegal for SOBs to employ or contract with them, the absolute nature of the amended laws nullifies Plaintiffs' adult capacities to consent to working or contracting with an SOB for virtually any lawful purpose. *See Coutta v. State*, 385 S.W.3d 641, 656 (Tex. App.—El Paso 2012, no pet.) (observing that Section 43.251 "implicitly mandates that … the child's consent to such employment is not legally operative").

**2. The age restrictions do not rationally relate to the stated objectives.**

The government's power to regulate occupational rights is not unlimited. A restriction that impairs a protectible liberty interest must still be rationally related to the state's legitimate interest. *See St. Joseph Abbey v. Castille*, 712 F.3d 215, 222 (5th Cir. 2013).

Under Texas state law, a challenger may also show that "when considered as a whole, the statute's actual, real-world effect as applied to the challenging party … is so burdensome as to be oppressive in light of[] the governmental interest." *Patel*, 469 S.W.3d at 87. More acerbically stated, "[l]aws that impinge your constitutionally protected right to earn an honest living must not be preposterous." *Id*. at 93-94 (Willett, J., concurring).

Presumably, the state's position will be that S.B. 315's age restrictions are rationally related to protecting people like Plaintiffs from encountering predators and vice that may be present at SOBs. Or perhaps the state will claim that raising the minimum age for employment at an SOB will

somehow help officials spot or identify victims who are actual children under the age of 18.[32] These are "perfectly rational statement[s] of hypothesized footings for the challenged law. But it is betrayed by the undisputed facts." *Castille*, 712 F.3d at 223.

As explained above, S.B. 315 does not prevent the targeted demographic of adults from patronizing or visiting an SOB; they can still go to any SOB as much as they want under state law. S.B. 315 does absolutely nothing to limit the universe of lawful or unlawful purposes, encounters, and transactions that an 18-20-year-old patron or visitor at an SOB might experience—except, of course, when it comes to engaging in lawful employment.  This is no different than telling a person that once she turns eighteen, she may freely participate in activities that the state deems off-limits to children, *e.g.*, renting a jet ski, buying fireworks, or getting a tattoo, but that it is nonetheless illegal for her to work at a jet ski rental, a fireworks stand, or a tattoo parlor.[33]

The gulf between S.B. 315's means and objectives is further exposed in what those means do *not* include. Not a word in this legislation targets human traffickers, let alone creates new or enhanced tools for law enforcement to detect, apprehend, and prosecute wrongdoers or protect their victims. It does not impose harsher penalties on rogue, unlicensed, and unregulated SOBs that do breed crime, nor does it further regulate the products, services, or entertainment that may be offered at lawfully operated SOBs.

---

[32] Erica Proffer, *Advocates want to raise the minimum age for strippers to 21*, KVUE, April 27, 2021, https://perma.cc/K6PK-47J6, (*last accessed* June 17, 2021).

[33] TEX. SPEC. DIST. CODE § 3873.162(b) (prohibiting rental of watercraft to persons under 18 in Kaufman County). TEX. OCC. CODE § 2154.254(b) (restricting employment of persons under 18 at firework stands); TEX. HEALTH & SAFETY CODE § 146.012(a)(1) (limiting the right to tattoo people "younger than 18 years of age").

S.B. 315 does not even change the age of a "child" or a "minor" as those words appear in the raft of existing criminal laws designed to protect the public and youth against crimes ranging from indecency, prostitution, sexual abuse, enticement, to obscenity, *etc.*[34] The only conduct that the enactment criminalizes is the employment of an 18, 19, or 20-year-old adult 'child' who decided to make a lawful living by performing as a dancer, a bouncer, or a clerk "in a sexually oriented commercial activity."

In sum, a "generalized concern for children does not justify such a heavy-handed restriction on the exercise of a constitutionally protected individual right" enjoyed by an adult. *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 746 (5th Cir. 2008). Reducing adults to children for the exclusive purpose of preventing them from exercising their right to pursue a lawful calling with an SOB is arbitrary, irrational, and furthers no legitimate interest. There is no "rational connection between the statute[s] and the protection of children, and because the State offers none, we cannot sustain the law under this justification." *Id.*

### 3. S.B. 315's overbreadth renders it unconstitutionally vague.

When it comes to the individual Plaintiffs, the TEA's members, and members of the proposed classes, S.B. 315's age restrictions are either void for vagueness, or they violate the overbreadth doctrine beyond its ordinary First Amendment footing. *See Vill. of Hoffman Estates v.*

---

[34] *See, e.g.,* TEX. PENAL CODE § 20A.01(1) (defining a "child" to mean "a person younger than 18 years of age" for trafficking statutes); *id.* at § 22.011(c) (defining a "child" as "a person younger than 17 years of age" for the sexual assault statute); *id.* at § 21.02(a) (incorporating § 22.011's definition of a "child" for the continuous sexual abuse of a child statute); *id.* at § 21.11 (defining a "child" as someone "younger than 17 years of age" for purposes of criminal indecency); *id.* at § 25.04 (enticement of "a child younger than 18 years"); *id.* at § 33.021 (online solicitation of a minor "younger than 17 years of age"); *id.* at § 43.05 (causing a "child younger than 18 years to commit prostitution"); *id.* at § 43.24 (selling "harmful material" to "individual younger than 18 years"); *id.* at § 43.25 ("sexual performance" by "a child younger than 18 years of age"); *id.* at § 46.13 (making a firearm accessible to a "a person younger than 17 years of age"); *id.* at § 71.022 (criminalizing the recruitment or solicitation of a "younger than 17 years of age" into gangs).

*Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n.6 (1982) ("To this extent, the vagueness of a law affects overbreadth analysis").

S.B. 315's amendments convert Texas laws into restrictions that are akin to the 'gang congregation' ordinance addressed in the *Morales* case. To combat a plague of gang violence and murders, the City of Chicago criminalized loitering in public places with criminal gang members "so that the public may use such places without fear." *Morales*, 527 U.S. at 47. As with S.B. 315, the core problem with this draconian ordinance was that it went far beyond targeting unlawful congregations of criminals. It "broadly covers a significant amount of additional activity" such as loitering in a public place for entirely lawful and innocent purposes, which "is part of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment." *Id*. at 52-53. Given its breadth, the Supreme Court reasoned that the city could not have "meant to criminalize each instance a citizen stands in public with a gang member," so therefore "the vagueness that dooms this ordinance is not the product of uncertainty about the normal meaning of 'loitering,' but rather about what loitering is covered by the ordinance and what is not." *Id*. at 57.

Substitute "gang members" with SOBs, and "loitering" with "employing" or "entering into a contract," and the same problem can be seen here. If the state meant to criminalize every single form of lawful employment or contract labor between an SOB and an 18-20-year-old, these amended laws sweep an unlimited amount of legitimate conduct, economic relationships, and constitutionally protected activities into their ambit. *Morales*, 527 U.S. at 60; *see Smith v. Thaler*, 526 Fed. Appx. 395, 403 (5th Cir. 2013); *Hersh v. U.S. ex rel. Mukasey*, 553 F.3d 743, 762, n. 23 (5th Cir. 2008) (recognizing that "[i]n cases that do not involve First Amendment claims, a statute is overbroad if it is 'unconstitutional in all of its applications'") (citation omitted).

If, on the other hand, the state did not *really* mean to criminalize every kind of consensual economic or labor transaction between all 18-20-year-olds and SOBs, then these laws are void for vagueness as they do not explain *what* forms of employment or work are permissible. And if that is the case, the amended laws "fail[] to give the ordinary citizen adequate notice of what is forbidden and what is permitted," or at least encourages arbitrary and discriminatory enforcement depending on the whim of the enforcing official. *Morales*, 527 U.S. at 60.

Indeed, the law's stunning breadth is why the TEA's adult cabaret members have decided not to take any chances by terminating their employment and contractual relationships with anyone and everyone under the age of 21. The same reason animates why Mr. Carrizoza does not know whether his work at a club via a third-party might be illegal, and it is also why Plaintiffs Valadez and Reyes do not know whether they will wake up tomorrow only to find that officials have ended their jobs.

## II. IRREPARABLE INJURY

Plaintiffs have shown irreparable injury. It is well-established that "the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *Deerfield Beach*, 661 F.2d at 338. Moreover, "[t]he right to earn a livelihood and to continue in employment unmolested by efforts to enforce void enactments should similarly be entitled to protection in the absence of adequate remedy at law." *Truax*, 239 U.S. at 38.

The fact that Mr. Valadez and Ms. Reyes have not yet been forced out of their jobs does not diminish their injuries; the threat of enforcement is enough. *See Elrod v. Burns*, 427 U.S. 347, 373-74 (1976) ("It is clear therefore that First Amendment interests were either threatened or in fact being impaired at the time relief was sough"). Without an injunction, they may soon find

themselves in the same spot as Ms. Man—scrambling to figure out how to support themselves if and when their jobs come to an abrupt end, thereby subjecting them to unemployment, poverty, and financial hardship.

## III. BALANCE OF HARMS & PUBLIC INTEREST

Once an applicant has satisfied her showing of a likelihood of success and irreparable injury, "the traditional [equitable relief] inquiry calls for assessing the harm to the opposing party and weighing the public interest." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The balance of harms clearly weighs in Plaintiffs' favor.

If a court finds irreparable harm, a party opposing injunctive relief will "need to present powerful evidence of harm to its interests." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 296-97 (5th Cir. 2012). Defendants can cite no such evidence. They will continue to have at their disposal an arsenal of criminal laws designed to combat human trafficking and other crimes until the Court can fully adjudicate the foregoing issues.

The public interest also favors a preliminary injunction. The government certainly has a strong interest in enforcing its democratically adopted laws. That interest, though, yields when a challenged law violates the Constitution, because "the public interest is not disserved by an injunction preventing its implementation." *Opulent Life Church*, 697 F.3d at 298 (citations omitted); *Ingebretsen on behalf of Ingebretsen v. Jackson Public Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996) ("the public interest [is] not disserved by an injunction preventing … implementation" of an unconstitutional enactment).

## IV. SCOPE OF INJUNCTIVE RELIEF

Plaintiffs ask the Court to enjoin the Defendants, in their official capacities, from enforcing S.B. 315's age-related amendments to the laws discussed above. An injunction is proper against

Defendants and their agents because they have the explicit statutory authority to enforce the amended laws.[35] *See Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020); *Okpalobi v. Foster*, 244 F.3d 405, 414–15 (5th Cir. 2001). Indeed, the Attorney General routinely wields Chapter 125 of the Civil Practice & Remedies Code—which incorporates the Penal Code provisions at issue—against those accused of violating its provisions.[36]

Plaintiffs know firsthand that scores of people just like them have also suffered job loss and constitutional injury because of S.B. 315. To that end, Plaintiffs ask the Court to extend any preliminary relief not only to them, but to members of the proposed plaintiffs' classes as discussed in Plaintiffs' motion for class certification. All Plaintiffs ask the Court to issue an order that enjoins Defendants *and* members of a defendant class—all district, county, and city attorneys in the State of Texas—from enforcing or implementing S.B. 315's amendments to Chapter 125 of the Texas Civil Practice and Remedies Code; (2) Chapter 51 of the Texas Labor Code; and (3) Texas Penal Code § 43.251.

"Under the circumstances of this case, certification of the proposed defendant class simply allows for comprehensive and uniform injunctive relief for all members of the plaintiff class who might be harmed by the Act." *Tex. Med. Providers Performing Abortion Services v. Lakey*, 806 F. Supp. 2d 942, 953 (W.D. Tex. 2011), vacated in part, 667 F.3d 570 (5th Cir. 2012). The plain fact

---

[35] TEX. CIV. PRAC. & REM. CODE § 125.002(a)(19), (22) (providing that the attorney general may bring suit to enjoin a common nuisance, including violations of Penal Code Section 43.251); TEX. LABOR CODE § 51.016(h) (attorney general or commission may inspect records), § 51.033 (providing that the Texas Workforce Commission may assess administrative penalties), § 51.034 (attorney general may seek injunctive relief).

[36] Office of the Attorney General, *Human Trafficking*, https://www.texasattorneygeneral.gov/news/categories/human-trafficking; *Paxton Sues Austin Eco Bilingual School Founder Accused of Labor Trafficking*, https://www.texasattorneygeneral.gov/news/releases/paxton-sues-austin-eco-bilingual-school-founder-accused-labor-trafficking (*last accessed* June 17, 2021).

is that even if the Court awards injunctive relief to the individual Plaintiffs, "hundreds of individual state actors, properly accustomed to exercising their prosecutorial discretion, might choose to disregard a non-binding ruling from a federal court" and vigorously enforce the modified laws at issue. *Id.*

## V.  BOND AMOUNT

Plaintiffs should not be required to pay a bond. FED. R. CIV. P. 65(c). Plaintiffs do not seek any form of monetary relief and Defendants will suffer no pecuniary harm if an injunction is granted. The essential purpose of the injunctive relief sought is to preserve Plaintiffs' constitutional rights and ensure that they may at least continue lawfully earning money while this case remains pending.

## CONCLUSION

No one can deny that the state has a potent interest in shielding children from evildoers, harm, and vice. But that interest, no matter how obviously compelling, does not justify a performative enactment whose only real function is to infantilize adults, vitiate their constitutional rights, and destroy their right to decide how and where they want to make a living.

For these reasons, Plaintiffs ask the Court to preliminarily enjoin the enforcement of this unconstitutional enactment, and for any other relief to which they may be justly entitled.

[signature block on next page]

Respectfully submitted,

WALLACE & ALLEN, LLP

 /s/ William X. King
Casey T. Wallace
State Bar No. 00795827
Benjamin W. Allen
State Bar No. 24069288
William X. King
State Bar No. 24072496
440 Louisiana, Suite 1500
Houston, Texas 77002
Tel: (713) 227-1744
Fax: (713) 227-0104
cwallace@wallaceallen.com
ballen@wallacellen.com
wking@wallaceallen.com
**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

  I certify that the foregoing document has been served on counsel of record in accordance with the Federal Rules of Civil Procedure via filing through the Court's CM/ECF system on July 8, 2021.

    Christopher Hilton, Deputy Chief
    Ryan Kercher, Assistant Attorney General
    General Litigation Division
    Office of the Attorney General
    P. O. Box 12548, Capitol Station
    Austin, Texas 78711
    Tel: (512) 463-2120
    Fax: (512) 320-0667
    Ryan.Kercher@oag.texas.gov
    Christopher.Hilton@oag.texas.gov
    **ATTORNEYS FOR DEFENDANTS**

        */s/ William X. King*
        William X. King