IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| FELIX VALADEZ, LUIS CARRIZOZA, ABIGAIL REYES, AMADA MAN, and TEXAS ENTERTAINMENT ASSOCIATION, INC. | § § § § § | |
| *Plaintiffs* | § § § | |
| v. | § § | CIVIL ACTION NO. 1:21-CV-519 |
| KEN PAXTON, in his official capacity as Attorney General of the State of Texas, and ED SERNA, in his official capacity as Executive Director of the Texas Workforce Commission, | § § § § § § § | |
| *Defendants.* | § § | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' FIRST AMENDED
MOTION FOR PRELIMINARY INJUNCTION**

### I.   INTRODUCTION

Plaintiffs ask this Court to enjoin enforcement of duly enacted, bipartisan, unanimously passed legislation under the State's police power in pursuit of a legitimate and substantial governmental interest: preventing human trafficking at sexually-oriented businesses ("SOBs"). TEX. S.B. 315, 87TH LEG. R.S. (2021) ("SB315").[1] Along the way, Plaintiffs invite the Court to create vaguely-defined classes unsupported by basic pleadings requirements—including a defendant class consisting of every last district, county, and municipal prosecutor in the State of Texas. Plaintiffs are not entitled to the expansive injunction they request, which would offend the principles of federalism, irreparably harm the State of Texas, and disserve the public interest. The Court should decline Plaintiffs' request and deny their Amended Motion for Preliminary Injunction ("Motion").

---

[1] Bill text available at https://legiscan.com/TX/bill/SB315/2021 (*last accessed July 7, 2021*).

## II. BACKGROUND

SOBs play a significant role in human trafficking within the State of Texas. Exh. A, Decl. of Cara Foos Pierce, ¶ 3. SOBs attract traffickers, their trafficking clientele, and their trafficking victims. *Id.* at ¶¶ 5, 8. SOBs also play a significant role in the grooming process used by traffickers to desensitize young people to sexual taboos by repeated exposure to sexually charged commercial environments. *Id.* Human trafficking victims are very often between the ages of 18 and 21. *Id.* at ¶ 8.a. These victims frequently meet their trafficker at an SOB, or work at an SOB at the direction of a trafficker. *Id.* Nor are the SOBs involved in trafficking exclusively nude or exotic dance clubs. *Id.* at ¶ 3. A variety of SOBs have back rooms and private areas, sometimes ostensibly used for viewing pornography, where trafficking occurs. *Id.*

Against this backdrop, the Texas Legislature passed SB315. SB315 amends various sections of the Texas Alcoholic Beverage Code,[2] the Texas Business and Commerce Code,[3] the Texas Civil Practice and Remedies Code,[4] the Texas Labor Code,[5] and the Penal Code[6] to prohibit SOBs from employing or contracting with anyone under the age of 21, and to prohibit anyone under 18 from entering the premises of SOBs. The bill passed both houses of the Texas Legislature unanimously, with 173 legislators voting for it, and none voting against.[7] By its own terms, because of the overwhelming support with which it was adopted, SB315 became effective immediately when Governor Abbott signed it on May 24, 2021.[8] *See* SB315, § 10. SB315 affects various provisions implicating the attorney general, local law enforcement agencies, local district attorneys, and the Texas Workforce Commission. *See* SB315 §§ 3, 6; *see also* Tex. Bus. & Comm. Code § 102.004(a) ("The

---

[2] TEX. ALCOHOL BEVERAGE CODE, CHAPTER 106.
[3] TEX. BUS. & COMM. CODE, CHAPTER 102.
[4] TEX. CIV. PRAC. & REM. CODE § 125.0015.
[5] TEX. LABOR CODE §§ 51.016, 51.031.
[6] TEX. PEN. CODE § 43.251.
[7] https://legiscan.com/TX/text/SB315/id/2393975 (*last accessed July 7, 2021*).
[8] https://legiscan.com/TX/bill/SB315/2021 (*last accessed July 7, 2021*).

attorney general or appropriate district or county attorney, in the name of the state, may bring an action for an injunction or other process against a person who violates or threatens to violate Section…103.0031."); Tex. Labor Code § 51.016(h) ("The commission, the attorney general, or a local law enforcement agency may inspect a record maintained under this section if there is good reason to believe that an individual younger than 21 years of age is employed or has been employed by, or has entered into a contract…for the performance of work or the provision of service with, the sexually oriented business within two year preceding the date of the inspection.").

SB315 is designed to reduce trafficking at SOBs by raising the minimum age of employment at SOBs from 18 to 21, thereby increasing the life experience and maturity of SOB employees and making them less vulnerable to trafficking. Exh. A, Decl. of Cara Foos Pierce, ¶ 8.b. Raising the minimum employment age for SOBs from 18 to 21 makes it harder for human traffickers to use SOBs for trafficking. *Id.* at ¶ 7. First, raising the minimum employment age makes it easier for law enforcement to identify underaged persons entering the SOB. *Id.* at ¶ 6.a. Second, raising the minimum employment age makes it more difficult for traffickers to obtain fake identification for underage workers. *Id.* at ¶ 6.b. Third, hiring managers at SOBs can more easily identify underaged prospective employees posing as adults. *Id.*

Enjoining enforcement of SB315 would deprive the public, law enforcement, and prosecutors of a new and important tool in combatting human trafficking involving SOBs. *Id.* at ¶ 10. It would also have a chilling effect on law enforcement and prosecutorial human trafficking prevention efforts aimed at SOBs. *Id.*

Plaintiffs bring suit alleging violations of the First Amendment, and of the Fourteenth Amendment Due Process and Equal Protection clauses, as well as their Texas Constitutional counterparts. Plaintiffs include an exotic dancer (younger than 21) who alleges she lost her dancing engagements due to the adoption of SB315; a pair of SOB store clerks (younger than 21) who have

not lost their jobs; an exotic dancing club bouncer (younger than 21) who has lost his job, but obtained another with a security company; and Texas Entertainment Association, Inc. ("TEA"), an association of strip clubs and, more recently, a broader array of SOBs.

Plaintiffs seek preliminary injunctive relief in the Motion. Dkt. 15. They combine the Motion with a motion to certify classes under Federal Rule of Procedure 23. Dkt. 16. The Motion seeks to enjoin enforcement of SB315 by creating plaintiff classes, as well as a defendant class that includes all district, county, and local prosecutorial offices in the State of Texas. *Id.* at pp. 2-3. Plaintiffs acknowledge their proffered classes are unsupported by their Complaint. *Id.* at p. 3, n. 1.

### III.   STANDARD OF LAW

"A preliminary injunction is an extraordinary remedy." *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). This is particularly true when a party seeks an order directing state officials to discontinue certain conduct. *Morrow v. Harwell*, 768 F.2d 619, 627 (5th Cir. 1985). The decision to grant a preliminary injunction is to be treated as "the exception rather than the rule."[9] *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975); *Canal Auth. Of the State of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974).

A party seeking a preliminary injunction must show: "(1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiffs will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest." *Planned Parenthood of Hous. & Se. Tex. v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005). An injunction should not be granted unless the movant "has clearly carried the burden of persuasion on all four requirements." *Planned Parenthood Ass'n of Hidalgo Cnty., Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012).

---

[9] Legal determinations made at the preliminary injunction stage are subject to plenary review on appeal. *Griffin v. Box*, 910 F.2d 255, 259 (5th Cir. 1990).

"In considering whether to grant or deny preliminary injunctive relief, the district court 'must remember that a preliminary injunction is an extraordinary and drastic remedy,' and that '[t]he movant has a heavy burden of persuading the district court that all four elements are satisfied.'" *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985) (alteration in original) (footnotes omitted) (quoting *Callaway*, 489 F.2d at 573, and *Hardin v. Hous. Chronicle Publ'g Co.*, 572 F.2d 1106, 1107 (5th Cir. 1978). "Thus, if the movant does not succeed in carrying its burden on any one of the four prerequisites, a preliminary injunction may not issue and, if issued, will be vacated on appeal." *Id.* (citing *Clements Wire & Mfg. CO. v. NLRB*, 589 F.2d 894 (5th Cir. 1979)).

Additionally, considerations of federalism weigh heavily against interference by federal courts through the issuance of preliminary injunctions against state agencies. *Parrott v. Livingston*, NO. 15-866, 2016 WL 4487918, at *1 (E.D. Tex. June 29, 2016); *accord Gibson v. Leblanc*, No. 16-354, 2016 WL 5796897, at *2 (M.D. La. Sept. 30, 2016). "[E]specially where governmental action is involved, courts should not intervene unless the need for equitable relief is clear, not remote or speculative.'" *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 288 (5th Cir. 2015) (quoting *Eccles v. Peoples Bank*, 333 U.S. 426, 431 (1948)).

## IV.   ARGUMENT AND AUTHORITY

### A. Plaintiffs Do Not Have a Substantial Likelihood of Success on the Merits

Plaintiffs' Complaint is fraught with legal and factual deficiencies, as set forth more fully in Defendants' Motion to Dismiss. *See* Dkt. 13. Rather than rehashing those lengthy and detailed arguments here, particularly when the Court has set the Motion to Dismiss for hearing concurrently with Plaintiffs' Motion for Preliminary Injunction, Defendants simply incorporate the arguments and authorities in their Motion to Dismiss by reference, as if fully set out, herein.

Furthermore, even if Plaintiffs' pleadings suffice to survive Defendants' Rule 12(b)(6) challenges, they still face the substantial burden of overcoming judicial deference to the duly enacted

bipartisan legislation passed unanimously by a sovereign state's legislature pursuant to its police power and substantial interest in preventing human trafficking. Plaintiffs are unlikely to meet this burden at least in part because the arguments set forth in their pleadings to date seems to take for granted that the connection between SOBs and human trafficking is fictitious or exaggerated. The testimony provided by Cara Foos Pierce makes plain that human trafficking at SOBs is real, pervasive, and ongoing. *See* Exh. A, Decl. of Cara Pierce.

Plaintiffs are also unlikely to succeed on the merits because of the vast and unruly scope of the relief they seek. Not only to Plaintiffs seek a finding that SB315 is facially unconstitutional—a highly disfavored finding under any circumstance—Plaintiffs also now seek the creation (and pre-certification) of not one but three classes under Rule 23, including a defendant class consisting of every last prosecutorial office in the entire State of Texas. The other classes Plaintiffs seek would require the Court to guess which 18-20-year-olds across the state who "would be … employed or contracted" by SOBs. Dkt. No. 15.1, p. 3. The classes would include those who have already been charged with offenses under SB315's provisions, and implicate constitutional considerations for those awaiting speedy trial on such charges. The unlikelihood of Plaintiffs' success in this regard is bolstered by Plaintiffs' suspect ability to represent the putative classes Plaintiffs seek to pre-certify. As set forth in Defendants' forthcoming Motion to Set Briefing Schedule, at a minimum Defendants require discovery to determine whether Plaintiffs meet required criteria to serve as class representatives.

Finally, there remain serious concerns regarding the Court's jurisdiction, in particular Plaintiffs' standing to bring this suit. Although Defendants have not yet filed a motion addressing standing—opting instead to bring those arguments with the benefit of discovery—Plaintiffs' ability to show a constitutionally cognizable injury in this case remains, at best, an open—and potentially dispositive—question. *See* Dkt. 13, pp. 3-7.

### B. Plaintiffs Will Not Suffer Irreparable Harm

Much of Plaintiffs' argument regarding irreparable harm focuses on economic harm, particularly to the individual Plaintiffs, and those similarly situated. Those claims are not borne out by the facts alleged, or the realities of the current job market.

Three of the individual Plaintiffs, Reyes, Valadez, and Carrizoza, are gainfully employed. *See* Dkt. 5.9 Decl. of Abigail Reyes, ¶ 9; Dkt. 5.11 Decl. of Felix Valadez, ¶ 3 and 10; Dkt. 5.13 Decl. of Luis Carrizoza, ¶ 10. Mr. Carrizoza does not work at an SOB, and so is in no danger of losing his job due to enforcement of SB315. Dkt. 5.13, ¶ 10. Plaintiffs make no allegation that either Reyes or Valadez are on the verge of losing their jobs, despite their speculative concern that they may lose their jobs.

The fourth individual plaintiff alleges she has lost her job as an exotic dancer due to the passage of SB315. Dkt. 5.10 Decl. of Amada Man, ¶ 8. Contrary to providing evidence of irreparable harm, Ms. Man testifies that she has savings on which to live and can support herself. She also testified she does not intend to dance forever, and has aspirations of attending beauty school. *Id.* Ms. Man does not detail her efforts to find another job, whether as a dancer of some sort, or as a waitress, or hostess, or perhaps pursing an entry-level position in a beauty shop. Absent such allegations or testimony, it is—at best—difficult to evaluate Plaintiffs' conclusory pleading that the loss of one job will result in irreparable harm. The conclusory claim is made all the more suspect by the intense labor shortage in Texas resulting in a surplus of job openings.[10]

TEA offers no evidence of financial injury to itself, but purports to offer evidence of the financial effects of SB315 on former employees. Dkt. 5.12 Decl. of Kevin Richardson, ¶¶ 17. This testimony, too, is vague and conclusory. For example, TEA testifies that its constituent members have

---

[10] Laila Assanie and Carlee Crocker, *Labor Shortages, Supply Chain Woes Slow Texas Recovery*, Federal Reserve Bank of Dallas, June 24, 2021, https://www.dallasfed.org/research/economics/2021/0624 ("Labor Demand Outpaces Supply") (*last accessed July 13, 2021*).

laid off employees under the age of 21, but sets the number of such layoff as between "dozens, if not hundreds." *Id.* at ¶ 17. To the extent TEA relies on what it has purportedly heard from "scores" of former employees about their economic hardship, such hearsay is not a proper basis for the Court to award the vast relief Plaintiffs seek in their injunction. TEA appears wholly unable to quantify the impact of SB315 on its members or their former employees, and so cannot meet its burden to show irreparable harm sufficient to merit the extraordinary remedy of a preliminary injunction.

Plaintiffs also allege their alleged loss of First Amendment rights constitutes irreparable harm. Dkt. 15, p. 24. But as set forth more fully in Defendants' Motion to Dismiss, Plaintiffs' pleadings fail to implicate the First Amendment. Impairment of a right not implicated cannot constitute irreparable harm. *See* Dkt. 13, pp. 3-7. Plaintiffs thus fail to show irreparable harm, and the Court should deny their motion for preliminary injunction.

### C. Balancing of Plaintiffs' Harms and Public Interest

The remaining two factors—the public interest and the potential harm to Defendants and the putative class Plaintiffs seek to designate—both weigh against granting Plaintiffs' Motion. A preliminary injunction should not issue if the applicant fails to carry its burden on "any one of the four prerequisites." *Enterprise Int'l*, 762 F.2d at 472. "The public interest standard is a hurdle which must be overcome before employing the drastic remedy of interim injunctive relief, not a clarion call for action before reaching final judgment." *Miss. Power & Light Co.*, 760 F.2d at 633.

Plaintiffs' proposed preliminary injunction will cause irreparable harm to the State of Texas by enjoining enforcement of its duly enacted laws, and cause public detriment by leaving young people vulnerable to human trafficking while simultaneously hampering law enforcement efforts to protect SOB employees from traffickers.

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter v. Natural Res. Def.*

*Council, Inc.*, 555 U.S. 7, 24 (2008). Exercising caution is especially important where the defendant is itself a state actor because of the federalism concerns attendant to a federal court intervening to grant preliminary injunctive relief against, in this case, literally all prosecutorial offices in the sovereign State of Texas. *See Gibson*, 2016 WL 5796897, at *2; *Parrott*, 2016 WL 4487918, at *1; *see also Machete Prods., L.L.C.*, 809 F.3d at 288 (quoting *Eccles*, 333 U.S. at 431). The State's interest in enforcing its laws weighs heavily in a court's balancing of the equities in the injunction context. *See Texas v. Ysleta Sur del Pueblo*, 955 F.3d 408, 415 (5th Cir. 2020) ("Although the Tribe has an interest in self-governance, the Tribe cannot satisfy that interest by engaging in illegal activity," and allowing ongoing operations of an illegal casino "would countenance ongoing violations" of Texas law.). "The State … has a significant interest in enforcing its enacted laws." *True the Vote v. Hosemann*, 43 F.Supp.3d 693, 742 (S.D. Miss. 2014). When the State is prevented from enforcing those laws, it suffers irreparable injury. *E.g., Maryland v. King*, 567 U.S. 1301, 1303 (2012) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345 (1977) (citations omitted)); *see also Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) (recognizing that, if enforcement of duly enacted State law is enjoined, "the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws").

      The federalism concerns in this case are profound. SB315 is a duly enacted statute, passed with bipartisan, unanimous legislative support, executed by the Governor, exercising the police power of the sovereign State of Texas in pursuit of the legitimate and substantial state interest of stopping human trafficking. Plaintiffs ask the Court to countermand all state authority and action pursuant to SB315 with the stroke of a pen. Plaintiffs seek not simply to enjoin the pair of state agencies headed by the named Defendants in their official capacities, but to reach still further into the workings of state and local government, extending the hand of an Austin federal court into the discretion and

authority of district and county prosecutorial offices in Hudspeth County, Dallam County, Haskell County, Panola County, Maverick County, Refugio County, and 248 others—not to mention municipal prosecutorial offices from Orange to El Paso, and from Port Isabel to Texline and throughout the over 1,200 incorporated cities across the 268,596 square miles of the State of Texas. Indeed, Plaintiffs' proposed order extends even farther—beyond the prosecutorial offices, to "their officers, agents, servants, and employees, those persons in active concert or participation with them, and anyone else who receives actual notice of the order…." Dkt. 15.1, p. 5.[11]

Nor can this court freeze statewide prosecutorial action under SB315 without creating a chilling effect on the prosecution of other human trafficking offenses arising out of SOBs. *See* Exh. A, Decl. of Cara Pierce, ¶ 10. Creating a federal order enjoining prosecution of SB315 "would hamstring law enforcement and prosecutors with the concern that their efforts to stop predatory criminals may accidentally run afoul of a federal injunction." *Id.* This chilling effect increases the impact of the proposed injunction against prosecutorial offices beyond the already alarming measure of stopping them from prosecuting certain crimes related to human trafficking. Moreover, a federal injunction precluding prosecution of under 21-year-olds under SB315 may embolden SOBs involved in trafficking to flout age restrictions for their employees and contractors.

Moreover, as Ms. Pierce's testimony makes clear, the human trafficking in SOBs constitutes a serious and ongoing public threat. *Id.* at ¶¶ 1-9. The danger to young people presented by human trafficking at SOBs outweighs the short-term effects of Plaintiffs' alleged injuries (if any). While courts should resist the temptation to allow panic over public threats to encroach upon constitutional rights, duly enacted and unanimously passed legislation, signed by the governor, hardly bears the hallmarks of public panic. Rather, SB315 marks a public policy choice towards reducing exposure of young

---

[11] The proposed order does not specify who, if anyone, is going to undertake the task of providing notice to all district, county, and municipal prosecutorial offices, their officers, agents, servants, and employees, those persons in active concert or participation with them, and anyone else who receives actual notice of the order.

people to the sexually charged atmospheres of SOBs that so often attract human traffickers and their clientele. The Court should not lightly cast that policy choice aside. Even where (Plaintiffs contend) constitutional implications arguably may result, such implications are outweighed by the legitimate and substantial state interest in reducing human trafficking among young people.

That State interest weighs particularly heavily here because Plaintiffs seek injunctive relief for suspect classes. Plaintiffs have not provided the Court with sufficient evidence regarding the putative size of the classes purportedly affected by SB315—how many young people were employed by SOBs lost their jobs, what are their prospects for new employment, and what (if any) were the expressive natures of their jobs? Were these uncertainties not enough, the Plaintiffs' putative classes ask the Court to include not just those who formerly worked at SOBs prior to the enactment of SB315, but also those who "would be" employed or contracted to work at SOBs. Plaintiffs provide the Court with absolutely no way to determine the number, identity, or putative injury (if any) to such persons. This inability to quantify, or even describe with specificity, members of the putative plaintiff classes must reasonably weigh against the extraordinary remedy of granting an injunction to prevent the State of Texas from exercising its police power to stop human trafficking.

The Court should deny Plaintiff's Motion because any alleged harm to Plaintiffs does not outweigh the irreparable harm to the State that would result from the preliminary injunction, and because enjoining enforcement of SB315 disserves the public interest in protecting young people from human trafficking in SOBs.

## V.   CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Amended Motion for Preliminary Injunction.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

/s/  Ryan G. Kercher
RYAN G. KERCHER
Texas Bar No. 24060998
Assistant Attorney General
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: 512-463-2120
Fax: 512-320-0667
Ryan.Kercher@oag.texas.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2021 a true and correct copy of the foregoing document was served via the Court's CM/ECF system to all counsel of record.

/s/  Ryan G. Kercher
RYAN G. KERCHER