IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| FELIX VALADEZ, LUIS CARRIZOZA, ABIGAIL REYES, AMADA MAN, and TEXAS ENTERTAINMENT ASSOCIATION, INC.<br><br>*Plaintiffs*<br><br>v.<br><br>KEN PAXTON, in his official capacity as Attorney General of the State of Texas, and ED SERNA, in his official capacity as Executive Director of the Texas Workforce Commission,<br><br>*Defendants.* | § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 1:21-CV-519 |

## DECLARATION OF CARA FOOS PIERCE

1. My name is Cara Foos Pierce. I am over 18 years of age, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. Since June of 2020, I have served as the Chief of the Texas Attorney General's Human Trafficking and Transnational Organized Crime Division. In my position I also Chair, as designee for Texas Attorney General Ken Paxton: (1) the Texas Human Trafficking Prevention Coordinating Council, a legislatively created council made up of nine state agencies working to prevent human trafficking and (2) the Texas Human Trafficking Prevention Taskforce. The Taskforce is made up of over 120 members and affiliates, including law enforcement, prosecutors, charitable and non-profit organizations, and various state agencies, and it is charged with developing legislative recommendations to eradicate human trafficking in Texas. Senate Bill 315 codifies one of the Task Force's legislative recommendations to curb human trafficking by raising the age of employment at sexually-oriented businesses from 18 to 21.

3. Prior to joining the AG's office, I was an Assistant United States Attorney in Dallas for twelve years, and I served as the Human Trafficking Coordinator for the Northern District of Texas for almost ten of those years. During that time, I prosecuted more than 80 human trafficking cases. Sexually-oriented businesses played a role in over half of those cases. These cases were not simply limited to clubs featuring exotic dancing. A variety of sexually-oriented businesses feature back rooms or private areas—such as those used ostensibly for viewing pornography—where trafficking occurs. In one case I prosecuted, a teenaged victim engaged in commercial sex acts in such a sexually-oriented business multiple times at the direction of her trafficker. Victims as young as 13 and as old as 30 were recruited and trafficked out of

**EXHIBIT A**

sexually-oriented businesses throughout Texas in cases that I prosecuted.

4. Another case that stands out involved a smart, athletic 14-year old girl who was befriended by an older teen, who took her to sexually-oriented businesses and gave her drugs. Within a few weeks, she was being sex trafficked by two gang members. She danced and engaged in commercial sex acts at several strip clubs in Fort Worth. Her traffickers provided an ID of an 18-year old victim that looked like her to the strip clubs, and she was allowed to work there. She was trafficked for almost two (2) years.

5. The cases described above illustrate some of the roles sexually-oriented businesses can play in human trafficking. First, sexually-oriented businesses attract traffickers because the sexually-charged atmosphere often attracts a customer base for trafficking. Second, in many cases, the live nudity often featured at sexually-oriented businesses presents a ready supply of potential victims—although, as noted above, exotic dancers are not the only sexually-oriented business workers endangered by human trafficking. Third, human trafficking often involves a grooming process. The duration and nature of such grooming often depends on the age and level of desperation of the victim. Human traffickers routinely use sexually-oriented businesses as a critical part of the grooming process, by desensitizing victims to sexual taboos through repeated exposure to the sexually-charged atmosphere of sexually-oriented businesses and by attempting to normalize the commercial aspect of these businesses.

6. Increasing the age of employment at strip clubs to 21 will prevent exploitation of children in two ways:

    a. Raising the age of employment to 21 will assist law enforcement in child sex trafficking investigations at sexually-oriented businesses. If law enforcement learns that a minor worked at a sexually-oriented business, that information is often received after they no longer work there, which limits their ability to go onto the club to investigate. So, law enforcement frequently perform surveillance outside the business to observe who drops off workers and to see if anyone under 18 appears to be working there. If they see a suspected child, they go in immediately to investigate. However, it can be hard to tell a 16-year old from an 18-year old. By raising the age to 21, it will make it easier to spot someone underage going into the business, which can support probable cause for law enforcement to enter to investigate further.

    b. Raising the age will make it harder for traffickers (often referred to as "pimps") to obtain fake identification, so children can work at strip clubs. Traffickers frequently use actual identifications of current or former adult victims to get children into strip clubs to work. However, many adult trafficking victims are younger than 21, so it will be harder for traffickers to have easy access to identifications if the age is raised to 21. And, the hiring managers at sexually-oriented businesses should be able to tell that a 14-year old is not 21.

7. Raising the age to 21 will make it harder for traffickers to use sexually-oriented businesses to further their human trafficking operations.

8. Traffickers frequently utilize sexually-oriented businesses to: (1) recruit victims (either directly or they enlist other victims that work at the business to recruit), (2) groom victims by

desensitizing them to sexually-charged environments, as a gateway to commercial sex acts, and (3) find commercial sex customers and either engage in the acts inside the sexually-oriented business, or meet customers at nearby locations to engage in the acts.

   a. Most adult victims in my human trafficking cases were between the ages of 18-21, and almost all of them either met their trafficker at a sexually-oriented business, or they worked at a sexually-oriented business at the direction of their trafficker.

   b. By raising the age to 21 to work at sexually-oriented businesses, Senate Bill 315 aims to decrease the instances of exploitation through trafficking as the older employees of these businesses may be more mature and less susceptible to manipulation and exploitation from traffickers at 21 than they were at 18.

9. For people at higher risk of exploitation, a switch does not flip the day they turn 18; many of the same risk factors persist beyond their 18th birthday. By raising the age of employment at sexually-oriented businesses to 21, workers at those businesses will have more life experience, and more time to mature, reducing their vulnerability to trafficking.

10. Enjoining enforcement of Senate Bill 315's provisions will not only rob law enforcement, prosecutors and the community as a whole of this important advancement in human trafficking prevention, it may also have a broader chilling effect on human trafficking prevention efforts aimed at stopping trafficking at sexually-oriented businesses. Preventing human trafficking at sexually-oriented businesses is critical, but enjoining enforcement of Senate Bill 315 would hamstring law enforcement and prosecutors with the concern that their efforts to stop predatory criminals may accidentally run afoul of a federal court injunction.

Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 13, 2021.

*Cara Foos Pierce*
CARA FOOS PIERCE