IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| FELIX VALADEZ, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1-21-CV-519-RP |
| KEN PAXTON, *in his official capacity as Attorney General of Texas*, and ED SERNA, *in his official capacity as Executive Director of the Texas Workforce Commission*, | § § § § § § | |
| Defendants. | § § | |

## **ORDER**

Before the Court is the motion for a preliminary injunction filed by Plaintiffs Felix Valadez, Luis Carrizoza, Abigail Reyes, Amada Man, and Texas Entertainment Association, Inc., (together, "Plaintiffs"), (Mot. Prelim. Inj., Dkt. 5; Am. Mot. Prelim. Inj., Dkt. 15), and all responsive briefing, (Resp., Dkt. 18; Mot. Dismiss, Dkt. 13). The Court held a hearing on Plaintiffs' motion on July 16, 2021. (Hr'g., Dkt. 27). Having considered the parties' arguments, the evidence, and relevant law, the Court will deny Plaintiffs' motion for a preliminary injunction.

## **I. INTRODUCTION**

This case is about whether the State of Texas ("Texas" or the "State") may raise the minimum age for employment in businesses the legislature has deemed to be sexually-oriented. Plaintiffs bring this action against Defendants Ken Paxton, in his official capacity as Attorney General of the State of Texas, and Ed Serna, in his official capacity as Executive Director of the Texas Workforce Commission (together, "Defendants") challenging the constitutionality of Texas Senate Bill 315 ("S.B. 315"), a recently-enacted Texas law that prohibits all working relationships between 18-20-year-olds and sexually-oriented businesses ("SOBs") in an effort to combat the

1

secondary effects of human trafficking. Tex. S.B. 315, 87th Leg. R.S. (2021); (Compl., Dkt. 1, at 15–32).

The individual named plaintiffs ("Individual Plaintiffs") in this case are four young people between the ages of 18 and 20 years old, who have been laid off or fear losing their jobs because of Texas's enactment of S.B. 315. (Dkt. 1, at 2–3). The Individual Plaintiffs are joined by the Texas Entertainment Association ("TEA"), a non-profit organization that represents SOBs in Texas. (Dkt. 1, at 3). Plaintiffs seek to certify two classes of individuals in Texas who are between the ages of 18 and 20 years old and have worked or provided services—or who planned to work or provide services in the future—for or at any SOB in any capacity or in a way that involves protected expression or association for expressive purposes. (Dkt. 1, at 34; Mot. Class Cert., Dkt. 16, at 2). Plaintiffs also want to certify a class of defendants representing all those with the power to enforce S.B. 315 in Texas. (Mot. Class Cert., Dkt. 16, at 2–3).

## A. Senate Bill 315

Plaintiffs challenge the constitutionality of S.B. 315's age-related amendments to provisions of the Texas Civil Practice & Remedies Code, Labor Code, and Penal Code. S.B. 315 is styled as a law "relating to restrictions on the age of persons employed by or allowed on the premises of a sexually oriented business; creating a criminal offense." Tex. S.B. 315, 87th Leg. R.S. (2021). Texas law defines SOBs as any:

> "sex parlor, nude studio, modeling studio, love parlor, adult bookstore, adult movie theater, adult video arcade, adult movie arcade, adult video store, adult motel, or other commercial enterprise the primary business of which is the offering of a service or the selling, renting, or exhibiting of devices or any other items intended to provide sexual stimulation or sexual gratification to the customer."

TEX. LOC. GOV'T CODE § 243.002.

S.B. 315 amended various portions of existing Texas laws regarding minors and SOBs. First, Section 5 of S.B. 315 amended Chapter 125 of the Texas Civil Practice & Remedies Code making it

a common nuisance to "employ[] or enter[] into a contract for the performance of work or the provision of a service with an individual younger than 21 years of age for work or services performedat a sexually oriented business as defined by Section 243.002 of the Local Government Code." Tex. S.B. 315, § 5, 87th Leg. R.S. (2021) (amending TEX. CIV. PRAC. & REM. CODE § 125.0015(a)(19), (22)). Second, Section 8 of S.B. 315 amended Texas Penal Code Section 43.251 by changing its definition of "child" to mean "a person younger than 21 years of age." Tex. S.B. 315, § 8, 87th Leg. R.S. (2021) (amending TEX. PENAL CODE § 43.251(a)(1)). As a result, a person who "employs, authorizes, or induces" someone under the age of 21 to work in or with a SOB is subject to felony charges. *Id.* at § 43.251(a)-(c).

This amendment affects laws that cross-reference Section 43.251, including the nuisance statute. *See* TEX. CIV. PRAC. & REM. CODE § 125.0015(a)(22). It also affects other provisions of the Penal Code, including Chapter 20A, which enumerates trafficking crimes. TEX. PENAL CODE § 20A.02(a)(7)(J). Chapter 20A, in turn, is referenced in Chapter 140A of the Texas Civil Practice & Remedies Code. *See, e.g.*, TEX. CIV. PRAC. & REM. CODE § 140A.002 ("A person or enterprise commits racketeering if, for financial gain, the person or enterprise commits an offense under Chapter 20A . . . and the offense or an element of the offense: (1) occurs in more than one county in this state; or (2) is facilitated by the use of United States mail, e-mail, telephone, facsimile, or a wireless communication from one county in this state to another.").

Finally, Section 6 of S.B. 315 amended several provisions of Labor Code Chapter 51, which regulates "Employment of Children," to provide that "[a] sexually oriented business may not employ or enter into a contract, other than a contract described by Subsection (g), for the performance of work or the provision of a service with an individual younger than 21 years of age." Tex. S.B. 315, § 6, 87th Leg. R.S. (2021) (amending TEX. LAB. CODE § 51.016(b)). A violation of Section 51.016(b) now constitutes a Class A misdemeanor subject to a one-year jail sentence, administrative penalties,

3

or a suit for injunctive relief brought by the attorney general of Texas. Tex. S.B. 315, § 7, 87th Leg. R.S. (2021).

Texas justified S.B. 315 in terms of a need to "provide necessary mechanisms to safeguard our communities and children from trafficking and sexual exploitation, which are often harmful secondary effects of sexually oriented businesses." SENATE RESEARCH CENTER, BILL ANALYSIS, Tex. S.B. 315, 87th Leg. R.S. (2021).

### B. Named Plaintiffs' employment

Named Plaintiffs in this action are four individuals who have lost their jobs or fear losing their jobs because of S.B. 315, as well as the Texas Entertainment Association. (Dkt. 1, at 3, 9–14). Because the nature of each Plaintiffs' employment is relevant to this dispute, they are described in detail below.

#### 1. Felix Valdez and Abigail Reyes

Plaintiffs Feliz Valdez ("Valdez") and Abigail Reyes ("Reyes") are 19-year-old clerks at New Fine Arts, an adult bookstore in Dallas, Texas that sells books, movies, and "novelty" items. (Dkt. 1, at 9–10; Hr'g., Dkt. 27). As clerks, Valdez and Reyes answer customer questions, help customers locate products, and restock inventory. (*Id.*). Valdez and Reyes both make twelve dollars an hour working at New Fine Arts. (Hr'g., Dkt. 27). Reyes testified that she would take a different job if it paid better. (*Id.*). Reyes has never been trained in identifying human trafficking but has never seen it occur at New Fine Arts. (*Id.*). Reyes's employer informed her and Valdez that if S.B. 315 is not enjoined they will lose their jobs. (Hr'g., Dkt. 27).

#### 2. Luis Carrizoza

Luis Carrizoza ("Carrizoza") is a 20-year-old man who, prior to May 24, 2021, worked as a bouncer at Jaguars, an adult cabaret in Odessa, Texas. (Dkt. 1, at 11; Hr'g., Dkt. 27). As a part of this position, Carrizoza provided security services to and promoted the club by distributing promotional

4

materials. (*Id.*). Carrizoza made about $2,400 per month as a bouncer for Jaguars and had obtained a "SOB license" from the City of Odessa for perform this work. (Dkt. 1, at 11; Hr'g., Dkt. 27). He is not aware of any human trafficking occurring at Jaguars. (*Id.*). Since the passage of S.B. 315, Carrizoza was laid off, though he now provides security services to Jaguars through a private security company. (*Id.*). Carrizoza no longer distributes promotional materials as a part of his new position, despite providing security services to the same adult cabaret club. (*Id.*). Carrizoza makes about $1,000 in his new position. (*Id.*).

### 3. Amanda Man and Evnny Salazar

Amanda Man ("Man") is a 19-year-old woman who began working as an exotic dancer in August 2020 at Baby Dolls Club in Dallas, Texas. (Dkt. 1, at 12; Hr'g., Dkt. 27). Man "enjoys performing as an exotic dancer" and "values working in an occupation with a flexible schedule and significant earning potential." (Dkt. 1, at 12). Man earned between $1,000 and $2,500 per week at Baby Dolls. (Hr'g., Dkt. 27). Man knew three women at Baby Dolls involved in human trafficking, two of whom were over the age of 21. (*Id.*). Man's last day of work at Baby Dolls was the day before S.B. 315 was passed. (*Id.*). Man, who lives in Dallas, now commutes to Oklahoma to perform at an adult cabaret called Lady Godiva's. (*Id.*). Man makes between $1,500 and $2,000 per weekend working at Lady Godiva's. (*Id.*).

Evnny Salazar ("Salazar"), not yet named in this lawsuit, also testified at the July 16, 2021 preliminary injunction hearing about her experiences as an exotic dancer. (Hr'g., Dkt. 27). Prior to the passage of S.B. 315, Salazar worked at two adult cabarets in San Antonio, Texas, where she earned about $1,000 a night. (*Id.*). Salazar has not witnessed human trafficking at either club. (*Id.*). Before she worked as an exotic dancer, Salazar was homeless and lived in her car. (*Id.*). Her job at the adult cabarets allowed Salazar to obtain housing and cover her living expenses. (*Id.*). Since losing

her job as an exotic dancer, Salazar has become homeless again and works for Door Dash, where she makes about $30 a night. (*Id.*).

### 5. Texas Entertainment Association

Texas Entertainment Association ("TEA")[1] is an organization whose members are comprised of certain SOBs, such as adult cabarets and adult bookstores. (Dkt. 1, at 13–14). In response to S.B. 315's passage, TEA's members have had to terminate "droves of 18-20-year-old men and women who worked at their establishments in various roles." (Dkt. 1, at 14). Kevin Richardson, a TEA member who serves as the corporate representative for TEA for the purposes of this lawsuit, testified that he had to lay off between 732 and 842 employees at the five SOBs he owns in Texas, which he asserts are average-sized adult cabarets. (Hr'g., Dkt. 27). He estimated that well over 10,000 employees have been laid off at SOBs around Texas as a result of S.B. 315. (*Id.*).

Richardson testified that training on human trafficking occurs in his clubs in coordination with local authorities. (*Id.*). Richardson also testified that he has witnessed human trafficking in one of his clubs, and related an anecdote regarding his efforts to help one employee escape exploitation when the police did not help her. (*Id.*).

## II. LEGAL STANDARD

A preliminary injunction is an extraordinary remedy, and the decision to grant such relief is to be treated as the exception rather than the rule. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief,

---

[1] Though not addressed in their briefing, Defendants challenged TEA's standing at the preliminary injunction hearing, arguing that it does not have third party standing to state a claim in this case. (Hr'g., Dkt. 27). Because Defendants do not raise this issue in their motion to dismiss or response to Plaintiffs' motion for a preliminary injunction, the Court declines to take up this issue at this time and assumes for the purposes of the preliminary injunction motion that TEA has standing.

that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking injunctive relief carries the burden of persuasion on all four requirements. *PCI Transp. Inc. v. W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005). To show a likelihood of success, the plaintiff must present a *prima facie* case, but need not prove that it is entitled to summary judgment. *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013).

### III. DISCUSSION

Plaintiffs seek injunctive relief against the enforcement of S.B. 315 because, they allege, it violates the First and Fourteenth Amendments to the United States Constitution. The Court will now consider whether Plaintiffs have demonstrated a likelihood of success on the merits of these claims.

#### A. Likelihood of Success on the Merits

##### 1. *First Amendment Claims*

The First Amendment provides: "Congress shall make no law . . . abridging the freedom of speech, or of the press." U.S. CONST. amend. I. The First Amendment binds the State of Texas through the Fourteenth. *See, e.g.*, *Rosenberg v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 822 (1995). Plaintiffs bring facial and as-applied challenges to S.B. 315 under the First Amendment. But before it can address these challenges, the Court must determine whether the First Amendment applies to Plaintiffs' conduct in the first place.

##### *i. Plaintiffs' Protected Speech*

The parties dispute whether Plaintiffs' employment activities are expressive conduct protected by the First Amendment. This dispute presents the question of whether Plaintiffs' employment at SOBs implicates protected First Amendment activity. As explained below, the Court finds that at least some of Plaintiffs' activities implicate the First Amendment.

With regard to Plaintiff Man, the Supreme Court has held that non-obscene exotic dancing may constitute expressive conduct under the First Amendment. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000) ("[N]ude dancing of the type at issue here is expressive conduct, although we think that it falls only within the outer ambit of the First Amendment's protection."). Defendants argue, however, that Man has failed to allege that she engaged in exotic dancing for any expressive purpose. (Dkt. 13, at 4–5). While Man testified that she primarily dances to earn a living, she also said that she "enjoy[s] the work for other reasons too," including because "dancing for an audience or a customer gives me the kind of power and control that I wouldn't [otherwise] have" and because she "also enjoy[s] that fact that [she] can use [her] appearance and ability to dance to make a good living." (Man Aff., Dkt. 5-10, at 2; Hr'g., Dkt. 27). Man's reference to the use of her appearance and dancing ability to express a form of power and control are sufficient at this stage to show that her employment activities likely fall within the scope of the First Amendment. *See City of Erie*, 529 U.S. at 289. Although it remains unclear whether the activities of the other named Plaintiffs involve expressive elements, the Court finds that Plaintiffs have made a showing that S.B. 315 implicates the First Amendment, at least as applied to Man.

### *ii. Level of Scrutiny*

Having found that S.B. 315 likely implicates protected conduct under the First Amendment, at least as applied to Man, the Court must next decide what level of scrutiny applies by determining whether S.B. 315 is content based or content neutral. *Texas v. Johnson*, 491 U.S. 397, 407 (1989). Content based regulations are subject to strict scrutiny, while content neutral regulations need only satisfy the more relaxed scrutiny specified in *United States v. O'Brien*, 391 U.S. 367, 377 (1968). *See id.* Because S.B. 315 is aimed at regulating the "time, place or manner" of employment at SOBs, rather than the message conveyed by employment at SOBs, the Court finds that intermediate scrutiny applies to Plaintiffs' challenge to the law. (Hr'g, Dkt. 27; Pierce Aff., Dkt. 18-1, at 1) ("Senate Bill

315 codifies one of the [Texas Human Trafficking Prevention] Task Force's legislative recommendations to curb human trafficking by raising the age of employment at sexually-oriented businesses from 18 to 21.");[2] *see also Ward*, 491 U.S. 781, 791 ("The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys.").

In applying intermediate scrutiny to S.B. 315, the Court must evaluate the four factors outlined in *O'Brien*. 391 U.S. at 377. Under the *O'Brian* test, Texas must demonstrate that: (1) it has the constitutional authority to enact S.B. 315; (2) the law furthers an important or substantial government interest; (3) the government interest is unrelated to the suppression of free expression; and (4) the restriction is no greater than is essential to the furtherance of the government interest. *See id*. Plaintiffs argue that S.B. 315 fails on the second and fourth factors, arguing that it does not serve an important government interest and that its restrictions on the Individual Plaintiffs are greater than is essential to further the government's interest. (Dkt. 5, at 13–16). Defendants respond that the Fifth Circuit's decision in *Doe I v. Landry*, 909 F.3d 99 (5th Cir. 2018), where the Fifth Circuit upheld an age-based restriction for exotic dancing at adult cabarets that sell alcohol, is dispositive with regard to the first three *O'Brian* factors, and counsels in favor of the government on the fourth factor. (Dkt. 13, at 9–10).

---

[2] Plaintiffs moved to strike portions of the affidavit of Cara Foos Pierce, a former Assistant United States Attorney and current Chief of the Texas Attorney General's Human Trafficking and Organized Crime Division, for lack of foundation and as inadmissible expert opinion. (Mot. Strike, Dkt. 26). Because the Court did not rely on the portions of the affidavit Plaintiffs sought to strike in deciding whether the grant or deny Plaintiffs' motion for a preliminary injunction, the Court will deny the motion to strike as moot. Regardless, the Court notes that "at the preliminary injunction stage, the procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence." *Sierra Club, Lone Star Chapter v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993).

With regard to the second *O'Brian* factor, Plaintiffs admit that S.B. 315 purports to "provide necessary mechanisms to safeguard our communities and children from trafficking and sexual exploitation, which are often harmful secondary effects of [SOBs]." (S.B. 315 Bill Analysis, Dkt. 5-3, at 2). Plaintiffs argue that because the Individual Plaintiffs do not believe their work at SOBs "makes them less safe or more prone to crime" and there is no research to suggest that 18-20-year-old men and women as a class of people are more prone to human trafficking because of their work in SOBs, S.B. 315 fails to further an important government interest. (Dkt. 5, at 13–14). Plaintiffs also argue that because a person under the age of 21 may still patronize an SOB, the "disconnect between S.B. 315's objectives and employment age restrictions is obvious." (*Id.* at 14).

In the hearing on the motion for preliminary injunction, Plaintiffs made much of the fact that the Texas legislature did not rely on any studies showing that 18 to 20-year-olds who work at SOBs are more vulnerable to human trafficking than others. (Hr'g., Dkt. 27). Yet the State "need not demonstrate through empirical data . . . that its regulation will reduce such trafficking," but instead must show that the State has a "reasonable belief that there is a link between the regulation and the curbing of the identified secondary effects." *Landry*, 909 F.3d at 110. Here, the legislative history and testimony offered by Defendants are sufficient to support the conclusion that the State held a reasonable belief that S.B. 315 would serve to curb harmful secondary effects of SOBs. (*See* Committee Report, Dkt. 5-2; S.B. 315 Bill Analysis, Dkt. 5-3, Hr'g., Dkt. 27). In contrast, Plaintiffs failed to produce any "actual and convincing evidence" that S.B. 315 "will not have any positive effect on the identified harms." *Landry*, 909 F.3d at 110. As such, this factor likely weighs in favor of the government.

Plaintiffs have also failed to show that at this stage there is a likelihood that the fourth factor weighs in their favor. Plaintiffs argue that "S.B. 315 ignores the evils sought to be eliminated while at the same time banning all protected expression that Plaintiffs may supply to an SOB in the course of

10

their work." (Dkt. 15, at 15). They point out that while the Louisiana statute at issue in *Landry* only set an age restriction on dancing at establishments that serve alcohol, here S.B. 315 bans all employment relationships between 18-20-year-olds and SOBs. (*Id.*). Defendants respond by arguing that although S.B. 315 is broader than the statute at issue in *Landry*, the Court should respect the Texas legislature's determination that any employment relationship between an individual under the age of 21 and an SOB "provides an opportunity for traffickers." (Dkt. 13, at 9–10).

While the State must show that the challenged statute is narrowly tailored to serve its legitimate, content-neutral interest to pass intermediate scrutiny, it "need not show that [S.B. 315] is the least restrictive or least intrusive means of doing so." *Landry*, 909 F.3d at 111 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989)). In *Ward*, the Supreme Court explained that narrow tailoring is satisfied if the regulation of time, place, or manner of protected speech "promotes a substantial government interest that would be achieved less effectively absent the regulation." 491 U.S. 799–800 (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985) ("So long as the means chosen are not substantially broader than necessary to achieve the government's interest, however, the regulation will not be invalid simply because a court concludes that that the government's interest could be adequately served by some less-speech-restrictive alternative."). Here, the State has presented testimony supporting the contention that trafficking happens at SOBs other than adult cabarets and even Plaintiffs' witnesses testified that trafficking occurs at certain SOBs with alarming frequency—indeed, Man testified that during her three months working at Baby Dolls in Dallas she met three women involved in trafficking. (Hr'g., Dkt. 27). Furthermore, the State presented testimony that S.B. 315 is designed to prevent the exploitation of children, an interest that would be less effectively served absent the law. (Hr'g., Dkt. 27).

While discovery may reveal that the State's purported interest in curbing trafficking is not served at all by S.B. 315's age restrictions, at this time Plaintiffs' have not presented evidence that

11

"the government's interest could be adequately served by some less-speech-restrictive alternative." *Ward*, 491 U.S. 799–800. As such, a preliminary injunction is not warranted at this time under Plaintiffs' as-applied First Amendment claims.

### *iii. Facial Overbreadth*

Plaintiffs also bring a facial overbreadth challenge to S.B. 315, arguing that the law is overbroad because it applies to "virtually all economic relationships between 18-20-year-old adults and SOBs—even those that are not carried-out on the premises of an SOB." (Dkt. 15, at 16). Defendants invite the Court to find that S.B. 315 does not suffer from overbreadth for the same reasons it satisfies the fourth factor of the *O'Brian* test. (Dkt. 13, at 11) (citing *Landry*, 909 F.3d at 111) (noting that satisfaction of the fourth *O'Brian* factor will "usually obviate the need to analyze the different requirement that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.")

"[T]he overbreadth doctrine enables litigants 'to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'" *Hill v. Colorado*, 530 U.S. 703, 731–32 (2000) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)). Further, "particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick*, 413 U.S. at 615. "[T]he rationale of the overbreadth doctrine is to protect the expressive rights of third parties who are not before the court." *United States v. Hicks*, 980 F.2d 963, 969 (5th Cir. 1992).

As in *Landry*, where the Fifth Circuit found that the Louisiana statute at issue did not suffer from overbreadth for the same reasons it found that it satisfied the fourth *O'Brian* factor, the Court similarly finds that Plaintiffs' failure to show a likelihood that S.B. 315 runs afoul of the fourth

*O'Brian* factor, without further evidence, precludes Plaintiffs' from obtaining preliminary injunctive relief under a theory of overbreadth. *See Landry*, 909 F.3d at 111. While further factual development may demonstrate that the unconstitutional applications of S.B. 315 and the amended statutes "are both real and substantial in relation to their previously legitimate application to children under the age of 18," at this stage Plaintiffs have failed to demonstrate that S.B. 315 likely threatens constitutionally protected speech outside the ambit of Texas's attempts to end and prevent human trafficking at SOBs. (Dkt. 15, at 18).

### a. Due Process Claims

Plaintiffs also move for preliminary relief with regard to their due process claims brought under the Fourteenth Amendment and Article I, § 19 of the Texas Constitution.³ (Dkt. 15, at 18–24). Plaintiffs argue that the Individual Plaintiffs have a "constitutionally protected liberty interest in pursuing a chosen occupation." (Dkt. 15, at 19) (citing *Stidham v. Tex. Comm'n on Priv. Sec.*, 418 F.3d 486, 491 (5th Cir. 2005); *see* Dkt. 13, at 12–13). Defendants argue that Plaintiffs have failed to demonstrate how the Individual Plaintiffs who do not work as dancers at adult cabarets have a fundamental right to pursue a lawful calling specifically at an SOB, yet do not cite to any case law requiring such a specific pleading at this stage. (Dkt. 13, at 13). The Court thus rejects Defendants' arguments and finds that Plaintiffs have shown a likelihood of success on the merits of demonstrating that the Individual Plaintiffs have a protected liberty interest in pursuing their livelihoods, whether that be at an adult bookstore or as a bouncer at an adult cabaret. *See Phillips v. Vandygriff*, 711 F.2d 1217, 1222 (5th Cir. 1983), *on reh'g in part*, 724 F.2d 490 (5th Cir. 1984) ("This

---

³ The Court's analysis of Plaintiffs' Fourteenth Amendment claims also applies with their claims brought under Texas state law. *Patel v. Tex. Dep't of Licensing & Regul.*, 469 S.W.3d 69, 86 (Tex. 2015) ("[W]e conclude that the Texas due course of law protections in Article I, § 19, for the most part, align with the protections found in the Fourteenth Amendment to the United States Constitution").

Circuit has also repeatedly acknowledged the principle that a person has a liberty interest in pursuing an occupation.").

As such, the Court must determine whether Plaintiffs' have shown a likelihood of success in establishing that the age restrictions on employment at SOBs are not rationally related to the State's purported interest in curbing human trafficking. Plaintiffs argue that S.B. 315's restrictions are not rationally related to the State's stated interest because 1) "S.B. 315 does not prevent the targeted demographic of adults from patronizing or visiting an SOB"; 2) S.B. 315 inconsistently alters the definition of "child" across state laws; and 3) "[n]ot a word in this legislation targets human traffickers, let alone creates new or enhanced tools for law enforcement to detect, apprehend, and prosecute wrongdoers or protect their victims." (Dkt. 15, at 21). In response, Defendants argue that the State has "long used age restrictions on employment to reduce young people's exposure to perceived social ills" and "it is hardly irrational to enact legislation with the understanding that no young person is safe when traffickers are present" at SOBs." (Dkt. 13, at 13–14).

Having found that Plaintiffs have failed to show a likelihood of success in showing that S.B. 315 fails to meet intermediate scrutiny, the Court similarly finds that Plaintiffs have failed to show that S.B. 315 is unlikely to meet the more deferential rational basis standard. *See* Section III(A)(1)(ii). Indeed, under a rational basis review, S.B. 315 would only be unconstitutional if it was shown to be "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare," and here the State has demonstrated a connection between the statute and the government's interest in combatting human trafficking. (*See* Committee Report, Dkt. 5-2; S.B. 315 Bill Analysis, Dkt. 5-3, Hr'g., Dkt. 27); *Shelton v. City of Coll. Station*, 780 F.2d 475, 480 (5th Cir. 1986) (quoting *Moore v. East Cleveland*, 431 U.S. 494, 498 n.6 (1977)). While S.B. 315 may not be the most effective way to combat trafficking and support its victims, given that rational basis review is a "notoriously deferential standard," the Court does not find that Plaintiffs have met their burden

of showing that S.B. 315 is not rationally related to the government's legitimate interest in curbing human trafficking. *See Reyes v. N. Tex. Tollway Auth., (NTTA)*, 861 F.3d 558, 561–62 (5th Cir. 2017).

Finally, Plaintiffs allege that S.B. 315's overbreadth renders it impermissibly vague, arguing that S.B. 315 "sweep[s] an unlimited amount of legitimate conduct, economic relationships, and constitutionally protected activities into their ambit." (Dkt. 15, at 23). Defendants respond that Plaintiffs' facial challenge based on vagueness fails because any vagueness in S.B. 315 can be remedied "in the normal course of enforcement" and because S.B. 315 is not impermissibly vague in all its interpretations. (Dkt. 13, at 16). To the extent Plaintiffs restate an overbreadth challenge to S.B. 315 under the Fourteenth Amendment, the Court rejects that challenge as a viable basis for a preliminary injunction for the reasons state above. *See* Section III(A)(1)(iii).

A law is unconstitutionally vague when it "either forbids or requires the doing of an act in terms so vague that [wo]men of common intelligence must necessarily guess at its meaning and differ as to its application." *Cramp v. Bd. of Pub. Instruction of Orange Cnty.*, 368 U.S. 278, 287 (1961). "In evaluating vagueness, a reviewing court should consider: (1) whether the law gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly, and (2) whether the law provides explicit standards for those applying them to avoid arbitrary and discriminatory applications." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 551 (5th Cir. 2008) (cleaned up) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972)).

Here, Plaintiffs have failed to show a likelihood of success on the merits of their vagueness claim. Though Plaintiffs complain of confusion caused by S.B. 315's failure to specify "*what* forms of employment or work are permissible," the commonly understood language in the statute indicates that the law applies to all employment relationships between 18-to-20-year-olds and SOBs. (Dkt. 15, at 24). Furthermore, having found that Plaintiffs have not demonstrated a likelihood of success in showing that S.B. 315 reaches a "substantial amount" of protected conduct, the Court "should

uphold the challenge only if the enactment is impermissibly vague in all of its applications." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 (1982). Given that under its plain language S.B. 315 applies to all employment relationships between SOBs and adults under the age of 21, and Plaintiffs base their vagueness challenge on the new statute's failure to "explain what forms of employment or work are permissible," Plaintiffs have failed to show a likelihood of success on the merits of their vagueness challenge under the Fourteenth Amendment.

Having failed to show a likelihood of success on the merits of their First Amendment and Fourteenth Amendment due process claims, the Court finds that a preliminary injunction is not appropriate at this time and that it need not evaluate the remaining preliminary injunction factors.

## IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that Plaintiffs' motion for a preliminary injunction, (Mot. Prelim. Inj., Dkt. 5; Am. Mot. Prelim. Inj., Dkt. 15), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to Exceed Page Limits, (Dkt. 4), is **MOOT**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike, (Dkt. 26), is **DENIED** as **MOOT**.

**SIGNED** on July 20, 2021.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE