IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| FELIX VALADEZ, *et al.*, | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § § | |
| KEN PAXTON, in his official capacity as Attorney General of the State of Texas, and ED SERNA, in his official capacity as Executive Director of the Texas Workforce Commission, | § § § § § § § § | CIVIL ACTION NO. 1:21-cv-519-RP |
| *Defendants*. | § § | |

## PLAINTIFFS' MOTION TO ALTER AND AMEND THIS COURT'S JULY 20, 2021 JUDGMENT

Pursuant to Federal Rule of Civil Procedure 59(e), Plaintiffs move this Court to alter and amend its Judgment of July 20, 2021, denying their motion for a preliminary injunction. (Doc. No. 29).

The purpose of Rule 59(e) is to allow a district court to correct errors in a judgment, "sparing the parties and appellate courts the burden of unnecessary appellate proceedings." *Charles v. Daley*, 799 F.2d 343, 348 (7th Cir. 1986) (citing *United States v. Dieter*, 429 U.S. 6 (1976)). A motion to alter or amend a judgment under Rule 59(e) is appropriate when it established that a manifest error of law or fact has occurred or there is newly discovered evidence. *T. B. by & through Bell v. Nw. Indep. Sch. Dist.*, 980 F.3d 1047, 1051 (5th Cir. 2020).

Here, Plaintiffs respectfully submit that Rule 59(e) is applicable because a manifest error of law occurred. In its Judgment, the Court determined that intermediate, rather than strict scrutiny, applied to Plaintiffs' claim that Senate Bill ("S.B.") 315 is unconstitutional under the First Amendment. However, the case law upon which the Court relied in reaching that determination

1

has been abrogated. Under current Fifth Circuit law, *Reagan Nat'l Advert. of Austin, Inc. v. City of Austin*, 972 F.3d 696 (5th Cir. 2020) cert. granted sub nom. *Austin, TX v. Reagan Nat. Advert.*, 20-1029, 2021 WL 2637836 (U.S. June 28, 2021), and the Supreme Court's decision in *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), S.B. 315 is subject to strict scrutiny.

Thus, this Court should apply strict scrutiny to S.B. 315. Because the statute cannot survive strict scrutiny, the Court should alter and amend its Judgment and grant Plaintiffs' motion for a preliminary injunction.

## ARGUMENT AND AUTHORITIES

**I.  THIS COURT SHOULD ALTER AND AMEND ITS JUDGMENT BECAUSE, UNDER BINDING SUPREME COURT AND FIFTH CIRCUIT PRECEDENT, THE CONSTITUTIONALITY OF S.B. 315 SHOULD BE ANALYZED UNDER STRICT SCRUTINY.**

S.B. 315 prohibits adults between the ages of 18-20 years old from working in sexually oriented businesses. It, therefore, prohibits members of Plaintiff Texas Entertainment Association ("TEA") from employing adults between the ages of 18-20. Specifically, its members who operate adult bookstores cannot sell their constitutionally protected sexually oriented books, magazines, and DVDs through adult employees in that age group.[1] Its members who operate adult nightclubs cannot offer constitutionally protected live performances to audiences that communicate erotic messages by performers who are 18 to 20 years old. And, of course, the individual Plaintiffs, and all other 18-20-year-old adults, are prohibited from working in any capacity in a business that sells

---

[1] While this Court assumed, without deciding, that the TEA has standing for purposes of Plaintiffs' preliminary injunction motion, it is clear that TEA does have standing to challenge S.B. 315 under the pertinent test for associational standing. Associational standing requires an association to show that (1) its "members would otherwise have standing to sue in their own right"; (2) "the interests it seeks to protect are germane to the organization's purpose"; and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). The TEA is comprised of sexually oriented businesses operating in the State of Texas and its members have had to terminate droves of 18-20-year-olds who worked at their businesses as a result of S.B. 315. The TEA satisfies the three-part test for associational standing.

sexually explicit expression or offers live adult entertainment.

The definition of the term "sexually oriented businesses" as used in S.B. 315 is contained in Section 243.002 of the Local Government Code, which is as follows:

> a sex parlor, nude studio, modeling studio, love parlor, adult bookstore, adult movie theater, adult video arcade, adult movie arcade, adult video store, adult motel, or other commercial enterprise the primary business of which is the offering of a service or the selling, renting, or exhibiting of devices or any other items intended to provide sexual stimulation or sexual gratification to the customer.

TEX. LOC. GOV'T CODE § 243.002.[2] Thus, sexually oriented businesses are defined by the content of the constitutionally protected expression that they disseminate, triggering the application of S.B. 315. For example, in an adult bookstore, the prohibitions imposed by S.B. 315 are triggered entirely by the content of sexually explicit media items carried by the business. Similarly, adult nightclubs become subject to the burdens of S.B. 315 by presenting live erotic dance performances to their audience.

In both instances, S.B. 315 is a content-based restriction on its face because its application depends on the content of expression that is sold at adult bookstores or presented at adult nightclubs. Indeed, this is reinforced by Section 243.004 of the Local Government Code, which exempts bookstores, movie theaters and video stores that do not offer "adult" media items. *See* TEX. LOC. GOV'T CODE § 243.004 (exempting from regulation "a bookstore, movie theater, or video store, unless that business is an adult bookstore, adult movie theater, or adult video store under Section 243.002").

This Court, however, relying on the Fifth Circuit's decision in *Doe I v. Landry*, 909 F.3d 99 (5th Cir. 2018) and the Supreme Court's decision in *Ward v. Rock Against Racism*, 491 U.S.

---

[2] S.B. 315 also amends Texas Penal Code § 43.251, which similarly defines a "sexually oriented commercial activity" to mean "a massage establishment, nude studio, modeling studio, love parlor, or other similar commercial enterprise the primary business of which is the offering of a service that is intended to provide sexual stimulation or sexual gratification to the customer." TEX. PENAL CODE § 43.251(a)(5).

781 (1989), determined that, because the claimed purpose of S.B. 315 is to ameliorate secondary effects purported to be associated with sexually oriented businesses, particularly human trafficking, it is a content-neutral law subject to intermediate scrutiny. *See* (Doc. No. 29, pp. 8-9) (*quoting Ward*, 491 U.S. at 791) ("The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys").

A.     ***Reed*** **holds that content-based restrictions are subject to strict scrutiny regardless of the stated purpose.**

However, in its 2015 *Reed v. Town of Gilbert* decision, the Supreme Court rejected the notion that a content-based law could avoid strict scrutiny merely because its stated purpose was content neutral. In that case, the Court, applying strict scrutiny, struck down the town's sign ordinance that treated temporary directional signs less favorably than political and other signs. *Reed*, 576 U.S. at 159. The Supreme Court explained that in determining whether a regulation is content based or content neutral, a court must first look at "whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys," and if it does, that ends the inquiry. *Id.* at 164 (citation omitted).

Turning to the ordinance before it, the Supreme Court found that because it "is a content-based regulation of speech" on its face, there was "no need to consider the government's justifications or purposes for enacting the Code to determine whether it is subject to strict scrutiny." *Reed*, 576 U.S. at 164-65. In so holding, the Supreme Court rejected the Ninth Circuit's approach, which had found the ordinance subject to intermediate scrutiny based on the town's content-neutral justifications and lack of hostility toward the regulated speech. The *Reed* Court explained that this was error:

> But this analysis skips the crucial first step in the content-neutrality analysis: determining whether the law is content neutral on its face. A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of "animus toward the ideas contained" in the regulated speech.

*Reed*, 576 U.S. at 165 (citation omitted). The Court also held that the Ninth Circuit's reliance on *Ward* to justify its use of intermediate scrutiny was misplaced:

> The Court of Appeals and the United States misunderstand our decision in *Ward* as suggesting that a government's purpose is relevant even when a law is content based on its face. That is incorrect. *Ward* had nothing to say about facially content-based restrictions because it involved a facially content-*neutral* ban.... But *Ward's* framework "applies only if a statute is content neutral." ... Its rules thus operate to "protect speech," not "to restrict it."

*Id*. at 166-67 (emphasis in original) (citations omitted). And, the Court emphasized, "[i]nnocent motives do not eliminate the danger of censorship presented by a facially content-based statute, as future government officials may one day wield such statutes to suppress disfavored speech. That is why the First Amendment expressly targets the operation of the laws—*i.e.*, the 'abridgment of speech'—rather than merely the motives of those who enacted them." *Id*.

Accordingly, *Reed* clarified the Court's precedent concerning the level of scrutiny given facially content-based laws: they are to be reviewed under strict scrutiny notwithstanding a government's non-speech related justification for them. *Reed*, 576 U.S. at 167.

**B.      *Reagan* applies *Reed's* analysis and expressly abrogates Fifth Circuit precedent relying on the "predominate purpose" justification.**

The question then becomes *Reed's* effect on case law relied upon by this Court in determining that intermediate scrutiny applied to S.B. 315. The answer to that question is found in the Fifth Circuit's *Reagan* decision, in which it considered a First Amendment challenge to the City of Austin's Sign Code that permitted on-premises signs to be digitized but prohibited the digitization of off-premises signs. *Reagan*, 972 F.3d at 700.

5

The City argued that the Sign Code was content neutral because its purpose was not the suppression of speech, but "to 'protect the aesthetic value of the city and to protect public safety[.]'" *Reagan*, 972 F.3d at 709-10. The district court concluded that the code was content neutral and satisfied intermediate scrutiny. *Id*. at 701. But on appeal, the Fifth Circuit—relying on *Reed's* analysis—held that the lower court's decision was erroneous because determining whether a sign is on-premises or off-premises requires "a reader [to] ask: who is the speaker and what is the speaker saying? These are both hallmarks of a content-based inquiry." *Id*. at 706 (citing *Reed*, 576 U.S. at 166-69). The court concluded that "[b]ecause an off-premises sign is determined by its communicative content, we hold that the Sign Code's distinction between on-premises and off-premises signs is content based," holding that the ordinance was subject to—and failed—strict scrutiny. *Id.* at 702, 710.

The court explained that *Reed* represented a "sea change" in First Amendment law because the Supreme Court made clear that at the first step of the analysis—deciding whether a law is content based or content neutral—the government's justification or purpose in enacting the law is irrelevant. *Reagan,* 972 F.3d at 702-03. The court then considered the effect of *Reed* on prior Fifth Circuit cases:

> This circuit has yet to take inventory of our pre-*Reed* cases. We do so now. We had previously held that "[a] statute that appears content-based on its face may still be deemed content-neutral if it is justified without regard to the content of the speech .... Content-neutrality has continued to be defined by the justification of the law or regulation, and this court has consistently employed that test." *Asgeirsson v. Abbott*, 696 F.3d 454, 459–60 (5th Cir. 2012) (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) ("The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys. The government's purpose is the controlling consideration." (citation omitted))). The *Asgeirsson* case predates *Reed* and cites to *Ward*, which the Supreme Court addressed in *Reed*.

6

*Id*. at 703. The *Reagan* court further noted that in *Reed*, the Supreme Court explained that *Ward* involved a facially content-neutral law and did not suggest that the government's purpose is relevant even when a law is content based on its face. *Id*. The Fifth Circuit then concluded:

> In the wake of *Reed*, our *Asgeirsson* precedent must be revisited. Like the Ninth Circuit, our pre-*Reed* case law ascribed to an incorrect understanding of the test for content-neutrality given in *Ward*. *See Asgeirsson*, 696 F.3d at 459-60. Therefore, *Asgeirsson* and any portion of a case that relies on *Asgeirsson's* content-neutrality analysis must be abrogated.[3]

*Reagan,* 972 F.3d at 703, n. 3.[3] Footnote 3 in *Reagan* is worthy of quoting in full because four of the nine abrogated cases listed therein involved sexually oriented business regulations that had been justified as being aimed at ameliorating "secondary effects" and evaluated under intermediate scrutiny:

> *See, e.g., Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 510 (5th Cir. 2009); *Pruett v. Harris Cty. Bail Bond Bd.*, 499 F.3d 403, 409 n.5 (5th Cir. 2007); *Illusions–Dall. Private Club, Inc. v. Steen*, 482 F.3d 299, 308 (5th Cir. 2007); *Fantasy Ranch Inc. v. City of Arlington*, 459 F.3d 546, 554–56 (5th Cir. 2006); *Brazos Valley Coal. for Life, Inc. v. City of Bryan*, 421 F.3d 314, 326–27 (5th Cir. 2005); *de la O v. Hous. Auth. of City of El Paso*, 417 F.3d 495, 503 (5th Cir. 2005); *N.W. Enters. Inc. v. City of Houston*, 352 F.3d 162, 174 (5th Cir. 2003); *Encore Videos, Inc. v. City of San Antonio*, 330 F.3d 288, 292 (5th Cir. 2003); *Horton v. City of Houston*, 179 F.3d 188, 193 (5th Cir. 1999).

First, in *Illusions-Dallas*, a group of adult nightclubs challenged a Texas statute that prevented sexually oriented businesses (as defined under Section 243.002 of the Local Government Code, just as S.B. 315 does) located in certain political subdivisions, from obtaining or renewing permits to serve alcohol. *Illusions-Dallas*, 482 F.3d at 303-04, n. 2. Initially, it is

---

[3] In *Reagan*, the Supreme Court granted certiorari to consider the following issue: "Whether the Austin city code's distinction between on-premise signs, which may be digitized, and off-premise signs, which may not, is a facially unconstitutional content-based regulation under *Reed v. Town of Gilbert*." See Petition For A Writ Of Certiorari, Supreme Court Docket No. 20-1029. Thus, the Fifth Circuit's holding that its pre-*Reed* case law relying on an incorrect understanding of the test for content-neutrality must be abrogated is not at issue in the Supreme Court.

worth noting that the state argued— as the state has similarly argued in this case—that the law did not even implicate the First Amendment because the sale or consumption of alcoholic beverages is not protected by the First Amendment. *Id.* at 305-07. The Fifth Circuit rejected that contention. It found that because the clubs' status as sexually oriented businesses triggered the prohibition on the service of alcohol to their patrons, the law implicated the First Amendment. *Id*. at 307. That, of course, remains good law.

The portion of *Illusions-Dallas* that the Fifth Circuit has abrogated was its conclusion that intermediate scrutiny applied to the Texas law. Although the adult nightclubs in *Illusions-Dallas* had urged the Fifth Circuit to apply strict scrutiny to the challenged statute, the court determined that because the law's predominant purpose was to ameliorate the secondary effects that were claimed to be associated with sexually oriented businesses, it need only satisfy intermediate scrutiny. *Illusions-Dallas*, 482 F.3d at 308. It is that conclusion that has now been abrogated by the Fifth Circuit's decision in *Reagan*. Strict scrutiny must now be applied to regulations applicable to sexually oriented businesses, including those defined in Section 243.002 of the Local Government Code.[4]

Next, in *Fantasy Ranch*, a group of adult nightclubs challenged several portions of the City of Arlington's sexually oriented businesses ordinance, including its licensing scheme and provisions restricting the proximity to be kept between performers and patrons. In considering whether the ordinance was content based or content neutral, the Fifth Circuit recognized that, on its face, the ordinance was "not content neutral, because it targets only sexually oriented

---

[4] In the end, the Fifth Circuit reversed the summary judgment that had been granted to the state because, even under intermediate scrutiny, the state had not introduced evidence of secondary effects. Instead, the state relied on judicial opinions concerning secondary effects. That, the court held, was not sufficient. Rather some evidence is required. *See Illusions-Dallas*, 482 F.3d at 312-14.

businesses." *Fantasy Ranch*, 459 F.3d at 555. However, it proceeded to determine that because the law's "predominate concern is for secondary effects" the ordinance would be considered content neutral and evaluated under intermediate scrutiny. *Id*. at 556. But now, in light of *Reed* and *Reagan*, once it is determined that a law is content based on its face, that ends the inquiry—the "predominate concern" is irrelevant.

Third, in *N.W. Enterprises*, operators of adult entertainment establishments challenged the City of Houston's amendments to its ordinances governing sexually oriented businesses which, *inter alia*, imposed restrictions on where those businesses could locate. The district court had determined that certain provisions of the amendments should be treated as content based and therefore subject to strict scrutiny. *N.W. Enterprises*, 352 F.3d at 171-72. The Fifth Circuit found that determination to be error, stating that "[t]his court has invariably analyzed ordinances regulating SOBs as content-neutral time, place, and manner restrictions where the legislative record demonstrated that the municipality's predominant concern was to regulate secondary effects of SOBs and not to censor the expression itself." *Id*. at 174.

Last, in *Encore Videos,* an adult bookstore challenged the City of San Antonio's ordinance forbidding sexually oriented businesses to be located within 1000 feet of residential areas and its licensing scheme for sexually oriented businesses. The Fifth Circuit cited *Ward* for the proposition that the "principal inquiry" in determining content neutrality "is whether the government adopted a regulation of speech because of disagreement with the message being conveyed." *Encore Videos,* 330 F.3d at 292 (citation and internal quotation marks omitted). It then concluded that because the plaintiff failed to provide evidence that the city adopted the law because of improper motive, the

law was content neutral and would be examined under intermediate scrutiny. *Id*. at 292.[5]

Thus, *Illusions, Fantasy Ranch, N.W. Enterprises,* and *Encore Videos* were all abrogated precisely because the Fifth Circuit had determined that the laws at issue were content neutral and subject to intermediate scrutiny pursuant to *Ward* and its progeny when, in fact, the laws at issue were content based on their face and should have been subject to strict scrutiny. These abrogated precedents—all of which center their analyses on the proposition that the government's "predominant concern" justifies a lower level of constitutional scrutiny—are no longer good law when it comes to determining the level of scrutiny to be applied.

Now, as set forth in *Reagan*, the law in the Fifth Circuit is clear: the government's purpose is irrelevant in determining whether a law is content based. The Fifth Circuit has not retreated from this proposition. *See e.g., Denton v. City of El Paso*, --- Fed.Appx. ---, 2021 WL 2815396 at *2 (5th Cir. July 6, 2021) (reversing order denying preliminary injunction and finding a regulation to be content based because, under *Reed*, "when a restriction is content based on its face, the government's purpose is irrelevant").

*Reagan* therefore abrogates *Doe I v. Landry*, a 2018 case relied on by this Court in its Judgment. In *Doe I*, the Fifth Circuit considered a Louisiana statute requiring entertainers on premises licensed to serve alcohol and who performed "nude" to be 21 years of age or older. *Doe I*, 909 F.3d at 105-06. Relying on *Illusions-Dallas*, the *Doe I* court concluded "the statute's predominant purpose determines the level of scrutiny" and rejected the plaintiffs' argument that strict scrutiny applied based on comments made by certain legislators:

> The plaintiffs quote statements from two state legislators to support their view that this was a content-based restriction based on a view of morally acceptable conduct. The views of individual legislators as to their special interest in a legislative

---

[5] However, the Fifth Circuit ultimately struck down the zoning law because it was not narrowly tailored under intermediate scrutiny. *See Encore Videos,* 330 F.3d at 295.

enactment, however, **do not override our clear caselaw such as *Illusion-Dallas* [sic] that regulations such as this are generally not content based and receive intermediate scrutiny**. That is the scrutiny we apply.

*Doe I*, 909 F.3d at 107-08 (emphasis added). But again, the "predominant purpose" portion of *Illusions-Dallas* was abrogated by *Reagan* and is no longer good law. Thus, *Doe I's* analysis used to determine the appropriate level of scrutiny in this case is also no longer valid or controlling. Accordingly, this Court should alter and amend its judgment because, under binding precedent, S.B. 315 is a content-based law and should be examined under strict scrutiny. And when S.B. 315 is tested under that standard, it fails.

**C.     S.B. 315 is a content-based law that does not satisfy strict scrutiny.**

"[A] content-based regulation must be 'necessary to serve a compelling state interest and … narrowly drawn to achieve that end." *Perry Educ. Ass'n v. Perry Local Educs.' Ass'n*, 460 U.S. 37, 45 (1983). In the context of content-based restrictions, narrow tailoring requires that the regulation be "the least restrictive alternative available to the government." *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000). "It is rare that a regulation restricting speech because of its content will ever be permissible." *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 799 (2011).

The state cannot show that banning all adults between the ages of 18-20 from working at establishments that offer constitutionally protected sexually oriented expression is necessary to serve its purported interest of ameliorating secondary effects, particularly sex trafficking. Moreover, less restrictive means of furthering these interests exist. The state can and does regulate directly human trafficking, solicitation, and prostitution. In addition, employee training on human trafficking can be required, as well as the posting of information related to human trafficking in employee areas of the business.

But what the state cannot do without violating the First Amendment is categorically prohibit segments of the adult population from working at establishments that present constitutionally protected expression because those businesses are claimed to be associated with harmful conduct; it must protect the speech and expression and focus narrowly and directly on the conduct it seeks to prohibit. In S.B. 315, the state fails to do so.

It simply cannot be the case that prohibiting adult citizens who are 18-20 years old from working in adult bookstores or performing (or otherwise working) in adult nightclubs is the least restrictive means available to the state to further its interest in preventing human trafficking. This is particularly so given the fact that it must be undisputed that the overwhelmingly vast percentage of adults in that age group who work or perform in adult businesses are neither victims nor at risk of being victims of human trafficking.

Indeed, the Supreme Court has held that adults who are 18 years of age or older have a First Amendment right to perform sexually explicit acts in adult films. *See U. S. v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994) ("nonobscene, sexually explicit materials involving persons over the age of 17 are protected by the First Amendment"). If the state cannot prohibit adults between the ages of 18 and 20 from engaging in actual sexual conduct on film, *a fortiori*, it cannot prohibit them from simply working in an adult bookstore or performing in an adult nightclub.

In *New York v. Ferber*, 458 U.S. 747 (1982), the Supreme Court first distinguished child pornography from other sexually oriented speech because of the state's interest in protecting the child exploited by the production process. Thus, pornography showing minors can be proscribed whether or not the images are obscene under the test set forth in *Miller v. California,* 413 U.S. 15 (1973). But the Supreme Court made clear that pornography depicting persons who reached the age of majority is protected by the First Amendment unless it meets the legal test for obscenity. In

*Ferber*, the Court went as far as suggesting that if necessary for a production with literary or artistic value, visual depictions of a "person over the statutory age who perhaps looked younger could be utilized." *Id*. at 763.

In *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), the Court reaffirmed that principle. There, a federal law prohibited "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture," that "is, or appears to be, of a minor engaging in sexually explicit conduct." *Id*. at 241. Thus, the statute prohibited productions with performers who were young adults, but appeared to be minors, engaged in sexually explicit conduct.

The government attempted to justify the law by claiming that such images, even if not constituting child pornography, "whet the sexual appetites" of pedophiles, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of children. *Ashcroft*, 535 U.S. at 241. The Court struck down the law as unconstitutional under the First Amendment. It explained that "*Ferber's* judgment about child pornography was based upon how it was made, not on what it communicated." *Id*. at 251. It then reiterated *Ferber's* point that some works in that category may have value; thus, virtual images or "persons over the statutory age who looked younger" could be used in the production in place of minors. *Id*.

In *Ashcroft*, the Court also made clear that its jurisprudence draws "vital distinctions between words and deeds, between ideas and conduct." *Ashcroft*, 535 U.S. at 253 (citations omitted). Accordingly, "[t]he government may not prohibit speech because it increases the chance an unlawful act will be committed at some indefinite future time." *Id*. (internal citations omitted). Thus, the Court held that the government cannot ban young adults from appearing in constitutionally protected sexually explicit productions in the name of protecting children.

13

The same reasoning applies here. The State of Texas cannot categorically ban 18-20-year-old individuals from working at establishments engaged in constitutionally protected expression in the name of protecting "children from trafficking and sexual exploitation..." Senate Research Center, Bill Analysis, Tex. S.B. 315, 87th Leg. R.S. (2021). Nor can it ban 18-20-year-old people from working at businesses presenting constitutionally protected expression on the theory that a third party may commit an unlawful act against them in the future.[6]

## CONCLUSION

For all of the foregoing reasons, this Court should alter or amend its July 20, 2021 decision and grant the Plaintiffs' motion for a preliminary injunction.

Respectfully submitted,

WALLACE & ALLEN, LLP

 /s/ Casey T. Wallace
Casey T. Wallace
State Bar No. 00795827
Benjamin W. Allen
State Bar No. 24069288
William X. King
State Bar No. 24072496
440 Louisiana, Suite 1500
Houston, TX 77002
Tel: (713) 227-1744
Fax: (713) 227-0104
cwallace@wallaceallen.com
ballen@wallacellen.com
wking@wallaceallen.com

-and-

J. Michael Murray*
Ohio State Bar No. 019626
BERKMAN GORDON MURRAY & DeVAN
55 Public Sq. Ste. 2200

---

[6] Indeed, these Supreme Court decisions fully support the proposition that, even under intermediate scrutiny, S.B. 315 is unconstitutional under the First Amendment.

Cleveland, OH 44113
Tel: (216) 781-5245
Fax: (216) 781-8207
jmmurray@bgmdlaw.com
*Subject to Admission *Pro Hac Vice*
**ATTORNEYS FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

I certify that the foregoing document has been served on counsel of record in accordance with the Federal Rules of Civil Procedure via filing through the Court's CM/ECF system on August 12, 2021.

Christopher Hilton, Deputy Chief
Ryan Kercher, Assistant Attorney General
General Litigation Division
Office of the Attorney General
P. O. Box 12548, Capitol Station
Austin, Texas 78711
Tel: (512) 463-2120
Fax: (512) 320-0667
Ryan.Kercher@oag.texas.gov
Christopher.Hilton@oag.texas.gov
**ATTORNEYS FOR DEFENDANTS**

                                      */s/ Casey T. Wallace*
                                      Casey T. Wallace