## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| FELIX VALADEZ, *et. al.*, | ) | CASE NO. 1:21-CV-519-RP |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KEN PAXTON, *in his official capacity as* | ) | |
| *Attorney General of Texas*, and ED SERNA | ) | |
| *in his official capacity as Executive Director* | ) | |
| *of the Texas Workforce Commission*, | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFFS' REPLY IN SUPPORT OF THEIR
### MOTION TO ALTER AND AMEND THIS COURT'S JULY 20, 2021 JUDGMENT

Defendants argue that even at the early stage of litigation, if a court issues a decision based on abrogated case law, it should not remedy that error on a Rule 59(e) motion, if the moving party did not cite the case on which the party is now relying and did not make the precise argument the party is now advancing beforehand. That argument ignores that, particularly at this early stage of the case, which was filed only two and a half months ago, when important First Amendment rights are at stake, a district court has broad authority to and an obligation to employ the correct analysis to the issues presented.

Notably, Defendants do not contend that Plaintiffs *waived their right* to argue that strict scrutiny applies to S.B. 315 in this case. To the contrary, Defendants acknowledge that Plaintiffs are free to argue that strict scrutiny applies "later in the case –e.g, in a summary judgment briefing or otherwise on the merits." Doc. No. 33, p. 3.[1] But it makes no sense to suggest that the court should

---

[1] Plaintiffs did allege in their Complaint, at pp 26-27, that strict scrutiny should apply to S.B. 315 and that it failed strict scrutiny. And at the preliminary injunction hearing, Plaintiffs did argue
(continued...)

wait until later to fix what now appears to be a manifest error in its July 20, 2021 Judgment. *See* Fed. R. Civ. P. 1 (the Federal Rules of Civil Procedure, "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."). The Court should proceed to the merits of Plaintiffs' Rule 59(e) motion.

**I.     Strict Scrutiny Applies to S.B. 315.**     .

A.     S.B. 315 is Content-Based.

 The definition of the term "sexually oriented businesses" as used in S.B. 315 is contained in Section 243.002 of the Local Government Code, which is as follows:

> a sex parlor, nude studio, modeling studio, love parlor, adult bookstore, adult movie theater, adult video arcade, adult movie arcade, adult video store, adult motel, or other commercial enterprise the primary business of which is the offering of a service or the selling, renting, or exhibiting of devices or any other items intended to provide sexual stimulation or sexual gratification to the customer.

Tex. Loc. Gov't Code 243.002.

Thus, sexually oriented businesses are defined by the content of the constitutionally protected expression that they disseminate, triggering the application of S.B. 315.  In fact, Section 243.004 of the Local Government Code, specifically exempts bookstores, movie theaters and video stores that do not offer "adult" media items. *See* TEX. LOC. GOV'T CODE § 243.004. Thus to determine whether the employment restriction of S.B. 315 applies, enforcement officers first have to examine the content of the constitutionally protected expression offered by a businesses to verify that it is sexually oriented. If it is, enforcement may proceed. If it is not, the employment restriction does not

---

[1](...continued)
that strict scrutiny should apply. Tr. July 16, 2021, Preliminary Injunction Hearing at 8-9. While they did not cite *Reagan* or make the specific argument for strict scrutiny made in their Rule 59(e) motion, they certainly preserved the claim that strict scrutiny applies.

apply. *See Thomas v. Bright*, 937 F.3d 721, 731 (6th Cir. 2020) *cert. denied* 141 S.Ct. 194 (Jul 09, 2020) (finding state regulatory scheme for signs was content based because it required officials to assess the meaning and purpose of the sign's message in order to determine if the sign violated the law); *L.D. Mgmt. Co. v. Gray*, 988 F.3d 836, 839 (6th Cir. 2021) (same).

Accordingly, under *Reed* and *Reagan*, S.B. 315 is a content-based regulation because, on its face, it draws distinctions based on the message a speaker conveys and who the speaker is. *See Reed* 576, U.S. at 165; *Reagan*, 972 F.3d at 702.

Defendants do not attempt to argue that S.B. 315 does not draw distinctions based on content. Rather, they argue that, because the law applies not just to erotic dancers but to janitors as well as others persons who do not engage in expressive activities, the law is content-neutral. That argument misses the point that, on its face, S.B. 315 treats businesses who present constitutionally protected sexually oriented expression differently than businesses that do not.[2]

Defendants then submit that this Court already properly considered and ruled upon the question of content neutrality and it should not reconsider its ruling. Doc. No. 33, pp. 5-6. But that ruling was based on cases that have been abrogated on that very point.

Because the claimed purpose of S.B. 315 is to ameliorate secondary effects purported to be associated with sexually oriented businesses, this Court found that S.B. 315 was a content-neutral law subject to intermediate scrutiny, Doc. No. 29, pp 8-9 quoting *Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ([t]he principal inquiry in determining content neutrality, in speech cases generally

---

[2] Defendants reliance on *City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000) is misplaced because in that case the Court considered a facially content-neutral law. The Court found that "by its terms, the ordinance regulates conduct alone. It does not target nudity that contains an erotic message; rather it bans all public nudity, regardless of whether that nudity is accompanied by expressive activity." *Id.* at 290. The fact that the ordinance's preamble referenced negative secondary effects of adult establishments did not alter the Court's view that the ordinance was a content-neutral law, subject to intermediate scrutiny. *Id.* at 290-92.

3

and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it coveys.").

It went on to apply *Ward* and the Fifth Circuit's decision in *Doe I v. Landry*, 909 F.3d 99 (5th Cir. 2018) for the proposition that, under the narrowly tailored prong of intermediate scrutiny, the government "need not show that S.B. 315 is the least restrictive or least intrusive means..." Doc. No. 29, p. 11.

Thus, the Court relied on *Ward* and *Landry* in reaching its ultimate conclusion in its July 20, 2021 Judgment.

B.   The Fifth Circuit Abrogated All Cases Applying Content-Neutral Justifications to Laws That Are Content-Based on Their Face.

Defendants then argue that, in *Reagan*, the Fifth Circuit did not mean to abrogate all of its prior case law concerning sexually oriented businesses, where intermediate scrutiny was applied to content based laws on the theory that there was a content neutral justification for the laws, namely to mitigate claimed adverse secondary effects. Doc. No. 33, p. 6.   But Defendants offer no explanation as to what *Reagan,* and its footnote 3 listing various cases that were specifically abrogated, could mean besides that.   The Fifth Circuit's passage in *Reagan* is unambiguous:

> In the wake of *Reed*, our *Asgeirsson* precedent must be revisited. Like the Ninth Circuit, our pre-*Reed* case law ascribed to an incorrect understanding of the test for content-neutrality given in *Ward*. *See Asgeirsson*, 696 F.3d at 459-60. Therefore, *Asgeirsson* and **any portion of a case that relies on *Asgeirsson*'s content-neutrality analysis must be abrogated.**

*Reagan*, 972 F.3d at 703 (emphasis added). *See also* n. 3 citing cases.

Moreover, in *Asgeirsson v. Abbott*, 696 F. 3d 454 (5th Cir. 2012), the court applied intermediate scrutiny to criminal provisions of the Texas Open Meeting Act because, although the law was content-based on its face, its purpose was aimed at ameliorating secondary effects of closed meetings. *Id.* at 461. In support of that conclusion, the court quoted at-length from *Renton v.*

4

*Playtime Theatres, Inc*., 475 U.S. 41 (1986), which developed the secondary effects doctrine as it relates to sexually oriented businesses. *See Asgerisson*, 696 F.3d at 460. It explained that the *Renton* Court had concluded that the ordinance in that case was "completely consistent with [the] definition of 'content neutral' speech regulations as those are justified without reference to the content of the regulated speech.'" *Id. quoting Renton*, 475 U.S. at 48.

The court then held that "[c]ontent-neutrality has continued to be defined by the justification of the law or regulation, and this court has consistently employed that test." 696 F.3d 454, 459-60 (5th Cir. 2012). As to the first clause of that holding, the court cited *Ward*, 491 U.S. at 791. *Id.* at n. 6. With regard to the second clause of that holding, it provided, in a footnote, a list of cases that had employed that test. *Id.* at n. 7. That footnote is identical to the list of cases that *Reagan* concluded had been abrogated by *Reed*. *See Reagan*, 972 F.3d at 703 at n. 3 citing cases.

Thus, *Asgerisson* was based on cases considering the secondary effects doctrine as it applied to sexually oriented businesses. *Asgerrison* and its entire content-neutral analysis were abrogated by *Reagan*.

Other recent case law from the Fifth Circuit confirms what the court means when it concludes its prior case law has been abrogated by a Supreme Court decision.

In *Hines v. Alldredge*, 783 F.3d 197, 202 (5th Cir. 2012), the Fifth Circuit considered a First Amendment challenge to a Texas law prohibiting the practice of veterinary medicine by telephone or electronic means. The court adopted the "professional free speech doctrine" and concluded that the regulation was exempt from First Amendment scrutiny.

Then, in *Vizaline, LLC v. Tracy*, 949 F.3d 927 (5th Cir. 2020), the court addressed a First Amendment challenge to a state occupational-licensing scheme for surveyors. The court noted that the Supreme Court "recently disavowed the notion that occupational licensing regulations are exempt

from First Amendment scrutiny. In overturning the 'professional speech' doctrine deployed by some circuits, including ours, the Court rejected any theory of the First Amendment that 'gives the States unfettered power to reduce a group's First Amendment rights by simply imposing a licensing requirement." *Id.* at 929 *citing Nat'l Inst. Of Family & Life Advocates v. Becarra [NIFLA]*, —U.S.—, 138 S. Ct. 2361, 2375 (2018). It then stated in a footnote, "Our decision in *Hines v. Alldredge*, 783 F.3d 197, 202 (5th Cir. 2012), adopted the professional speech doctrine. As explained below, *Hines*' reasoning does not survive *NIFLA*." Id. at n.1.

Later, in *Hines v. Quillivan*, 982 F.3d 266 (5th Cir. 2020) *(Hines II)*, the court considered a renewed First Amendment challenge to the law that was at issue in *Hines I*. The Fifth Circuit concluded "we are presented with a precedential opinion that held *NIFLA* abrogated *Hines I*. As explained in *Stokes* [887 F.3d 199, 204 (5th Cir. 2018)], **we are to follow a prior panel's determination of whether a Supreme Court case abrogated one of our rules.** *Vizaline*, **therefore, is our guide**." *Id*. at 272. (emphasis added).

Were that not enough, each of the four different sexually oriented businesses cases that the Fifth Circuit expressly abrogated in *Regan* demonstrate that it is inappropriate to rely on *Ward* and *Landry* in determining the appropriate level of scrutiny to apply to S.B. 315.

1.   Illusions-Dallas

In *Illusions–Dall. Private Club, Inc. v. Steen*, 482 F.3d 299, 308 (5th Cir. 2007), the Fifth Circuit's decision was predicated on the exact same statute defining sexually oriented businesses that is at issue in this case–Section 243.002 of the Local Government Code. In explaining its determination to apply intermediate scrutiny the court stated:

> The fact that a statute *refers* to the content of expression does not necessarily make it content-based if it was enacted for a valid purpose *other* than suppressing the expression due to a disagreement with the message conveyed or a concern over the message's direct effect on those who are exposed to it.

*Id.* at 308 (emphasis in original).

That proposition, of course, is precisely what has been abrogated in *Reagan*. 972 F.3d at 703, n.3 ("our pre-*Reed* case law ascribed to an incorrect understanding of the test for content-neutrality given in *Ward*. *See Asgeirsson*, 696 F.3d at 459-60. Therefore, *Asgeirsson* and any portion of a case that relies on *Asgeirsson*'s content-neutrality analysis must be abrogated.")

The Court in *Illusions* also found:

Section 32.03(k), however, references SOBs and applies to them, but that a statute references content does not alone mean that it is intended to suppress speech, even without a legislative record to suggest a purpose unrelated to speech.

*Id*. at 309.

Thus, the Fifth Circuit recognized that Section 243.002 of the Local Government Code defining sexually oriented businesses, which triggered the regulation at issue, is in fact, content based. The court only applied intermediate scrutiny in that case because of *Ward* and its progeny. *Id* at 308

But now, after *Reagan*, whenever Section 243.002 of the Local Government Code is used to trigger a regulation–such as S.B. 315– it faces strict scrutiny.

Significantly, in *Doe I v. Landry*, 909 F.3d 99 (5th 2018), the Fifth Circuit relied on *Illusions-Dallas* in determining that intermediate scrutiny applied to the Louisiana statue requiring entertainers on premises license to serve alcohol and who performed "nude" to be 21 years of age or older. Indeed, it concluded that the statute's "predominant purpose" was aimed at secondary effects. *Id.* quoting *Illusions-Dallas*, 482 F.3d at 308.

Thus, *Landry*, which this Court relied upon in its July 20, 2021 Judgment, is also no longer valid or controlling in determining the appropriate level of scrutiny for a law that is content based on its face.

2.      Fantasy Ranch, N.W. Enterprises and Encore Video

In *Reagan*, the Fifth Circuit expressly abrogated three other decisions involving challenges to sexually oriented business laws for this same reason. *Regan*, 972 F.3d at 703, n.3 *citing Fantasy Ranch Inc. v. City of Arlington*, 459 F.3d 546 (5th Cir. 2006), *N.W. Enters. Inc. v. City of Houston*, 352 F.3d 162 (5th Cir. 2003), and *Encore Videos, Inc. v. City of San Antonio*, 330 F.3d 288 (5th Cir. 2003). In each case, the Fifth Circuit had determined that intermediate scrutiny applied based on the *Ward* and its progeny, which required courts to examine the "predominate purpose" of the law. *Fantasy Ranch, Inc*. 459 F.3d at  554; *N.W. Enters. Inc,* 352 F.3d at 174; *Encore Videos, Inc.*, 330 F.3d at 292.

The Fifth Circuit abrogated all of those cases precisely because they ascribed "to an incorrect understanding of the test for content-neutrality given in *Ward*." *Regan*, 972 F.3d at 703. Defendants various attempts to offer an alternative explanation for their abrogation fail to refute the Fifth Circuit's clear holding in *Reagan*.

The law in the Fifth Circuit is now clear that the government's purpose is irrelevant in determining whether a law is content based.

3.      Texas Entertainment Association, Incorporated v. Hegar

Defendants proceed to argue that *TEA v. Hegar*, --- F.4th ----2021 WL 3674034 (5th Cir. Aug. 19, 2021), where the Fifth Circuit struck down a sexually oriented business regulation as a content-based restriction on speech that could not survive strict scrutiny, supports its position.

Notably, Defendants reliance on that case appears to eliminate any argument it has that the TEA lacks standing in this matter. The Fifth Circuit recognized that the TEA is an association representing the legal and economic interests of sexually oriented businesses in Texas and had standing to challenge the law at issue in that case, which burdened the type of speech that could be

presented at adult nightclubs.  *Id.* at \*4.

Here, the TEA has standing on behalf of its adult bookstore members that are prohibited from selling their constitutionally protected sexually oriented media items through adult employees between the ages of 18-20.  It also has standing on behalf of its adult night club members that are prohibited from presenting erotic performances by those who are in that age group.

In *Hegar*, the Fifth Circuit found that the law at issue—which expanded a statutory definition of "nude" as applicable to adult nightclubs via an "interpretative rule"—was content based. It reached that decision on the ground that nothing in the record demonstrated the law was aimed at secondary effects as oppose to the suppression of speech. *Id.* at \*11. The court did not consider *Reagan*, presumably because none of the briefs brought that case to the court's attention. *See* Docket No. 20-50262.

In any event, simply because the Fifth Circuit used a different route  to reach the conclusion that a  law was content based and could not pass strict scrutiny in *Hegar,* does not support Defendants' position here that the case law relied on by the Court in its July 20, 2021 Judgment was not abrogated by *Reagan.*

**C.    S.B. 315 Cannot Satisfy Strict Scrutiny.**

In the context of content-based restrictions, narrow tailoring requires that the regulation be "the least restrictive alternative available to the government." *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000). "It is rare that a regulation restricting speech because of its content will ever be permissible." *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 799 (2011).

As set forth in Plaintiffs' Rule 59(e) motion, the Supreme Court has made clear that persons who are 18 or older have a constitutional right to appear in sexually explicit media. *See U.S. v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994); *Ashcroft v. Free Speech Coalition*, 535 U.S. 234,  251

(2002). Defendants do not address these decisions.  Nor can it be disputed that the overwhelming percentage of adults between the ages of 18-20 who work or perform in sexually oriented businesses are neither victims of nor at risk of being victims of human trafficking.

Thus, Defendants are unable to demonstrate that banning all 18-20 year olds from working or performing in sexually oriented businesses is the least restrictive means available to further the state's interest in preventing human trafficking.

CONCLUSION

For all of the foregoing reasons, this Court should alter or amend its July 20, 2021, decision and grant the Plaintiffs' motion for a preliminary injunction.

Respectfully submitted,

s/ J. Michael Murray
J. Michael Murray*
jmmurray@bgmdlaw.com
Ohio State Bar No. 0019626
BERKMAN GORDON MURRAY & DeVAN
55 Public Sq. Ste. 2200
Cleveland, OH 44113
Telephone: (216) 781-5245 / Fax: (216) 781-8207
*Admitted Pro Hac Vice

Casey T. Wallace
State Bar No. 00795827
Benjamin W. Allen
State Bar No. 24069299
William X. King
State Bar No. 24072496
440 Louisiana Suite 1500
Houston, Texas 77002
Tel. (713) 227-1744 / Fax: (713) 227-0104
cwallace@wallaceallen.com
ballen@wallaceallen.com
Wking@wallaceallen.com

Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

A copy of the foregoing document was filed on September 3, 2021. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ J. Michael Murray
J. Michael Murray*
jmmurray@bgmdlaw.com
Ohio State Bar No. 0019626
BERKMAN GORDON MURRAY & DeVAN
*Admitted Pro Hac Vice

Attorney for Plaintiffs
