**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **FELIX VALADEZ, ABIGAIL REYES, AMADA MAN, EVANNY SALAZAR, TEXAS ENTERTAINMENT ASSOCIATION, INC., LONE STARR MULTI-THEATRES, LTD., d/b/a NEW FINE ARTS WEST, XTC CABARET, INC., d/b/a XTC CABARET AUSTIN, and RCI DINING SERVICES (ROUND ROCK), INC., d/b/a RICKS CABARET,** § § § § § § § § § | |
| *Plaintiffs,* § | |
| **v.** § | **CIVIL ACTION NO. 1:21-cv-519-RP** |
| § | |
| **KEN PAXTON, in his official capacity as Attorney General of the State of Texas, and ED SERNA, in his official capacity as Executive Director of the Texas Workforce Commission,** § § § § § | |
| § | |
| *Defendants.* § | |

**PLAINTIFFS' AMENDED COMPLAINT**
**FOR DECLARATORY AND INJUNCTIVE RELIEF**

Pursuant to Fed. R. Civ. P. 15(a)(2), with the written consent of the Defendants (*see* Proposed Scheduling Order, Doc. 38 p. 2, n.1), Plaintiffs Felix Valadez, Abigail Reyes, Amada Man, Evanny Salazar, Texas Entertainment Association, Inc., Lone Starr Multi-Theatres, Ltd., d/b/a New Fine Arts West, XTC Cabaret, Inc., d/b/a XTC Cabaret Austin, and RCI Dining Services (Round Rock), Inc., d/b/a Ricks Cabaret, file this Amended Complaint for Declaratory and Injunctive Relief against Defendants, Ken Paxton, in his official capacity as Attorney General of the State of Texas, and Ed Serna, in his official capacity as Executive Director of the Texas Workforce Commission.

## INTRODUCTION

1.      Plaintiffs challenge the constitutionality of Senate Bill 315's ("S.B. 315") age-related amendments to provisions of the Texas Civil Practice & Remedies Code, Labor Code, and Penal Code.

2.      The 87th Texas Legislature ordained that, effective May 24, 2021, all adult Texans between the ages of 18 and 20 years old are categorically considered 'children' who are not competent to decide whether to work at or for any "sexually oriented business" ("SOB"), and that it is unlawful for an SOB to employ them in any capacity. Tex. S.B. 315, 87th Leg. R.S. (2021).

3.      This legislation employs constitutionally illegitimate means: depriving ordinary people just like the individual Plaintiffs of their expressive and associational liberties secured to them under the federal constitution.

4.      S.B. 315 criminalizes all legal and consensual working relationships between all SOBs and all 18-20-year-old people. There are no exceptions. For the past year, it has been illegal for any SOB to employ or contract with any man or woman to perform any kind of work or service—cashier, store clerk, valet, bartender, waitress, janitor, security guard, secretary, DJ, or exotic dancer—if that person is under 21 years of age.

5.      S.B. 315 bears no rational relationship to its purported objectives and flies in the face of common sense. Texas law sets "[t]he age of majority in this state [at] 18 years," the age at which a person is free to buy and gift lotto tickets, sell alcohol, marry, enter into contracts, cast a ballot, fight and die for their country, and be held responsible for their crimes up to and including execution.[1] In all respects, "an eighteen-year-old is an adult under the laws of this state and

---

[1] TEX. CIV. PRAC. & REM. CODE § 129.001 (age of majority); TEX. FAM. CODE § 2.101 (marry); TEX. ELEC. CODE § 11.002(a)(1), U.S. CONST. amend. XXVI (vote); 50 U.S.C. §§ 453, 454 (selective service);

presumably capable of making adult decisions"—except, apparently, when it comes to where and with whom he or she decides to lawfully earn a living. *Moore v. Sticks Billiards, Inc.*, 14-93-01115-CV, 1996 WL 400302, at *2 (Tex. App.—Houston [14th Dist.] July 18, 1996, writ denied).

6.      Plaintiffs ask the Court to declare that S.B. 315's minimum age requirements are unconstitutional and enjoin their enforcement.

## PARTIES

7.      Plaintiff Felix Valadez is an individual who resides in Dallas County, Texas.

8.      Plaintiff Abigail Reyes is an individual who resides in Dallas County, Texas.

9.      Plaintiff Amada Man is an individual who resides in Dallas County, Texas.

10.      Plaintiff Evanny Salazar is an individual who resides in Bexar County, Texas.

11.      Plaintiff Texas Entertainment Association, Inc. ("TEA"), is a Texas non-profit corporation that conducts business throughout Texas. TEA is a trade association whose membership consists of scores of adult cabarets in Texas that feature various forms of entertainment, including exotic dancing and music. The TEA's membership also includes adult bookstores. The TEA's members have, until the passage of S.B. 315, regularly employed or contracted with adults who are 18 to 20 years of age. Among TEA's objectives are the promotion and protection of the rights of its members, and in furtherance of those objectives, it brings this action on behalf of its members who are burdened by S.B. 315.

12.      Plaintiff Lone Starr Multi-Theatres, Ltd., d/b/a New Fine Arts West, is a domestic limited partnership doing business in Dallas County, Texas.  It is a member of TEA.

13.      Plaintiff RCI Dining Services (Round Rock), Inc., d/b/a Ricks Cabaret, is a Texas corporation doing business in Travis County, Texas. It is a member of TEA.

---

TEX. GOV'T CODE § 466.3051(c) (lottery); TEX. PENAL CODE § 8.07(d) (death penalty); TEX. ALCO. BEV. CODE § 106.09 (serve alcohol).

14.     Plaintiff XTC Cabaret, Inc., d/b/a XTC Cabaret Austin, is a Texas corporation doing business in Travis County, Texas. It is a member of the TEA.

15.     Defendant Ken Paxton, sued in his official capacity, is the Attorney General of the State of Texas. The Attorney General—the state's chief law enforcement officer—is authorized to enforce Chapter 125 of the Texas Civil Practice & Remedies Code and Chapter 51 of the Texas Labor Code. *See, e.g.,* Tex. Civ. Prac. & Rem. Code § 125.002; *see also id.* at Ch. 140A; Tex. Labor Code § 51.034. Defendant has been served and appeared in this case.

16.     Defendant Ed Serna, sued in his official capacity, is the Executive Director of the Texas Workforce Commission. He is charged with the day-to-day operations of the agency, including implementation of policies set by the Commission and enforcement of the Labor Code. Defendant has been served and appeared in this case.

## JURISDICTION & VENUE

17.     Pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), this Court has original jurisdiction over all civil matters arising under the United States Constitution, and pursuant to 42 U.S.C. §§ 1983 and 1988 to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege, or immunity that the Constitution secures to the people.

18.     Plaintiffs' claims for declaratory and injunctive relief are authorized under 28 U.S.C. §§ 2201-2202, along with Federal Rules of Civil Procedure 57 and 65.

19.     Venue of this case lies in the Western District of Texas pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims occurred in this district, and Defendants reside in this district. The issues in this case are not unique or

particular to any one locality because the laws at issue apply equally across the state. The resolution of this case will have state-wide significance.

<h2 style="text-align:center"><u>FACTS</u></h2>

20.     S.B. 315 is styled an "act relating to restrictions on the age of persons employed by or allowed on the premises of a sexually oriented business; creating a criminal offense." State law generally defines a "sexually oriented business" as any—

> …sex parlor, nude studio, modeling studio, love parlor, adult bookstore, adult movie theater, adult video arcade, adult movie arcade, adult video store, adult motel, or other commercial enterprise the primary business of which is the offering of a service or the selling, renting, or exhibiting of devices or any other items intended to provide sexual stimulation or sexual gratification to the customer.

TEX. LOC. GOV'T CODE § 243.002. One of S.B. 315's legislative proponents, State Representative Shawn Thierry, explained that this legislation's passage was propelled by the alleged drugging and assault of a young female Capitol staffer by a male lobbyist, which "caused the legislation [sic] to respond in a strong manner. It's a reminder that we must change the culture in how we treat young women. We will no longer look away when they are sexually abused, assaulted or placed in these [sexually oriented business] environments[.]"[2]

21.     Echoing that sentiment, House Speaker Dade Phelan is reported to have "called on lawmakers and others to do more to protect women working in the Capitol and participating in

---

[2] Karla Florez, *Texas House members pass anti-human trafficking proposal to 'change the culture in how we treat young women'*, MIDLAND TIMES, May 9, 2021, https://midlandtimes.com/stories/595048492-texas-house-members-pass-anti-human-trafficking-proposal-to-change-the-culture-in-how-we-treat-young-women (*last accessed* April 27, 2022).

Erica Proffer, *Advocates want to raise the minimum age for strippers to 21*, KVUE, April 27, 2021, https://www.kvue.com/article/news/advocates-want-to-raise-the-minimum-age-for-strippers-to-21/269-a9e5aa48-ac5f-40b6-a14a-59d34c4327fc (*last accessed* April 27, 2022).

legislative business amid a criminal investigation into whether a lobbyist recently drugged a staffer during a downtown meeting."[3]

22.     So, rather than passing new laws to protect the young women who work at the Capitol, lawmakers targeted other establishments—SOBs. S.B. 315's authors claim that the legislation was necessary to "provide necessary mechanisms to safeguard our communities and children from trafficking and sexual exploitation, which are often harmful secondary effects of sexually oriented businesses." Senate Research Center, Bill Analysis, Tex. S.B. 315, 87th Leg. R.S. (2021).

23.     Despite its portrayal in the public sphere, S.B. 315's "mechanism" is not limited to banning young women from working as strippers. This legislation goes much further; it amends several existing laws to make it unlawful for *all* men and women under the age of 21 to work for or at the broad range of businesses classified as SOBs.

**I.      Amendments to Chapter 125 of the Texas Civil Practice & Remedies Code.**

24.     First, S.B. 315 amends provisions of Chapter 125 of the Texas Civil Practice & Remedies Code, which empowers the attorney general or local officials to seek various civil remedies against "[a] person who maintains a place to which persons habitually go for the following purposes and who knowingly tolerates the activity and furthermore fails to make reasonable attempts to abate the activity maintains a common nuisance[.]" TEX. CIV. PRAC. & REM. CODE §§ 125.0015(a), 125.002(a).

---

[3] Tony Plohetski, *Texas House Speaker Dade Phelan addresses date-rape allegations against lobbyist*, KVUE, April 26, 2021, https://www.kvue.com/article/news/local/texas/texas-house-speaker-dade-phelan-addresses-date-rape-allegations-against-lobbyist/269-236e85b3-4c48-47b7-99b1-83a282cf1802 (*last accessed* April 27, 2022).

25.    Prior to S.B. 315's passage, the laundry list of "purposes" included "employing a minor at a sexually oriented business as defined by Section 243.002, Local Government Code" and "employment harmful to a child as described by Section 43.251, Penal Code." TEX. CIV. PRAC. & REM. CODE § 125.0015(a)(19), (22).

26.    Section 5 of S.B. 315 amended Section 125.0015(a)(19) so that the following conduct now constitutes a "common nuisance:"

> (19)    employing or entering into a contract for the performance of work or the provision of a service with an individual younger than 21 years of age for work or services performed [a minor] at a sexually oriented business as defined by Section 243.002, Local Government Code.

Tex. S.B. 315, § 5, 87th Leg. R.S. (2021) (formatting original) (*amending id.*). Accordingly, an SOB is liable for maintaining a "common nuisance" if people under the age of 21 habitually go there to perform work or provide a service. No exception appears in the text of the statute. Violators are subject to a range of penalties, including temporary and permanent injunctions, fines, and confinement in jail. *See* TEX. CIV. PRAC. & REM. CODE §§ 125.002(d), 125.045.

## II.    Amendments to Chapter 43 of the Texas Penal Code.

27.    Section 8 of S.B. 315 amends Penal Code Section 43.251 by changing its definition of "child" to mean "a person younger than 21 [18] years of age." Tex. S.B. 315, § 8, 87th Leg. R.S. (2021) (formatting original) (*amending* TEX. PENAL CODE § 43.251(a)(1)). As a result, a person who "employs, authorizes, or induces" a 19-year-old "child" to work "in a sexually oriented commercial activity," or in "any place of business permitting, requesting, or requiring a child to work nude or topless,"[4] is subject to felony charges. *Id.* at § 43.251(a)-(c).

---

[4] "'Sexually oriented commercial activity' means a massage establishment, nude studio, modeling studio, love parlor, or other similar commercial enterprise the primary business of which is the offering of

28.     This amendment affects laws that cross-reference Section 43.251, including the nuisance statute. *See* TEX. CIV. PRAC. & REM. CODE § 125.0015(a)(22). It also affects other provisions of the Penal Code, including Chapter 20A, which enumerates various trafficking crimes. TEX. PENAL CODE § 20A.02(a)(7)(J). Chapter 20A, in turn, is referenced in Chapter 140A of the Texas Civil Practice & Remedies Code. *See, e.g.*, TEX. CIV. PRAC. & REM. CODE § 140A.002 ("A person or enterprise commits racketeering if, for financial gain, the person or enterprise commits an offense under Chapter 20A … and the offense or an element of the offense: (1) occurs in more than one county in this state; or (2) is facilitated by the use of United States mail, e-mail, telephone, facsimile, or a wireless communication from one county in this state to another").

**III.    Amendments to Chapter 51 of the Texas Labor Code.**

29.     Last, Section 6 of S.B. 315 amended several provisions of Labor Code Chapter 51, which regulates "Employment of Children." TEX. LABOR CODE §§ 51.001-.016.

30.     S.B. 315 did not amend Section 51.002, which still provides that the general definition of a "child" is "an individual under 18 years of age." TEX. LABOR CODE § 51.002. Instead, the legislation amended Section 51.016—which formerly restricted employment of "an individual younger than 18 years of age" at an SOB. *Id*. at § 51.016(b).  Section 51.016(b) now provides that—

> (b)     A sexually oriented business may not employ <u>or enter into a contract, other than a contract described by Subsection (g), for the performance of work or the provision of a service with</u> an individual younger than 21 [18] years of age.

---

a service that is intended to provide sexual stimulation or sexual gratification to the customer." TEX. PENAL CODE § 43.251(a)(5). "Nude" means "entirely unclothed" or "clothed in a manner that leaves uncovered or visible through less than fully opaque clothing any portion of the breasts below the top of the areola of the breasts, if the child is female, or any portion of the genitals or buttocks." *Id*. § 43.251(a)(4). "Topless" means "a female child clothed in a manner that leaves uncovered or visible through less than fully opaque clothing any portion of her breasts below the top of the areola." *Id*. § 43.251(a)(6).

Tex. S.B. 315, § 6, 87th Leg. R.S. (2021) (formatting original) (*amending id.*). The exception is limited to "an independent contractor who contracts with a sexually oriented business solely to perform repair, maintenance, or construction services at the business." TEX. LABOR CODE § 51.016(g).

31.     Section 7 of S.B. 315 also provides for a new criminal penalty; violation of Section 51.016(b) is a Class A misdemeanor. TEX. LABOR CODE §§ 51.016(i)(3), 51.031(b). In addition to criminal punishment up to and including a one-year jail sentence, a violator of Section 51.016(b) is subject to a suit for injunctive relief brought by the attorney general, *id.* at § 51.034, as well as administrative penalties imposed by the Texas Workforce Commission if it "determines that a person who employs a child has violated this chapter or a rule adopted under this chapter…." *Id.* at § 51.033(a).

## IV.     S.B. 315's Effect on Plaintiffs

### A.     Felix Valadez & Abigail Reyes

32.     Plaintiff Felix Valadez was born on February 14, 2002. Since approximately August 2020, he has been employed at an adult bookstore in the Dallas area as a store clerk.

33.     Plaintiff Abby Reyes was born on May 9, 2002. Since approximately June 2020, she has also been employed at an adult bookstore in the Dallas area as a store clerk.

34.     What Mr. Valadez and Ms. Reyes do for a living is sell and distribute a variety of lawful content, materials, and items to consenting adult members of the public, including adult magazines, videos, erotica, and 'novelty' items. Their job duties also include answering customer questions, helping them find the materials or items they might be looking for, and restocking inventory. They interact with people from all walks of life on a regular basis. Both Plaintiffs enjoy their work and want to continue in their chosen occupation.

35.     No one coerced, forced, or pressured Mr. Valadez or Ms. Reyes into working at an adult bookstore. They are not concerned about becoming victims of human trafficking or being exposed to other crimes by virtue of where they have chosen work. Indeed, the only job where Ms. Reyes has been victimized was at the business where she worked prior to her time at the bookstore—a gas station that unlawfully stole her wages.

36.     Like most people, Mr. Valadez and Ms. Reyes were under the impression that once they turned eighteen, they had every right to pursue any lawful calling of their choosing. However, in late May 2021, both individuals found out that S.B. 315 applies not only to the people they know who lost their jobs at strip clubs, it applies to *all* SOBs, including their place of work too.

37.     Both Mr. Valadez and Ms. Reyes now fear that they may lose their jobs without any warning. Their fears are real and substantial. They have no way of knowing whether officials could tell their employer one day that it is illegal for them to work at an SOB, and they do not know whether their employer might soon decide that it is not worth taking the risk of continuing to employ these adults because of S.B. 315's amendments.

**B.      Amada Man & Evanny Salazar**

38.     Plaintiff Amada Man was born on February 18, 2002. Plaintiff Evanny Salazar was born on August 19, 2002. Like the other individual Plaintiffs, Ms. Man and Ms. Salazar believed that once they turned eighteen, they would enjoy the right to pursue any lawful work that provides them with economic opportunity and an expressive outlet, and that no one could require them to settle for a low-paying job or prohibit them from engaging in protected expression to earn a living.

39.     After they turned eighteen in 2020, Ms. Man and Ms. Salazar decided to begin performing as exotic dancers at clubs in Texas. As exotic dancers, these Plaintiffs earned their living by engaging in constitutionally protected expression. By combining the ensemble of their

appearance, music, lighting, and dance, they made money by performing both on and offstage with the purpose of conveying feelings of eroticism and sensuality to audiences.

40.    No one coerced, forced, or pressured Ms. Man or Ms. Salazar to work as exotic dancers. They do not believe that working as dancers has made them any more susceptible to becoming victims of the criminal element. Ms. Man and Ms. Salazar specifically chose to work at 'higher end' clubs in Dallas and San Antonio, respectively, where they enjoyed good relationships with managers and felt that they could perform in safe and protected environments. Ms. Man and Ms. Salazar view the alternative—working as a dancer at 'private events'—as a dangerous non-starter.

41.    After S.B. 315 went into effect, Ms. Man and Ms. Salazar learned that the clubs where they had been performing would no longer allow any 18-20-year-old individuals to perform at the establishments in any capacity.

42.    Since then, both women have been prevented from performing as exotic dancers in the State of Texas as they lack the right or ability to engage in protected expression at any venue within its borders. Indeed, although she ordinarily resides in Dallas, Ms. Man has been forced to temporarily relocate to Oklahoma where she is allowed to continue performing as an exotic dancer.

43.    Were it not for S.B. 315, both women would immediately resume conveying protected exotic dance expression at clubs in Texas in order to sustain their livelihoods.

**C.    Texas Entertainment Association, Inc., Ricks Cabaret, & XTC Cabaret**

44.    Plaintiff Texas Entertainment Association, Inc., is an association comprised of adult cabarets like Plaintiffs Ricks Cabaret and XTC Cabaret Austin, and adult bookstores like Plaintiff New Fine Arts, that are subject to S.B. 315's age-based restrictions.

45.     Ricks and XTC Cabaret, as well as the TEA's other adult cabaret members, feature nude and semi-nude live exotic dance performance, along with other forms of entertainment, including music. Before S.B. 315 became law, these businesses employed and contracted with individuals between the ages of 18 to 20 in a variety of positions, including as dancers, DJs, bartenders, waitresses, cashiers, security personnel, janitors, administrators, bookkeepers, promoters and marketing personnel.

46.     Once S.B. 315 went into effect, Ricks, XTC Cabaret, and the TEA's members were forced to immediately terminate droves of 18-20-year-old men and women who worked at their establishments in various roles, including those who agreed to provide musical and dance entertainment.

47.     Ricks and XTC Cabaret, as with the TEA's other members, fear that should they employ, hire, or contract with any 'underage' adult to perform work or provide services of any kind, including protected First Amendment expression, their businesses, owners, and management will be subject to civil and criminal penalties.

48.     So long as S.B. 315's amendments remain in effect, Ricks, XTC Cabaret, and the TEA's other adult cabaret members are loathe to employ, hire, or contract with any individual under the age of 21 for any expressive or non-expressive purpose.

49.     Were it not for S.B. 315, Ricks, XTC Cabaret, and the TEA's other adult cabaret members would immediately resume hiring or contracting with 18-20-year-old men and women to provide live entertainment and protected exotic dance expression at their venues.

**D.      New Fine Arts**

50.      Plaintiff New Fine Arts is an adult bookstore and video arcade that has been in business for decades. Because it sells and displays for sale various magazines, books, novels, films and novelty items which are of a sexually-explicit nature, it is subject to S.B. 315's age restrictions.

51.      Before S.B. 315 became law, New Fine Arts was able to and did freely hire and employ individuals between the ages of 18 to 20 to sell constitutionally protected sexually oriented books, magazines, and other media to patrons.

52.      It wants the right to continue to employ adults between the ages of 18 and 20.

## CAUSES OF ACTION

53.      Section 1983 provides the vehicle for vindicating constitutional rights in the face of unconstitutional state laws, including via pre-enforcement challenges. 42 U.S.C. § 1983; *see Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392 (1988).

54.      Plaintiffs have suffered constitutional injuries because S.B. 315's amendments to Texas statutes transgress the First Amendment's guarantees of freedom of speech and association.

## COUNT I

**Violation of U.S. CONST. amend. I—Free Speech & Associational Liberty**

55.      The First Amendment, made applicable to the states through the Fourteenth Amendment, prohibits the enactment or enforcement of laws "abridging the freedom of speech." U.S. CONST. amend. I. The First Amendment protects not only the rights of adults, but persons traditionally considered to be "minors," including their freedom of speech and "to associate freely, which, like the right of adults … is not limited to political associations but includes associations for social, legal, or economic purposes." *Johnson v. City of Opelousas*, 658 F.2d 1065, 1072 (5th Cir. 1981) (internal citations omitted).

**A.      Violation of Expressive Rights**

56.      Both on its face and as-applied, S.B. 315 imposes a prior restraint and violates the rights of all individual Plaintiffs to provide, sell, and engage in protected forms of expression. Plaintiffs TEA, Ricks Cabaret, XTC Cabaret, and New Fine Arts, join in their challenge. *See Craig v. Boren*, 429 U.S. 190, 195 (1976).

57.      It is beyond dispute that live entertainment is protected expression under the First Amendment. *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 65 (1981). The First Amendment protects exotic dance and other forms of non-obscene erotic expression. *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000). Movies, books, and other kinds of "nonobscene, sexually explicit materials involving persons over the age of 17 are protected by the First Amendment." *United States v. X-Citement Video, Inc*., 513 U.S. 64, 72 (1994).

58.      S.B. 315 totally inhibits the rights of *all* people between 18 and 20 years of age from engaging in any form of expression for or at any and all SOBs. Indeed, S.B. 315 cannot even be likened to a time, place, manner restriction because it bans all individuals under the age of 21 from working at an SOB at any time, in any place, and in any manner.

59.      "[T]he government cannot prohibit compensation for the exercise of First Amendment rights." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County, Tennessee*, 274 F.3d 377, 397 (6th Cir. 2001). S.B. 315 does just that. Ms. Man and Ms. Salazar cannot earn money by performing any kind of dance, erotic or not, nude, semi-nude, or fully clothed, at any SOB in the State of Texas. S.B. 315 has prevented them from exercising their rights to free expression in the manner they have so chosen.

60.      "[I]t also requires no elaboration that the free publication and dissemination of books and other forms of the printed word furnish very familiar applications of these

constitutionally protected freedoms. It is of course no matter that the dissemination takes place under commercial auspices." *Smith v. People of the State of California*, 361 U.S. 147, 150 (1959). S.B. 315 makes it illegal for Mr. Valadez and Ms. Reyes to disseminate or sell erotic literature, adult-oriented magazines, or videos to other consenting adults. *See Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1040 (S.D. Ohio 2016), aff'd, 714 Fed. Appx. 565 (6th Cir. 2017) (observing that "[t]he First Amendment protects the right to distribute books").

61.     S.B. 315's amendments only apply to Plaintiff Ricks, XTC Cabaret, New Fine Arts, and the TEA's members because they provide, sell, and feature constitutionally protected adult-oriented content and expression. Because of their content, S.B. 315 makes it illegal for these Plaintiffs to employ or contract with any person between the ages of 18-20 to create, provide, sell, or present any constitutionally protected expression for or on behalf of their businesses. *See, e.g., FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225 (1990) (holding that petitioners could raise a facial challenge to a licensing scheme that was "more onerous with respect to sexually oriented businesses than with respect to the vast majority of other businesses").

**B.     Impairment of Associational Freedom**

62.     On its face and as-applied, S.B. 315 violates the rights of Ms. Man and Ms. Salazar to engage in association for expressive purposes. *See Deja Vu of Nashville,* 274 F.3d at 396. It is recognized that dancers, DJs, other club personnel, "and customers work together as speaker and audience to create an erotic, sexually-charged atmosphere, and although society may not find that a particularly worthy goal, it is a shared one nonetheless." *Id*.

63.     S.B. 315 prohibits Ms. Man and Ms. Salazar from associating with SOBs, DJs, and customers for expressive purposes. In other words, the net effect of S.B. 315 is to deny Ms. Man and Ms. Salazar access to any venue where they can convey protected expression to an audience.

64. S.B. 315's age restrictions also violate the associational rights of Plaintiffs New Fine Arts, Ricks Cabaret, XTC Cabaret, and the TEA's members. Plaintiffs New Fine Arts, Ricks Cabaret, XTC Cabaret, and the TEA's members are prohibited from associating with all 18-20-year-old persons for the purpose of conveying constitutionally protected expression to customers. "[T]he statute quite literally establishes guilt by association alone, without any need to establish that an individual's association [with an SOB] poses the threat feared by the Government in proscribing it. The inhibiting effect on the exercise of First Amendment rights is clear." *See United States v. Robel*, 389 U.S. 258, 265 (1967).

## C. Unconstitutional Overbreadth

65. All Plaintiffs challenge S.B. 315 as overbroad. The overbreadth doctrine "permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.'" *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612-615 (1973)). "[P]articularly where conduct and not merely speech is involved … the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick*, 413 U.S. at 615.

66. It is impossible to compare S.B. 315's legitimate and illegitimate sweep because its sweep is total: all 18–20-year-old men and women and all SOBs are denied the right to partake in any kind economic relationship involving all forms of expression. None of the individual Plaintiffs may be hired to provide live or recorded dance, music, decorate the interior of an SOB, or sell constitutionally protected content at or through an SOB. Indeed, the breadth of S.B. 315's amendments even criminalize the act of employing or contracting with a 20-year-old "child" to engage in core political speech on behalf of an SOB at the Capitol.

67.     It is evident that instead of targeting the evils that are within the allowable area of the government's control, S.B. 315's approach is to completely trample the rights of all 18-20-year-old individuals to engage in all forms of protected speech and expressive conduct at or in connection with any kind of work at an SOB. This is the very kind of fatally overbroad statute that courts routinely strike down as offensive to the First Amendment.

## CONSTITUTIONAL STANDARDS OF REVIEW

68.     Whether considered in the context of some or all of the Plaintiffs and their claims, one thing is clear—S.B. 315 cannot withstand any form of constitutional scrutiny.

### A.     S.B. 315 is Subject to Strict Scrutiny

69.     "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015); *City of Austin, Texas v. Reagan National Advertising of Austin, LLC,* 546 U.S. ___ (April 21, 2022) (slip opinion). Content-based laws "will be strictly scrutinized and upheld only if it is precisely tailored to further a compelling government interest." *Sonnier v. Quarterman*, 476 F.3d 349, 368 (5th Cir. 2007).

70.     S.B. 315's amendments to Texas laws are facially content based. Under Chapter 125 of the Civil Practice and Remedies Code and Chapter 51 of the Labor Code, the definition of a "sexually oriented business" turns on whether an establishment provides or disseminates constitutionally protected "adult" content or expression. *See* TEX. LABOR CODE § 51.016(a)(2) and TEX. CIV. PRAC. & REM. CODE § 125.0015(a)(19) (both citing TEX. LOC. GOV'T CODE § 243.002 for the definition of SOB); *see also* TEX. PENAL CODE § 43.251(a)(5).

71.     Thus, whether an establishment falls within S.B. 315's restrictions can only be determined by reference to the content of the expression inside it. For example, in an adult

bookstore, the prohibitions imposed by S.B. 315 are triggered entirely by the content of sexually explicit media items carried by the business. Adult cabarets are subject to S.B. 315's restrictions because they present exotic dancing to audiences. *See K. Smartt Investments, Inc. v. Martinez*, No. 04-01-00482-CV, 2002 WL 31890887, at *5 (Tex. App.—San Antonio Dec. 31, 2002, no pet.) (interpreting "item" in Section 243.002 to include exotic dancing).

72.    This is reinforced by Section 243.004 of the Local Government Code, which distinguishes between purveyors of "adult" content and exempts from SOB status bookstores, movie theaters and video stores that do not offer "adult" media items. Tex. Loc. Gov't Code § 243.004 (exempting from regulation "a bookstore, movie theater, or video store, unless that business is an adult bookstore, adult movie theater, or adult video store under Section 243.002"); *Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50, 56, n.12 (1976) ("Because the Ordinances distinguish adult theatres and bookstores from ordinary theatres and bookstores on the basis of the content of their respective wares, the classification is one which restrains conduct protected by the First Amendment")

73.    Because S.B. 315 is facially content based, it "is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Reed*, 576 U.S. at 165. *See Reagan National Advertising of Austin, Inc. v. City of Austin*, 972 F.3d 696, 703 fn. 3 (5th Cir. 2020) reversed on other grounds *sub nom City of Austin, Texas v. Reagan National Advertising of Austin, supra.* S.B. 315's amendments to Texas laws do not survive strict scrutiny.

74.    First, S.B. 315 does not serve the state's compelling interest in reducing the purported negative secondary effects of SOBs, let alone combat the proliferation of non-consensual activities and unlawful harms that criminals may impose on young victims. The only

thing that S.B. 315 achieves is outlawing all legal and consensual working relationships between every SOB and every 18-20-year-old man and woman who wants to engage in protected forms of expression individually, or with others, at an SOB.

75.     Second, narrow tailoring requires the government to show that less restrictive means could accomplish the interest at stake. There is nothing "precise" or "narrowly tailored" about a law that puts all 18-20-year-old persons out of work solely because they have chosen to work at SOBs for or in conjunction with an expressive purpose. Eliminating all individual Plaintiffs' right to perform any and all work at or for an SOB—specifically work that involves expressive activity—does not satisfy strict scrutiny.

**B.     S.B. 315 Does Not Survive Intermediate Scrutiny**

76.     Pleading in the alternative, even if it is facially content neutral, S.B. 315 does not survive intermediate scrutiny either. The state has the burden of proving that these age-based restrictions will further its interests, and that the restrictions are no greater than essential. *United States v. O'Brien*, 391 U.S. 367 (1968).

77.     Banning all individuals between 18-20 years of age from working at or for all SOBs for any lawful purpose does not further the government's interest in combatting human trafficking and related crimes. The state has not relied on any statistics, evidence, reports, or studies to support the idea that removing all 18-20-year-old men and women from the pool of adults who may work at or for SOBs somehow reduces the risks of human trafficking or staunches crime.

78.     The restriction is also *far* greater than essential. A state's interest in protecting children from trafficking and sexual exploitation, however powerful and laudable, does not justify the total suppression of all forms of legitimate and lawful work (expressive or non-expressive) that may be performed by 18-20-year-old adults at an SOB. If accepted, such logic would empower

the government to ban virtually any group of adults from engaging in constitutionally protected activities and otherwise lawful economic activity under the banner of protecting individuals deemed to be uniquely vulnerable to criminal exploitation and vices. "Surely, this is to burn the house to roast the pig." *Butler v. State of Mich.*, 352 U.S. 380, 383 (1957).

79. In summary, S.B. 315 is unconstitutional under the First and Fourteenth Amendments, both on its face and as applied, for each of the following reasons:

a. it imposes an unconstitutional prior restraint on expression;

b. it is an unconstitutional content-based restriction of protected expression;

c. it does not further any governmental interest, compelling, substantial or otherwise, and thus, is unconstitutional under either strict or intermediate scrutiny;

d. it is not the least restrictive means, nor is it narrowly tailored, to further any governmental interest, and thus, is unconstitutional under either strict or intermediate scrutiny;

e. it was adopted without valid empirical information to support it;

f. the data and information on which the State relied to support the law was invalid, flawed in several respects, and shoddy, and does not support or justify the law either under strict scrutiny or intermediate scrutiny;

g. it is unconstitutionally overbroad.

## **REQUEST FOR DECLARATORY RELIEF**

80. Plaintiffs seeks declaratory relief pursuant to Section 1983 and 28 U.S.C. §§ 2201-2202. *Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez*, 561 U.S. 661, 673 (2010) (section 1983 suit brought for violations of First and Fourteenth Amendments sought injunctive and declaratory relief). Plaintiffs ask the Court to declare as follows:

(a)     Texas Civil Practice & Remedies Code § 125.0015(a)(19), (22), as amended by section 5 of S.B. 315, violates the First Amendment, both facially and as-applied;

(b)      Texas Labor Code §§ 51.016(b), (h), (i), and § 51.031(b), as amended by sections 6 and 7 of S.B. 315, violates the First Amendment, both facially and as-applied; and

(c)      Texas Penal Code § 43.251(a)(1), as amended by section 8 of S.B. 315, violates the First Amendment, both facially and as-applied.

### REQUEST FOR INJUNCTIVE RELIEF

81.      The passage and threatened enforcement of S.B. 315 has deprived and will deprive Plaintiffs of their rights secured by the First and Fourteenth Amendments, all of which has caused and threatens to cause in the future, irreparable harm to Plaintiffs for which there is no adequate remedy at law. Plaintiffs are entitled to a permanent injunction demanded hereunder.

### ATTORNEYS' FEES

82.      All Plaintiffs are entitled to recover reasonable and necessary attorneys' fees and expert fees. 42 U.S.C. § 1988.

### CONCLUSION

"Experience should teach us to be most on our guard to protect liberty when the government's purposes are beneficent." *Olmstead v. United States,* 277 U.S. 438, 479 (1928) (Brandeis, J., dissenting). Praiseworthy aims do not justify draconian laws that trample fundamental rights and impose severe economic hardships on adults who have every right to work at lawfully operated establishments of their own choosing.

For these reasons, Plaintiffs Felix Valadez, Abigail Reyes, Amada Man, Evanny Salazar, Texas Entertainment Association, Inc., Lone Starr Multi-Theatres, Ltd., d/b/a New Fine Arts West, XTC Cabaret, Inc., d/b/a XTC Cabaret Austin, and RCI Dining Services (Round Rock), Inc., d/b/a Ricks Cabaret, respectfully request that judgment be entered in their favor and that they be awarded the following forms of relief:

a. Declaratory relief and a permanent injunction restraining and enjoining the Defendants, its officers, agents, servants, attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, from enforcing S.B. 315 against Plaintiffs;

b. Attorneys' fees;

c. Expert fees;

d. Costs of suit; and

e. All other relief, in law and in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

WALLACE & ALLEN, LLP

 /s/ Casey T. Wallace
Casey T. Wallace
State Bar No. 00795827
Benjamin W. Allen
State Bar No. 24069288
William X. King
State Bar No. 24072496
440 Louisiana, Suite 590
Houston, Texas 77002
Tel: (713) 227-1744
Fax: (713) 600-0034
cwallace@wallaceallen.com
ballen@wallacellen.com
wking@wallaceallen.com

-and-

J. Michael Murray, *pro hac vice*
Ohio State Bar No. 019626
BERKMAN GORDON MURRAY & DeVAN
55 Public Sq. Ste. 2200
Cleveland, OH 44113
Tel: (216) 781-5245
Fax: (216) 781-8207
jmmurray@bgmdlaw.com
**ATTORNEYS FOR PLAINTIFFS**

<u>**CERTIFICATE OF SERVICE**</u>

I certify that the foregoing document has been served on counsel of record in accordance with the Federal Rules of Civil Procedure via filing through the Court's CM/ECF system on April 29, 2022.

Christopher Hilton, Deputy Chief
Ryan Kercher, Assistant Attorney General
General Litigation Division
Office of the Attorney General
P. O. Box 12548, Capitol Station
Austin, Texas 78711
Tel: (512) 463-2120
Fax: (512) 320-0667
Ryan.Kercher@oag.texas.gov
Christopher.Hilton@oag.texas.gov
**ATTORNEYS FOR DEFENDANTS**

_/s/ Casey T. Wallace_
Casey T. Wallace