IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| FELIX VALADEZ, LUIS CARRIZOZA, ABIGAIL REYES, AMADA MAN, and TEXAS ENTERTAINMENT ASSOCIATION, INC. | § § § § § § | |
| *Plaintiffs* | § § § | |
| v. | § § | CIVIL ACTION NO. 1:21-CV-519 |
| KEN PAXTON, in his official capacity as Attorney General of the State of Texas, and ED SERNA, in his official capacity as Executive Director of the Texas Workforce Commission, | § § § § § § § § | |
| *Defendants.* | § § | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR STAY**

Defendants Ken Paxton, in his official capacity as Attorney General of the State of Texas, and Ed Serna, in his official capacity as Executive Director of the Texas Workforce Commission file this Reply in support of their Motion for Stay ("Motion"). In support, Defendants would show:

Plaintiffs' response to the Motion to Stay ("Response") continues to lobby for the application of strict scrutiny while avoiding the plain reality that the Fifth Circuit opinion in *DC Operating* will dispose of, narrow, or clarify the issues in *Valadez*. Plaintiffs' argument regarding the putative likelihood of a procedural dismissal in *DC Operating* is completely unsupported. Plaintiffs' attempts to distinguish *DC Operating* from *Valadez* go to extraordinary lengths to evade the obvious impact the *DC Operating* opinion will have on *Valadez*. Finally, Plaintiffs fail to make a meaningful showing of prejudice resulting from the requested stay, and do little to address Defendants' showing that unstayed and unnecessary litigation, discovery, and briefing constitute actual prejudice.

The Court should grant the Motion.

# ARGUMENT

## A.  The *DC Operating* Order of Dismissal is Final

A dismissal of claims implicitly denies outstanding motions. *Tollett v. City of Kemah*, 285 F.2d 357, 369 n. * (5th Cir. 2002); *see also*, *Stokes v. Dolgencorp, Inc.*, 367 Fed.Appx. 545, 549 (5th Cir. 2010). Judge Montalvo's order dismissing the claims in that case implicitly denied the plaintiffs' motion for leave to amend.

Plaintiffs' suggestion that the Fifth Circuit might dispose of *DC Operating* on the procedural ground that Judge Montalvo did not rule on the plaintiffs' motion for leave to amend is supported by a single, unpublished, *per curiam* Fourth Circuit case that is one paragraph long and involves a *pro se* plaintiff. Arcane, nonbinding, factually-distinguishable authority from another circuit does not support Plaintiffs' assertion that a procedural dismissal of the *DC Operating* appeal is a "substantial likelihood."[1] This is particularly true where, as demonstrated above, Fifth Circuit authority speaking directly to this issue countermands Plaintiffs' proffered extra-circuit authority. Nevertheless, Plaintiffs lead with this argument—which speaks to the relative strength of their remaining arguments.

## B.  Plaintiffs' Efforts to Distinguish *DC Operating* and *Valadez* Fall Short

Plaintiffs' efforts to distinguish the two cases cannot alter the fact that the Fifth Circuit opinion in *DC Operating* will dispose of, narrow, or clarify issues in *Valadez*. First, Plaintiffs vaguely suggest that Defendants' assertion in the Motion that the *DC Operating* petition contains identical allegations to the *Valadez* Complaint is somehow incorrect or misleading. Defendants' description of the pleadings in both cases was and remains accurate, as a simple perusal of the relevant pleadings demonstrates.[2] The *DC Operating* petition recites the *Valadez* complaint's legal and factual allegations regarding scrutiny *verbatim*.

---

[1] Dkt. 49, p. 2.
[2] Cf. *Valadez* Dkt. 1, ¶¶ 90-104, and 1 Exh. 1, ¶¶ 76-89. **Note:** The Motion refers to two exhibits which were not attached to the filing, in error. They are attached, hereto, and referred to using the same exhibit numbers.

Second, Plaintiffs argue that the *Reed v. Town of Gilbert* case was not raised in *DC Operating*. 576 U.S. 155 (2015). That's not true either. The undersigned counsel specifically addressed *Reed* at oral argument with Judge Montalvo, who demonstrated a clear mastery of that case and its relevance to *DC Operating*.[3]

Third, in both their original and amended complaints, Plaintiffs plead intermediate scrutiny in the alternative to strict scrutiny—even after dropping their earlier allegations that rational basis scrutiny might also alternatively apply.[4] Indeed, as the Court is aware, Plaintiffs conceded the applicability of intermediate scrutiny for purposes of the Motion for Preliminary Injunction—and continue to note intermediate scrutiny's relevance in the alternative even in the Response.[5] Thus, intermediate scrutiny remains a live issue in *Valadez*. Plaintiffs must acknowledge the Fifth Circuit's opinion in *DC Operating* will dispose of, narrow, or clarify that issue in this case.

## C. *DC Operating* Will Dispose of, Narrow, or Clarify the Issues in *Valadez*

Plaintiffs' contentions regarding strict scrutiny—which make up the bulk of the Response—do not merit simultaneous parallel litigation of *Valadez* and *DC Operating*. Plaintiffs' arguments to the contrary assume this Court will adopt a strict scrutiny standard in this case, and further assume that any ruling from the Fifth Circuit on intermediate scrutiny would contain no ruling pertinent to this case.

If this Court does not adopt a strict scrutiny standard, the Fifth Circuit opinion in *DC Operating* will dispose of, narrow, or clarify application of intermediate scrutiny in this case. Even if this Court does adopt strict scrutiny—or has difficulty determining which scrutiny to apply—the Fifth Circuit opinion in *DC Operating* will likewise narrow or clarify how these otherwise identical legal and factual

---

[3] Exh. 3.
[4] *Valadez* Dkt. 1, ¶¶ 94-96 and *Valadez* Dkt. 39, ¶¶ 76-79.
[5] *Valadez* Dkt. 49, p. 2 ("Plaintiffs claim S.B. 315 is a content based law that must satisfy strict scrutiny (**as well as intermediate scrutiny**)."). (Emphasis added).

issues intertwine. This last point is especially true since, as Plaintiffs know, they could file an *amicus curiae* brief in *DC Operating* to identify peculiar issues and draw comment on those issues from the Fifth Circuit.

Plaintiffs spend most of the Response arguing the merits of applying strict scrutiny. Defendants will not address those arguments here, because they have no bearing on the decision currently before the Court. For all the pages spent arguing the applicability of strict scrutiny, Plaintiffs cannot show that the Fifth Circuit opinion in *DC Operating* will have no bearing on—that is, that it will not dispose of, narrow, or clarify—some or all of the issues in *Valadez*.

**D. Prejudice**

Plaintiffs claim a stay would prejudice their interests, but the Court has already weighed concerns pertaining to a delay in exercising putative First Amendment rights in this case, and denied Plaintiffs' request for preliminary injunction. The Court's ruling in that regard certainly would not support an indefinite or interminable delay in ruling, but it does countenance (1) taking sufficient time to ensure the issues are correctly decided without conflict with another, parallel case; and (2) avoidance of unnecessary litigation, discovery, and briefing.

The Court's docket is heavy (which it often reminds parties evaluating their own schedules). Whether a case—particularly a statutory challenge likely to be resolved or narrowed by dispositive motion—goes to trial on its initial appointed date is regularly a function of whether the Court has reached pending dispositive motions. Plaintiffs' argument that this case will be resolved by March 2023 is, at best, optimistic.

Denying the Motion will prejudice Defendants because it will require litigation, discovery, and briefing that will prove, to one degree or another, unnecessary. Likewise, conflicting rulings between *DC Operating* and *Valadez* would be fundamentally prejudicial. The weight of such prejudice easily balances Plaintiffs' concerns regarding the limited delay contemplated by the Motion. Additionally,

the Court could grant the Motion on a limited basis, and request a joint status report from the Parties by (for example) May 2023 to evaluate whether to lift the stay.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion to Stay, and award Defendants such other and further relief to which they may show themselves to be justly entitled.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN E. COWLES
Deputy Attorney General for Civil Litigation

CHRISTOPHER D. HILTON
Chief, General Litigation Division

*/s/ Ryan G. Kercher*
RYAN G. KERCHER
Texas Bar No. 24060998
Assistant Attorney General
CHRISTOPHER D. HILTON
Texas Bar No. 24087727
Assistant Attorney General
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: 512-463-2120
Fax: 512-320-0667
Ryan.Kercher@oag.texas.gov
***Counsel for Defendants***

# CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2022, a true and correct copy of the foregoing document was served via the Court's CM/ECF system to all counsel of record.

>                                /s/ *Ryan G. Kercher*
>                                RYAN G. KERCHER