IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| FELIX VALADEZ, ET AL., § | |
| Plaintiffs, § | |
| V. § | |
| § | |
| KEN PAXTON, in his official capacity as § | A-21-CV-519-RP |
| Attorney General of the State of Texas, § | |
| and ED SERNA, in his official capacity § | |
| as Executive Director of the Texas § | |
| Workforce Commission, § | |
| Defendants. § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE:

Before the court are Plaintiffs' Motion for Summary Judgment (Dkt. #66), Defendants' Motion for Summary Judgment (Dkt. #71),[1] and all related briefing. After reviewing the pleadings, the relevant case law, and determining a hearing is unnecessary, the undersigned submits the following Report and Recommendation to the District Court.

**I.   BACKGROUND**

This case is about whether the State of Texas ("Texas" or the "State") may raise the minimum age for employment in businesses the legislature has deemed to be sexually-oriented. Plaintiffs bring this action against Defendants Ken Paxton, in his official capacity as Attorney General of the State of Texas, and Ed Serna, in his official capacity as Executive Director of the Texas Workforce Commission (together, "Defendants") challenging the constitutionality of Texas Senate Bill 315 ("S.B. 315"), a recently-enacted Texas law that prohibits all working

---

[1] The motions for summary judgment were referred by United States District Judge Robert Pitman to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. *See* Text Orders dated Jan. 20, 2023.

1

relationships between 18-20-year-olds and sexually-oriented businesses ("SOBs") in an effort to combat the secondary effects of human trafficking. Dkt. #29 ("PI Order") at 1-2 (citing Tex. S.B. 315, 87th Leg. R.S. (2021); Compl., Dkt. 1, at 15–32).

The individual named plaintiffs ("Individual Plaintiffs") in this case are four young people who were between the ages of 18 and 20 years old when suit was filed, and who have been laid off or fear losing their jobs because of Texas's enactment of S.B. 315. Dkt. #39 ("Amd. Compl.") ¶¶ 32-43. The Individual Plaintiffs are joined by the Texas Entertainment Association ("TEA"), an association comprised of adult cabarets like Plaintiffs Ricks Cabaret and XTC Cabaret Austin, and adult bookstores like Plaintiff New Fine Arts, that are subject to S.B. 315's age-based restrictions. *Id.* ¶¶ 44-46, 50-51.

The court previously described S.B. 315 in its Order denying the Plaintiffs' request for preliminary injunction. PI Order at 2-4. S.B. 315 is styled as a law "relating to restrictions on the age of persons employed by or allowed on the premises of a sexually oriented business; creating a criminal offense." Tex. S.B. 315, 87th Leg. R.S. (2021). Texas law defines SOBs as any:

> "sex parlor, nude studio, modeling studio, love parlor, adult bookstore, adult movie theater, adult video arcade, adult movie arcade, adult video store, adult motel, or other commercial enterprise the primary business of which is the offering of a service or the selling, renting, or exhibiting of devices or any other items intended to provide sexual stimulation or sexual gratification to the customer."

TEX. LOC. GOV'T CODE § 243.002.

S.B. 315 amended various portions of existing Texas laws regarding minors and SOBs. First, Section 5 of S.B. 315 amended Chapter 125 of the Texas Civil Practice & Remedies Code making it a common nuisance to "employ[] or enter[] into a contract for the performance of work or the provision of a service with an individual younger than 21 years of age for work or services performed at a sexually oriented business as defined by Section 243.002 of the Local

Government Code." Tex. S.B. 315, § 5, 87th Leg. R.S. (2021) (amending TEX. CIV. PRAC. & REM. CODE § 125.0015(a)(19), (22)). Second, Section 8 of S.B. 315 amended Texas Penal Code Section 43.251 by changing its definition of "child" to mean "a person younger than 21 years of age." Tex. S.B. 315, § 8, 87th Leg. R.S. (2021) (amending TEX. PENAL CODE § 43.251(a)(1)). As a result, a person who "employs, authorizes, or induces" someone under the age of 21 to work in or with a SOB is subject to felony charges. *Id.* at § 43.251(a)-(c).

This amendment affects laws that cross-reference Section 43.251, including the nuisance statute. *See* TEX. CIV. PRAC. & REM. CODE § 125.0015(a)(22). It also affects other provisions of the Penal Code, including Chapter 20A, which enumerates trafficking crimes. TEX. PENAL CODE § 20A.02(a)(7)(J). Chapter 20A, in turn, is referenced in Chapter 140A of the Texas Civil Practice & Remedies Code. *See, e.g.*, TEX. CIV. PRAC. & REM. CODE § 140A.002 ("A person or enterprise commits racketeering if, for financial gain, the person or enterprise commits an offense under Chapter 20A . . . and the offense or an element of the offense: (1) occurs in more than one county in this state; or (2) is facilitated by the use of United States mail, e-mail, telephone, facsimile, or a wireless communication from one county in this state to another.").

Finally, Section 6 of S.B. 315 amended several provisions of Labor Code Chapter 51, which regulates "Employment of Children," to provide that "[a] sexually oriented business may not employ or enter into a contract, other than a contract described by Subsection (g), for the performance of work or the provision of a service with an individual younger than 21 years of age." Tex. S.B. 315, § 6, 87th Leg. R.S. (2021) (amending TEX. LAB. CODE § 51.016(b)). A violation of Section 51.016(b) now constitutes a Class A misdemeanor subject to a one-year jail sentence, administrative penalties, or a suit for injunctive relief brought by the attorney general of Texas. Tex. S.B. 315, § 7, 87th Leg. R.S. (2021).

3

Texas justified S.B. 315 in terms of a need to "provide necessary mechanisms to safeguard our communities and children from trafficking and sexual exploitation, which are often harmful secondary effects of sexually oriented businesses." SENATE RESEARCH CENTER, BILL ANALYSIS, Tex. S.B. 315, 87th Leg. R.S. (2021).

Plaintiffs assert First Amendment claims against Defendants. Amd. Compl. ¶¶ 55-67. Plaintiffs contend S.B. 315 violates their expressive rights, impairs their associational freedom, and is overbroad. *Id*. Both sides have moved for summary judgment. Dkt. #66, #71. The parties have submitted over 200 pages of briefing and over 5000 pages of exhibits.[2] Nonetheless, both sides attempt to argue there are no fact issues that would preclude summary judgment in their favor. This case is not appropriate for summary judgment. This case will be tried to the court, and these summary judgment motions are a waste of the court's and the parties' resources. In the time it has taken and will take for the parties to prepare all their briefing, for the undersigned to wade through them and draft this Report and Recommendation, for the parties to draft objections, and for the District Judge to rule on those, this case could have been tried with the benefit of being able to test the witnesses', experts', and other evidence's veracity.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

---

[2] Additionally, Defendants attempt to incorporate their arguments made at the motion to dismiss stage and their response to Plaintiffs' motion for preliminary injunction. Dkt. #74 at 7-8, n.5 & 6. The Local Rules require that all arguments be asserted in a single motion. LOCAL RULE CV-7(c)(1). Accordingly, the court rejects Defendants' request that it hunt through various briefs to discern Defendants' arguments.

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004).

The court will view the summary judgment evidence in the light most favorable to the non-movant. *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221 (5th Cir. 2011). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Id*.

### III.  ANALYSIS

Nearly every issue in this case is disputed. Despite the District Judge's previous holdings to the contrary, *see* Dkt. #29 at 7-8; Dkt. #37 at 8-9, Defendants continue to dispute whether S.B. 315 even implicates the First Amendment. Given the District Judge's previous holding and Defendants' reliance on a concurring—not majority—Supreme Court opinion, the undersigned is not persuaded to revisit this issue.

The parties also dispute what level of scrutiny should apply to S.B. 315. The first step in a First Amendment inquiry is to determine whether a challenged restriction on speech is either content based or content neutral. *Texas Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 509 (5th Cir.

2021), cert. denied, 142 S. Ct. 2852 (2022). That determination dictates the level of scrutiny the challenged restriction must meet in order to pass muster. *Id*. Content based restrictions on protected First Amendment expression are presumptively unconstitutional and subject to strict scrutiny. *Id*. (citing *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (citations omitted)). Conversely, content neutral restrictions are generally subject only to intermediate scrutiny. *Id*. (citing *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 662 (1994)). "For a regulation to be content neutral, the enacting authority must be predominantly motivated by a substantial governmental interest, such as the control or reduction of deleterious secondary effects of the establishment to be regulated." *Id*. (quoting *MD II Ent., Inc. v. City of Dallas*, 935 F. Supp. 1394, 1397 (N.D. Tex. 1995), aff'd, 85 F.3d 624 (5th Cir. 1996) (unpublished; per curiam)). "Thus, to determine whether [a statute] is content based or content neutral, we must look to its purpose as substantiated by the record in this case." *Id*. at 510.

In 2015, the Supreme Court stated it has "repeatedly considered whether a law is content neutral on its face before turning to the law's justification or purpose." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 166 (2015). According to Plaintiffs, this "sea change" in First Amendment jurisprudence went unnoticed in the Fifth Circuit until 2020 when the Fifth Circuit decided *Reagan National Advertising of Austin, LLC v. City of Austin*, 972 F.3d 696 (5th Cir. 2020). *Reagan* decided its prior precedent—including cases dealing with SOBs—conflicted with *Reed* and must be abrogated. *Reagan*, 972 F.3d at 703 n.3. However, *Reagan* itself was reversed for misapplying *Reed*. *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1471 (2022). Nonetheless, Plaintiffs argue *Reagan's* abrogation of cases remains. Plaintiffs' argument is not without superficial appeal. The Court in *City of Austin* did state that a "regulation of speech is facially content based under the First Amendment if it 'target[s] speech based on its

communicative content'—that is, if it 'applies to particular speech because of the topic discussed or the idea or message expressed.'" *City of Austin*, 142 S. Ct. at 1471 (quoting *Reed*, 576 U.S. at 163). Thus, according to Plaintiffs S.B. 315 is content based and the court must apply strict scrutiny.

However, Plaintiffs' rationale ignores that the Court has evaluated laws that restrict—but do not entirely ban—SOBs with intermediate scrutiny and *Reed* did not overrule these cases. *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986); *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425 (2002).[3] Additionally, almost one year after the Fifth Circuit issued *Reagan*, it issued *Hegar*, which the undersigned relied on above to provide the framework for a First Amendment analysis applied to SOBs. *See Hegar*, 10 F.4th at 495. *Hegar* noted that "[i]n the context of nude dancing, the Supreme Court has held that '[i]f the governmental purpose in enacting the regulation is unrelated to the suppression of expression, then the regulation need only satisfy the less stringent standard' of intermediate scrutiny." *Id.* at 509. *Hegar* also relied on *Renton* and *Alameda Books*. *Id.* at 509-510.

In *Hegar*, although the clothing rule at issue inherently only applied to SOBs, the Fifth Circuit considered the State's purpose in making the rule and only applied strict scrutiny because the Comptroller "[did] not provide *any* evidence that shows that the Comptroller was predominantly motivated by the control or reduction of deleterious secondary effects of [certain SOBs] in promulgating the Clothing Rule, or how the Clothing Rule would mitigate such secondary effects." *Id.* at 511 (cleaned up). Under Plaintiffs' rationale, the Fifth Circuit should not have reached the State's motivation. Accordingly, Plaintiffs' arguments fail.

---

[3] Plaintiffs do not argue *Reed* abrogated these cases and in fact Plaintiffs repeatedly cite them for the intermediate scrutiny standard.

Plaintiffs present only legal arguments that strict scrutiny applies. They do not specifically argue—nor have they presented any evidence—that Texas was not motivated by a substantial government interest in enacting S.B. 315. In contrast, Defendants have presented evidence Texas was motivated by a substantial government interest in enacting S.B. 315. *See* Dkt. #71 at 19-25 (Defs' MSJ) (summarizing evidence presented to the relevant legislative committees). Plaintiffs have failed to raise a question of material fact on this issue. Accordingly, Defendants have shown they are entitled to summary judgment that intermediate scrutiny applies to the statute.

In order for S.B. 315 to pass intermediate scrutiny, Texas must demonstrate that: (1) it has the constitutional authority to enact S.B. 315; (2) the law furthers an important or substantial government interest; (3) the government interest is unrelated to the suppression of free expression; and (4) the restriction is no greater than is essential to the furtherance of the government interest. Dkt. #29 (P.I. Order) at 9 (citing *United States v. O'Brien*, 391 U.S. 367, 377 (1968)). Neither side has shown it is entitled to summary judgment on whether S.B. 315 passes intermediate scrutiny. Both sides have presented experts and a litany of evidence to support their positions. A trial—not summary judgment motions—is the better vehicle to resolve these issues. Accordingly, the undersigned recommends that both sides' motions be denied as to all remaining issues.

## IV.  RECOMMENDATIONS

The court **RECOMMENDS** that the District Judge **DENY** Plaintiffs' Motion for Summary Judgment (Dkt. #66). The court further **RECOMMENDS** that the District Judge **GRANT** Defendants' Motion for Summary Judgment (Dkt. #71) as to the level of scrutiny to be applied and **DENY** the motion in all other respects.

## V. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Sers. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

SIGNED July 26, 2023.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE